**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE 1, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    Defendants. | Civil Action No. 17-cv-1597 (CKK) |

**DEFENDANTS' MOTION FOR PARTIAL STAY OF PRELIMINARY INJUNCTION PENDING APPEAL**

On October 30, 2017, the Court entered an Order preliminarily enjoining Defendants from enforcing the accession and retention directives in the President's August 25, 2017 Memorandum regarding military service by transgender individuals. ECF Nos. 60, 70. Defendants have filed a timely notice that they are appealing the Court's Order, ECF No. 66, and now request a partial stay of the Court's preliminary injunction pending the outcome of their appeal. Specifically, Defendants request that the Court stay the portion of its preliminary injunction requiring Defendants to begin accessing transgender individuals into the military on January 1, 2018, pending a decision by the D.C. Circuit on Defendants' appeal. Because the January 1, 2018 deadline for complying with the accessions portion of the Court's preliminary injunction is quickly approaching, Defendants waive their right to file a reply to any opposition that Plaintiffs may file to this motion and respectfully request a decision on their motion by 12:00 pm on Monday, December 11, 2017. Defendants have submitted a Memorandum of Points and Authorities and Declaration in support of their motion. Defendants have also filed a proposed order with this motion.

1

Pursuant to Local Civil Rule 7(m), Defense counsel has conferred with Plaintiffs' counsel, and Plaintiffs' counsel has indicated that Plaintiffs oppose this motion.

Dated: December 6, 2017

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Ryan B. Parker*
RYAN B. PARKER
ANDREW E. CARMICHAEL
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov

Counsel for Defendants

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANE DOE 1,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **DONALD J. TRUMP,** *et al.*, <br><br> Defendants. | **Civil Action No. 17-cv-1597 (CKK)** |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL STAY OF PRELIMINARY INJUNCTION PENDING APPEAL

**INTRODUCTION**

On October 30, 2017, the Court entered an order preliminarily enjoining Defendants from enforcing the retention or accession provisions of the President's August 25, 2017 Memorandum regarding military service by transgender individuals. ECF No. 60. The Court later clarified that, with regard to the accessions provision, it had also enjoined the Secretary of Defense from exercising his independent authority to extend the effective date of the new accessions policy. As a result of these orders, Defendants must begin accessing transgender individuals into the military on January 1, 2018. ECF No. 70. Defendants filed a timely notice that they are appealing the Court's Order entering a preliminary injunction, ECF No. 66, and now move the Court to stay the accessions portion of its preliminary injunction for several reasons while the D.C. Circuit considers the merits of Defendants' appeal.

First, Defendants have submitted a declaration explaining that they will be seriously and irreparably harmed if forced to implement a new accessions policy on January 1, 2018. The Department of Defense is a large and complex agency with over 20,000 recruiters and 65 geographically dispersed Military Entrancing Processing Stations. Given the complex and multidisciplinary nature of the medical standards that need to be issued and the tens of thousands of geographically dispersed individuals that need to be trained, the military will not be adequately prepared to begin processing transgender applicants for military service by January 1, 2018, and requiring the military to do so may negatively impact military readiness. In addition, the Department of Defense has never before generally permitted transgender individuals to access into the military. Compelling the military to implement a new accessions policy while it is simultaneously completing a comprehensive study of military service by transgender individuals that may soon result in the adoption of different accessions standards would waste

significant military resources and sow unnecessary confusion among service members and applicants.

Second, Plaintiffs will not be harmed by a stay of the accessions portion of the Court's preliminary injunction pending the outcome of Defendants' appeal, as the only two Plaintiffs who seek to access into the military will not be eligible to do so until May 2020 and Spring 2021. *See* ECF No. 61 at 46.

Third, the public interest strongly favors allowing the military the time it needs to implement a significant change in its accessions policy in an orderly fashion.

Fourth, Defendants are likely to succeed on the merits of their appeal. The Court erred by entering a worldwide injunction, rather than providing relief tailored to the parties before it. In addition, the Court erred by finding that at least one Plaintiff had established standing to challenge—and would likely be irreparably harmed by—the accessions provision of the Presidential Memorandum, even though no Plaintiff will be eligible to commission as an officer for at least another two and a half years. This speculative, future harm does not outweigh the hardship that the injunction will impose on the military. The Court further erred by enjoining the Secretary of Defense from exercising his independent authority to extend the effective date of the new accessions policy, when Plaintiffs never challenged that authority and it was not before the Court. The Court also erred on the merits, in particular by reaching substantial constitutional questions and by not applying a deferential standard of review when the military is presently examining the policy at issue. Finally, the Court abused its discretion in weighing the equities to conclude that a preliminary injunction should be granted.

