## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 1, *et al.*,<br>        Plaintiffs<br>        v.<br>DONALD J. TRUMP, *et al.*,<br>        Defendants | Civil Action No. 17-1597 (CKK) |

### ORDER
(December 11, 2017)

Presently before the Court is Defendants' Motion for a Partial Stay of the Court's Preliminary Injunction Pending Appeal.  ECF No. 73 ("Defs.' Mot.").  Defendants request a partial stay of the Court's October 30, 2017 preliminary injunction pending the outcome of their recently filed appeal to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").  Specifically, Defendants request that the Court stay the part of the injunction that prevents Defendants from enforcing the "Accession Directive" in President Donald J. Trump's August 25, 2017 Presidential Memorandum ("Presidential Memorandum").  Plaintiffs oppose Defendants' motion on various grounds.[1]

In summary form, the Accession Directive indefinitely extended a prohibition against transgender individuals entering the military (a process formally referred to as "accession").  As relevant to this motion, the effect of the Court's October 30, 2017 preliminary injunction was to revert to the *status quo* with regard to accession that existed before the issuance of the

---

[1] The Court's consideration has focused on the following documents: Defs.' Mot. for Partial Stay of Preliminary Injunction Pending Appeal and the attached Declaration of Lernes J. Hebert, ECF No. 73 (filed on December 6, 2017); Pls.' Opp'n to Defs.' Mot. for Partial Stay of Preliminary Injunction Pending Appeal and the attached Declarations of George Richard Brown, MD, DFAPA and Raymond Edwin Mabus, Jr., ECF No. 74 (filed on December 8, 2017).

Presidential Memorandum—that is, the accession policy established in a June 30, 2016

Directive-type Memorandum ("DTM"), as modified by Secretary of Defense James Mattis on

June 30, 2017.  That policy allowed for the accession of transgender individuals into the military

beginning on January 1, 2018.[2]

The Court will not stay its preliminary injunction pending Defendants' appeal.  "In the

D.C. Circuit, a court assesses four factors when considering a motion to stay an injunction

pending appeal: (1) the moving party's likelihood of success on the merits of its appeal, (2)

whether the moving party will suffer irreparable injury, (3) whether issuance of the stay would

substantially harm other parties in the proceeding, and (4) the public interest."  *Akiachak Native*

*Cmty. v. Jewell*, 995 F. Supp. 2d 7, 12 (D.D.C. 2014) (citing *Wash. Metro. Area Transit Comm'n*

*v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).  None of these factors justifies

staying the Court's preliminary injunction.

---

[2] As the Court understands it, the policy that will go into effect on that date states:

(1) A history of gender dysphoria is disqualifying, unless, as certified by a licensed medical provider, the applicant has been stable without clinically significant distress or impairment in social, occupational, or other important areas of functioning for 18 months;

(2) A history of medical treatment associated with gender transition is disqualifying, unless, as certified by a licensed medical provider: (a) the applicant has completed all medical treatment associated with the applicant's gender transition; and (b) the applicant has been stable in the preferred gender for 18 months; and (c) If the applicant is presently receiving cross-sex hormone therapy post-gender transition, the individual has been stable on such hormones for 18 months;

(3) A history of sex reassignment or genital reconstruction surgery is disqualifying, unless, as certified by a licensed medical provider: (a) a period of 18 months has elapsed since the date of the most recent of any such surgery; and (b) no functional limitations or complications persist, nor is any additional surgery required.

Decl. of Deborah Lee James, ECF No. 13-5 ("James Decl."), Ex. B.  Transgender applicants will also be subject to all of the same medical and physical requirements as all other applicants.

### 1. Irreparable Injury

The Court begins with the main focus of Defendants' motion: their argument that they will be "irreparably harmed" if they begin to accept transgender individuals into the military on January 1, 2018.  In support of their motion, Defendants have submitted a declaration from Lernes J. Hebert, the Acting Deputy Assistant Secretary of Defense for Military Personnel Policy in the Office of the Under Secretary of Defense for Personnel and Readiness.  *See* Decl. of Lernes J. Hebert, ECF No. 73-1 ("Hebert Decl.").  Mr. Hebert states that "[i]mplementing the Court's orders with respect to the accessions policy . . . by January 1, 2018, will impose extraordinary burdens on the Department and the military services." *Id.* ¶ 5.  This statement is apparently based on Mr. Hebert's assertions that "there are considerable requirements associated with implementing this significant and complex policy change," that "implementation of a new accession policy necessitates preparation, training, and communication to ensure those responsible for application of the accession standards are thoroughly versed in the policy and its implementation procedures," and that "the implementation of accessions criteria is . . . a complex undertaking." *Id.* ¶¶ 5-6.  Mr. Hebert represents that "notwithstanding the implementation efforts made to date, the Department still would not be adequately and properly prepared to begin processing transgender applicants for military service by January 1, 2018." *Id.* ¶ 9.

