

*Let this be filed*
*Judge CKollar-Kotelly 2/16/2018*

**U.S. Department of Justice**
Civil Division, Federal Program Branch

---

By Electronic Mail                                               February 12, 2018

The Honorable Colleen Kollar-Kotelly
United States District Court Judge
Kollar-Kotelly_Chambers@dcd.uscourts.gov

      Re: Discovery Dispute in *Doe v. Trump*, Case No. 1:17-cv-01597-CKK

Dear Judge Kollar-Kotelly,

      In compliance with this Court's directive on February 9, 2018, Defendants respectfully submit this letter brief. Given the importance of the constitutional and privilege issues addressed below, Defendants respectfully request the opportunity to fully brief these matters.

1. <u>Discovery of the President Should Be Prohibited on Separation-of-Powers Grounds</u>

      Plaintiffs have issued broad written discovery requests to the President. As an initial matter, such discovery requests should not be permitted where, as here, they are premised on claims for declaratory and injunctive relief brought directly against the President concerning the exercise of his duties as Commander in Chief. The Supreme Court has held that it has "no jurisdiction of a bill to enjoin the President in the performance of his official duties," *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992), and lower courts often have applied this principle, *see, e.g., Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010). Because the Court lacks jurisdiction to enjoin the President in the performance of his official duties, it cannot order the discovery of the President sought here.

      Even assuming the President were a proper defendant and could be subject to a civil discovery order, discovery directed to the President in civil litigation raises significant separation-of-powers concerns and should not be allowed. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 385 (2004). The Court in *Cheney* noted that the public interest requires that a coequal branch of Government "'afford Presidential confidentiality the greatest protection consistent with the fair administration of justice.'" *Id.* at 382 (quoting *United States v. Nixon*, 418 U.S. 683, 715 (1974)). Indeed, as this Court has recognized, "'special considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated.'" *Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 402 F. Supp. 2d 171, 182 (D.D.C. 2005) (Kollar-Kotelly, J.) (quoting *Cheney*, 542 U.S. at 385). Accordingly, the Court should, at a minimum, first require Plaintiffs to exhaust alternative sources of non-privileged discovery before subjecting the President to broad, burdensome discovery or resolving Plaintiffs' privilege challenges concerning the President. In considering the need to narrow discovery, the Court also should consider that on February 21, 2018—less than two weeks from now—the Secretary of Defense is expected to submit an implementation plan to the President, which could narrow, if not eliminate, any purported reason for discovery directed to the President.

In addition, the discovery sought by Plaintiffs puts directly at issue information that is subject to the Presidential Communications Privilege ("PCP"). Plaintiffs have demanded the disclosure of what they style as "privilege-log type information," *i.e.*, "the existence of a communication, its date, and the identity of the participants," for "communications with the President and/or the Executive Office of the President about transgender military service (including the identity of the 'Generals and military experts' disclosed in the tweets)." That information—which is at the heart of Presidential decisionmaking and deliberation—is protected under the PCP, which shields the "confidentiality of Presidential communications in performance of the President's responsibilities." *Nixon*, 418 U.S. at 711. "The President can invoke the privilege when asked to produce documents or other materials that reflect presidential decisionmaking and deliberations." *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). The privilege also extends to communications authored or solicited and received by immediate White House advisers in the Office of the President and their staff. *See id.* at 752. Documents covered by the PCP are shielded in their entirety, *id.* at 745, and factual information within those documents is also protected by the privilege, *see Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (contrasting the deliberative process privilege).

Defendants have properly withheld information that identifies communications (including dates and the identity of the participants) with the President and his immediate advisors and their staff regarding military service by transgender individuals. Such information plainly "reflect(s) presidential decisionmaking and deliberations," and disclosure of this information would intrude on presidential deliberations and impede the President's ability to perform his constitutional duty. *See In re Sealed Case*, 121 F.3d at 744, 751. In addition, because of the nature of the interrogatories, disclosure of such information would also reveal the substance of the communications.[1]

Withholding this information serves the purpose of the PCP, which ensures that the "President and those who assist him [are] free to explore alternatives in the process of shaping policies and making decisions . . . in a way many would be unwilling to express except privately." *Nixon*, 418 U.S. at 708. The President and his immediate advisors must be able to discuss military policy among themselves and with officials within the Department of Defense