For these reasons, the Court should grant Defendants' motion.

**BACKGROUND**

The Court is familiar with the procedural history of this case, and Defendants will summarize it only briefly here. Plaintiffs filed this case on August 9, 2017, ECF No. 1, and amended their complaint on August 31, 2017, ECF No. 9. In their Amended Complaint, Plaintiffs sought "declaratory, preliminary, and permanent injunctive relief against the implementation of the President's directive to prohibit transgender individuals from enlisting or serving openly in the Armed Forces." ECF No. 9 ¶ 9. On August 31, Plaintiffs also moved for a preliminary injunction seeking the same relief. ECF No. 13. Defendants opposed Plaintiffs motion for preliminary relief and, in the same brief, moved to dismiss. ECF 45.

On October 30, 2017, the Court partially granted Defendant's motion to dismiss and partially granted Plaintiffs' motion for a preliminary injunction. ECF No. 60. The Court dismissed Plaintiffs' challenge to the surgical procedures provision of the Presidential Memorandum but allowed the remainder of their case to proceed. *Id.* It also entered an order preliminarily enjoining Defendants from enforcing the retention and accession provisions. *Id.* The Court explained that the "effect of the Court's Order is to revert to the *status quo* with regard to accession and retention that existed before the issuance of the Presidential Memorandum— that is, the retention and accession policies established in the June 30, 2016 Directive-type Memorandum as modified by Secretary of Defense James Mattis on June 30, 2017." *Id.*

On November 21, 2017, Defendants filed a notice of appeal. ECF No. 66. The following day, Defendants sought clarification regarding whether the Court's preliminary injunction prohibited Secretary Mattis from exercising his independent authority to extend the effective date of the new accessions policy past January 1, 2018. ECF No. 67. On November 27, the Court issued an Order stating that, under the *status quo* before the President issued his Memorandum,

policies were in place that "allowed for the accession of transgender individuals into the military beginning on January 1, 2018." ECF No. 70 at 2. "<u>Any action by any of the Defendants that changes this status quo is preliminarily enjoined</u>." *Id.* (emphasis in original).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 62(c), a party may seek to stay a preliminary injunction pending an appeal. *See Akiachak Native Cmty. v. Jewell*, 995 F. Supp. 2d 7, 11 (D.D.C. 2014). "In the D.C. Circuit, a court assesses four factors when considering a motion to stay and injunction pending appeal: (1) the moving party's likelihood of success on the merits of its appeal, (2) whether the moving party will suffer irreparable injury, (3) whether issuance of the stay would substantially harm other parties in the proceeding, and (4) the public interest." *Id.* (citing *Wash. Met. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).[1]

## ARGUMENT

The Court should stay the accessions portion of the preliminary injunction until the D.C. Circuit decides Defendants' appeal.

---

[1] Following the Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), "in this circuit, it remains an open question whether the likelihood of success factor is an independent, free-standing requirement, or whether, in cases where the three other factors strongly favor issuing an injunction, a plaintiff need only raise a serious legal question on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (quotations omitted). "Given the uncertainty, courts in this jurisdiction have continued to analyze motions for preliminary injunctions under the sliding scale approach … ." *Akiachak Native Cmty,* 995 F. Supp. 2d at 11. Under that approach, a "motion to stay may be granted when a serious legal question is presented, when little if any harm will befall other interested persons or the public, and when denial of the order would inflict irreparable injury on the movant." *Id.*; *see Wash. Metro. Area Transit Comm'n*, 559 F.2d at 844.

**I.      Defendants Will Be Irreparably Harmed If They Are Forced to Implement a New Accessions Policy by January 1, 2018.**

Defendants have submitted a declaration from Lernes J. Herbert ("Herbert Decl."), Acting Deputy Assistant Secretary of Defense for Military Personnel Policy, explaining that, in order to adequately prepare to access transgender individuals, the military will need to promulgate new, complex, and interdisciplinary medical standards that will necessarily require evaluation across several medical specialties, including behavior and mental health, surgical procedures, and endocrinology.  Herbert Decl. ¶6.  The military must then train "tens of thousands" of geographically dispersed personnel on the application of those complex medical standards.  *Id.* ¶5.  These personnel include 20,367 recruiters, 2,785 employees across 65 Military Entrance Processing Stations, 32 Service Medical Waiver Authorities, and personnel at nine (9) initial military entrance locations ("boot camps") and the associated medical hospitals that support them.  *Id.*