The Court is not convinced by Mr. Hebert's declaration that Defendants will be irreparably harmed in the absence of a stay.  Although Mr. Hebert's declaration contains a lengthy discussion of the administrative difficulties associated with implementing a new accession policy in general, it fails to acknowledge the considerable amount of time Defendants have already had to prepare for the implementation of this particular policy.  The directive from the Secretary of Defense requiring the military to prepare to begin allowing accession of

transgender individuals was issued on June 30, 2016—nearly one and a half years ago.  For more than a year preceding the summer of 2017, it was the policy and intention of the military that transgender individuals would soon begin to accede.  Moreover, the Court issued the preliminary injunction in this case approximately six weeks ago, and since then Defendants have been on notice that they would be required to implement the previously established policy of beginning to accept transgender individuals on January 1, 2018.  In other words, with only a brief hiatus, Defendants have had the opportunity to prepare for the accession of transgender individuals into the military for nearly one and a half years.

Moreover, Mr. Hebert's declaration glosses over the fact that considerable work has been done already during this lengthy period.  With their opposition to Defendants' motion to stay, Plaintiffs have submitted the declaration of Dr. George Richard Brown, who has been part of the military's training program for the implementation of its transgender accession policy.  Dr. Brown states that he "trained approximately 250 medical personnel working in Military Entrance Processing Stations (MEPS) throughout the military."  Decl. of George Richard Brown, MD, DFAPA, ECF No. 74-1, ¶ 5.  Plaintiffs have also submitted the declaration of former Secretary of the Navy Raymond Edwin Mabus, Jr., who states that nearly a year ago "the Services had already completed almost all of the necessary preparation for lifting the accession ban."  *See* Decl. of Raymond Edwin Mabus, Jr., ECF No. 74-2 ("Mabus Decl."), ¶ 3.

The record that was before the Court when it considered Plaintiffs' motion for a preliminary injunction also demonstrates that considerable work has already been done to prepare for transgender accession.  For example, that record shows that the Acting Under Secretary of Defense for Personnel and Readiness, Peter Levine, published an "implementation handbook" in 2016 entitled "Transgender Service in the U.S. Military."  Decl. of Raymond

4

Edwin Mabus, Jr., ECF No. 13-9, Ex. F.  That document is a lengthy, exhaustive "practical day-to-day guide" prepared to assist Service members and commanders in understanding and implementing the policy of open transgender military service.  James Decl., ¶ 34.  The record also indicates that each branch of the Armed Forces issued memoranda in 2016 for implementing the transgender accession policy.

Instead of acknowledging what has already been done, Mr. Hebert's declaration uses sweeping and conclusory statements to support his assertion that there is an unmanageable amount of work left to do.  He states that Defendants "would not be adequately and properly prepared" to accept transgender individuals by January 1, 2018.  Hebert Decl. ¶ 9.  But Mr. Hebert fails to explain what *precisely* needs to be completed by this date in order for Defendants to be prepared to begin transgender accessions.[3]  Especially in light of the record evidence showing, with specifics, that considerable work has already been done, the Court is not convinced by the vague claims in Mr. Hebert's declaration that a stay is needed.

Finally, Defendants also complain that they may suffer unnecessary costs and confusion by allowing transgender individuals to accede on January 1, only to later change to some other accession policy that they have indicated they are in the process of preparing.  Mr. Hebert states that "the Department will be twice burdened if it is required to implement [the June 30, 2016 DTM] by January 1, 2018, and then potentially a different policy after the Department concludes its study and finalizes a policy."  Hebert Decl. ¶ 10.  Although they hint in their most recent pleading that a new policy proposal is forthcoming in the next few weeks, Defendants fail to

---

[3] There is no evidence in the record that would suggest that the number of transgender individuals who might seek to accede on January 1, 2018 would be overwhelmingly large.  To the contrary, although the Court understands that there may be some dispute as to the amount of transgender individuals in the general population and in the military, the record thus far suggests that the number is fairly small.

provide the Court with any insight at all into what the policy might be.  The Court is left to speculate.  On the one hand, to the extent the policy Defendants foresee adopting in the future is a *ban* on accessions—which the Court has already concluded is likely to be proven unconstitutional—this is clearly not a reason to stay the injunction in this case.  On the other hand, as the Court has already explained, there is no reason to conclude on the present record that Defendants intend to implement any sort of policy *allowing* for the accession of transgender individuals.  Defendants have never given the Court any reason to conclude that this would be the case.

In sum, having carefully considered all of the evidence before it, the Court is not persuaded that Defendants will be irreparably injured by allowing the accession of transgender individuals into the military beginning on January 1, 2018.