---

[1] This case is distinguishable from *Citizens for Responsibility & Ethics in Washington v. Department of Homeland Security*, 592 F. Supp. 2d 111 (D.D.C. 2009). In that Freedom of Information Act case, the Court determined that the White House visitor logs were not protected by the PCP because the information contained in the logs "sheds no light on the content of communications between the visitor and the President or his advisors, whether the communications related to presidential deliberation or decisionmaking, or whether any substantive communications even occurred." *Id.* at 118-19. In contrast, Plaintiffs here specifically demanded information that identifies communications (including dates and the identity of the participants) with the President and his immediate advisors and their staff regarding military service by transgender people. Indeed, the Court in *Citizens for Responsibility & Ethics in Washington* acknowledged that its holding "does not rule out the possibility that there may exist some hypothetical situation wherein the factual circumstances surrounding such a visit might reveal the substance of presidential deliberations." *Id.* at 119.

and the Armed Forces without concern that information regarding their confidential communications will be disclosed.

### 2. Deliberative Process Privilege

Plaintiffs failed to meaningfully meet and confer regarding the information Defendants have withheld on the basis of the deliberative process privilege ("DPP"). On February 8, 2018, undersigned counsel repeatedly requested that Plaintiffs identify those documents that they contend contain information that Defendants improperly withheld. Beyond identifying seven documents as exemplars, Plaintiffs refused to do so.[2] Neither Defendants nor the Court can meaningfully assess Plaintiffs' claim that information was improperly withheld if Plaintiffs do not specifically identify the documents at issue. This is particularly true where, as here, Plaintiffs must demonstrate a sufficient showing of need for particular documents to overcome the DPP. *See In re Sealed Case*, 121 F.3d at 746; *see also Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004).

Rather than identify specific documents, Plaintiffs categorically contend that *all* communications from the Department of Defense after the President issued his statement on July 26, 2017, are post-decisional and thus not protected by the DPP. Plaintiffs' position has no basis in the law. "[E]ven documents dated after a decision has been made may still be eligible for protection under the deliberative process privilege" because those documents may be "'predecisional and deliberative with respect to other, non-final agency policies.'" *Judicial Watch, Inc. v. Dep't of Homeland Security*, 841 F. Supp. 2d 142, 162–63 (D.D.C. 2012) (Kollar-Kotelly, J.) (quoting *Judicial Watch, Inc. v FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)).

After the President's statement on July 26, 2017, the Government continued to examine military service by transgender individuals. A month after that statement, on August 25, 2017, the President issued the Presidential Memorandum to the Secretaries of Defense and Homeland Security directing the Secretaries to further examine military service by transgender individuals. In between those dates, numerous communications were made and documents were generated that were predecisional and deliberative with respect to the Presidential Memorandum. Moreover, given that the Secretary of Defense is expected to submit an implementation plan to the President on February 21, 2018, additional predecisional and deliberative documents have been—and continue to be—generated. These predecisional and deliberative documents that post-date the President's statement and pre-date the Presidential Memorandum, the Secretary's upcoming recommendation, and any decision by the President based on that recommendation, reflect the continuous examination of policy and have been properly withheld under the DPP. *See Judicial Watch*, 841 F. Supp. 2d at 163.

---

[2] Plaintiffs identified seven emails sent among Navy officials on July 26, 2017, as being improperly withheld. As stated on the privilege log provided to Plaintiffs, those emails are all predecisional and deliberative because they discuss policy developments concerning military service by transgender individuals and the exploration of implementation methods. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (The privilege promotes "honest and frank communication within [an] agency" and therefore protects from disclosure documents that may inaccurately reflect or prematurely disclose the views of the agency.).

February 12, 2018

Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director

ANTHONY J. COPPOLINO
Deputy Director

/s/ *Ryan Parker*
RYAN B. PARKER
Senior Trial Counsel
ANDREW J. CARMICHAEL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 616-8482
Email: ryan.parker@usdoj.gov

*Counsel for Defendants*

Included:

Alan E. Schoenfeld
WILMER CUTLER PICKERING HALE & DORR LLP
alan.schoenfeld@wilmerhale.com

Claire Laporte
FOLEY HOAG LLP
CLL@foleyhoag.com

*Counsel for Plaintiffs*