Moreover, given the complexity of the interdisciplinary medical standards that need to be issued and the number of geographically dispersed individuals that need to be carefully trained on those standards, the Department would not be adequately and properly prepared to begin processing transgender applicants on January 1, 2018.  *Id.* ¶¶6, 9.  Thus, if the military is "compelled to execute transgender accessions by January 1," then "applicants may not receive the appropriate medical and administrative accession screening necessary for someone with a complex medical condition" and thereby enter the military even though they are "not physically or psychologically equipped to engage in combat/operational service." *Id.* ¶8.  Because Defendants are likely to suffer serious and irreparable harms if they are forced to begin accessing transgender individuals beginning on January 1, 2018, the Court should stay the accessions portion of its preliminary injunction until the D.C. Circuit decides Defendants' appeal.

5

The Department is also in the process of a high-level review of military service by transgender individuals that is scheduled to conclude in the next few weeks and could result in an accessions policy that differs from the one that the Court has ordered the military to implement by January 1, 2018. *Id.* ¶4, 10. In these circumstances, implementing a new accessions policy that would permit the accession of transgender individuals while the Department is in the process of concluding a comprehensive study that may ultimately lead to the implementation of a different policy would present not only the prospect of significant duplicative costs and administrative burdens but the high potential for sowing confusion in the ranks as well. *Id.* ¶10.

II. **Plaintiffs Will Not Be Harmed by a Stay of the Accession Provision of the Court's Preliminary Injunction.**

The Plaintiffs in this case who seek to access into the military will not be eligible to commission as officers until at least May 2020 and will not be harmed by a temporary stay of the portion of the Court's injunction dealing with accessions. As this Court recognized in its Opinion, Plaintiff Kibby is not scheduled to graduate from the Naval Academy and become eligible to accept a commission until May 2020. ECF No. 61 at 44, 46. Plaintiff Kohere is in his first semester of college and, based upon a four year program, will not graduate and become eligible to commission until spring 2021. ECF No. 45-3. Defendants' appeal will be decided long before either Plaintiffs Kibby or Kohere seek to commission into the military. They will not, therefore, be harmed by a stay of the accessions portion of the Court's injunction.

III. **A Stay of the Accession Provision of the Court's Preliminary Injunction Is in the Public Interest.**

In these circumstances, it is not in the public interest for the Court to compel the military to begin accessing transgender individuals before it has had an opportunity to issue the necessary medical standards and train its personnel on those standards to ensure that military applicants are properly screened. *See Gilligan v. Morgan*, 413 U.S. 1 at 10 ("The complex subtle, and

6

professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches.").

### III.     Defendants Are Likely to Prevail on the Merits of Their Appeal.

Defendants can also show a likelihood of success on the merits of their appeal of the preliminary injunction. First, the Court erred by entering a worldwide injunction, particularly in light of the fact that only two Plaintiffs are challenging the accession provision of the Presidential Memorandum. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (explaining that equitable relief should "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.").

Second, the Court erred by concluding that at least one Plaintiff has established standing and a likelihood of irreparable harm from the accessions provision of the Presidential Memorandum, despite the fact that he will not be eligible to commission into the military until 2020. *See* ECF No. 45-2 ¶10 (explaining that Plaintiff Kibby is not scheduled to graduate from the Naval Academy until May 2020); *see also* ECF No. 45-3 ¶ 8(c) (explaining that, based on a four-year program, Plaintiff Kohere will not graduate from college until Spring 2021). This speculative, future harm does not outweigh the hardship that the injunction will impose on the military.

Third, the Court erred by enjoining the Secretary of Defense from exercising his independent authority to extend the effective date of the new accessions policy when the Secretary's authority has not been challenged in this case and was not properly before the Court.

Fourth, the Court erred on the merits, in particular by reaching substantial constitutional questions and not applying the appropriate level of deference when the military is presently examining the policy at issue.

Fifth, for the reasons given above, the Court abused its discretion in weighing the equities to decide that a preliminary injunction was warranted.

Accordingly, Defendants are likely to succeed on these issues in their appeal and have, at the very least, presented serious questions that are sufficient in light of the other factors to warrant a stay.  *See Akiachak Native Cmty*, 995 F. Supp. 2d at 11.

## CONCLUSION

For the reasons set forth above, the Court should stay the portion of its preliminary injunction dealing with accessions pending a decision by the D.C. Circuit on Defendants' appeal of the preliminary injunction.

Dated: December 6, 2017

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Ryan B. Parker*
RYAN B. PARKER
ANDREW E. CARMICHAEL
United States Department of Justice
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov
Counsel for Defendants