## 2.  Likelihood of Success on the Merits

The remaining factors that the Court assesses when considering whether to stay an injunction pending an appeal also weigh against Defendants' motion.  Unsurprisingly, the Court does not agree with Defendants that they are likely to prevail on the merits of their appeal.  All of Defendants' arguments on this factor have already been raised and rejected by the Court. Defendants argue that the Court erred by entering a "worldwide injunction," by finding that Plaintiffs had established standing and irreparable injury, by not allowing Secretary of Defense Mattis to violate the Court's injunction by "exercising his independent authority" to preclude transgender individuals from the military, by not applying the "appropriate level of deference" to the Presidential Memorandum, and by finding that the equities favored an injunction.  Defs.' Mot. at 7-8.  The Court has already explained its reasons for rejecting most of these arguments in its 76-page Memorandum Opinion granting Plaintiffs' motion for a preliminary injunction.  *See*

Oct. 30, 2017 Mem. Op., ECF No. 61. It will not repeat those reasons again here, but instead incorporates the analysis in its previous Opinion into this Order as though restated in full.

The record before the Court has not changed in any significant way since it issued its preliminary injunction. The Court previously held that Plaintiffs are likely to succeed on their claim that the Accession Directive violates the Fifth Amendment based on a number of factors, "including the sheer breadth of the exclusion ordered by the directive[ ], the unusual circumstances surrounding the President's announcement of [it], the fact that the reasons given for [it] do not appear to be supported by any facts, and the recent rejection of those reasons by the military itself." Oct. 30, 2017 Mem. Op. at 3. These factors support enjoining the Accession Directive today as much as they did when the Court issued its injunction on October 30, 2017.

Finally, the Court notes that there was nothing improper about the scope of the preliminary injunction. Plaintiffs presented facial constitutional challenges to several directives in the Presidential Memorandum. The Court found that Plaintiffs were likely to succeed in demonstrating that some of those directives were unconstitutional, and accordingly barred Defendants from enforcing them. There was nothing improper about this course of action. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2307 (2016) ("[I]f the arguments and evidence show that a statutory provision is unconstitutional on its face, an injunction prohibiting its enforcement is 'proper.'"); *Harmon v. Thornburgh*, 878 F.2d 484, 495 (D.C. Cir. 1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed.").

### 3. Harm to Plaintiffs

Defendants' cursory argument that "Plaintiffs will not be harmed by a stay" is also unpersuasive. As the Court has already held, Plaintiffs were being injured every day the

Presidential Memorandum's directive preventing accession was in force.  That directive "stigmatizes Plaintiffs as less capable of serving in the military, reduces their stature among their peers and officers, stunts the growth of their careers, and threatens to derail their chosen calling or access to unique educational opportunities."  Oct. 30, 2017 Mem. Op. at 73.  It also subjects them to a continuing alleged violation of their rights under the Fifth Amendment.  *Id.*  Moreover, there is evidence in the record suggesting that if the Accession Directive remains in effect, it would render Plaintiff Regan Kibby ineligible to attend the Naval Academy and prevent Plaintiff Dylan Kohere from enrolling as a cadet in his university's ROTC program.  Mabus Decl. ¶ 5; Decl. of Mr. Robert O. Burns, ECF No. 45-3, ¶ 6.  Put simply, the notion that Plaintiffs will suffer no harm by allowing the Accession Directive to remain in force pending Defendants' appeal is simply wrong.

### 4.  Public Interest

Finally, Defendants' one-sentence argument about the "public interest" effectively restates their argument regarding irreparable injury.  That argument has already been rejected above.  The Court has previously explained why the public interest favors preliminary injunctive relief in this case.  *See* Oct. 30, 2017 Mem. Op., at 74-75.  To the extent Defendants argue that accepting transgender individuals on January 1, 2018 would harm military readiness, the Court directs Defendants to the Court's finding in its October 30, 2017 Memorandum Opinion that, on the record before the Court, there is absolutely no support for the claim that service of transgender individuals would have any negative effect on the military at all.  *Id.* at 75.  The factual record has not changed in any material way since the Court issued its prior Opinion.

**5.   Conclusion**

For all of the above reasons, Defendants' motion for a partial stay of its preliminary injunction pending appeal is **DENIED**.  As a final point, the Court notes that Defendants' portrayal of their situation as an emergency is belied by their litigation tactics.  The Court issued its preliminary injunction requiring Defendants to comply with the January 1, 2018 deadline on October 30, 2017.  Defendants did not file an appeal of that decision until November 21, 2017, and did not file the current motion for a stay of that deadline until December 6, 2017, requesting a decision by noon today, December 11, 2017.  There is also no indication that Defendants have sought any sort of expedited review of their appeal, the first deadlines in which are not until January, 2018.  If complying with the military's previously established January 1, 2018 deadline to begin accession was as unmanageable as Defendants now suggest, one would have expected Defendants to act with more alacrity.

**SO ORDERED.**

                        /s/
                        COLLEEN KOLLAR-KOTELLY
                        United States District Judge