**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE 1, JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JOHN DOE 1, REGAN V. KIBBY, and DYLAN KOHERE, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; JAMES N. MATTIS, in his official capacity as Secretary of Defense; JOSEPH F. DUNFORD, JR., in his official capacity as Chairman of the Joint Chiefs of Staff; the UNITED STATES DEPARTMENT OF THE ARMY; MARK T. ESPER, in his official capacity as Secretary of the Army; the UNITED STATES DEPARTMENT OF THE NAVY; RICHARD V. SPENCER, in his official capacity as Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE AIR FORCE; HEATHER A. WILSON, in her official capacity as Secretary of the Air Force; the UNITED STATES COAST GUARD; KIRSTJEN M. NIELSEN, in her official capacity as Secretary of Homeland Security; the DEFENSE HEALTH AGENCY; RAQUEL C. BONO, in her official capacity as Director of the Defense Health Agency; and the UNITED STATES OF AMERICA, <br><br> Defendants. | Civil Action No. 17-cv-1597 (CKK) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION FOR
JUDGMENT ON THE PLEADINGS AND RESPONSE TO MOTION TO PARTIALLY
<u>DISSOLVE THE PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I. THE PRESIDENT IS NOT CATEGORICALLY IMMUNE FROM SUIT FOR CLAIMS SEEKING EQUITABLE RELIEF FOR HIS CONSTITUTIONAL VIOLATIONS ................................ 4

II. THERE ARE GOOD REASONS FOR THE COURT TO EXERCISE EQUITABLE JURISDICTION OVER THE PRESIDENT AT THIS STAGE......................................................... 13

CONCLUSION.................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)..................................................................................7

*Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378 (2015) ..........................................4

*Baker v. Carr*, 369 U.S. 186 (1962)................................................................................................6

*Barbour v. Merrill*, 48 F.3d 1270 (D.C. Cir. 1995) ......................................................................14

*Boumediene v. Bush*, 553 U.S. 723 (2008) ...................................................................................12

*Boumediene v. Bush*, No. 04-cv-01166, 2008 WL 5262160 (D.D.C. Aug. 12, 2008) .................12

*Chamber of Commerce of United States v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ...................5, 7

*Clinton v. City of New York*, 524 U.S. 417 (1998).....................................................................4, 12

*Committee on Judiciary, United States House of Representatives v. Miers*,
    558 F. Supp. 2d 53 (D.D.C. 2008)..............................................................................................7

*Dugan v. Rank*, 372 U.S. 609 (1963)..............................................................................................4

*Franklin v. Massachusetts*, 505 U.S. 788 (1992)......................................................................9, 10

*Freedom from Religion Foundation, Inc. v. Obama*, 691 F. Supp. 2d 890
    (W.D. Wis. 2010)...............................................................................................................4, 9, 12

*Georgia v. Stanton*, 73 U.S. 50 (1867) ...........................................................................................6

*Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017) ..........................................................................11

*Haynesworth v. Miller*, 820 F.2d 1245 (D.C. Cir. 1987)...............................................................3

*Hills v. Gautreaux*, 425 U.S. 284 (1976) .....................................................................................14

*International Refugee Assistance Project v. Trump*, 857 F.3d 557 (4th Cir. 2017) .....................11

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949).........................................4

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    134 S. Ct. 1377 (2014)...............................................................................................................13

*Mackie v. Bush*, 809 F. Supp. 144 (D.D.C. 1993) .....................................................................4, 9

*Mississippi v. Johnson*, 71 U.S. 475 (1866)................................................................................5, 6

*National Treasury Employees Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974) .................. 1, 6, 7, 8

*Newdow v. Bush*, 355 F. Supp. 2d 265 (D.D.C. 2005) ............................................................... 11

*Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) ................................................................ 11

*Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534 (D.D.C. 2014) ................................ 14

*Ralls Corp. v. Committee on Foreign Investment in United States*,
    758 F.3d 296 (D.C. Cir. 2014) .................................................................................................. 5

*Romer v. Carlucci*, 847 F.2d 445 (8th Cir. 1988) (en banc) ........................................................ 12

*Schuchardt v. President of the United States*, 839 F.3d 336 (3d Cir. 2016) ............................ 4, 12

*Stewart v. Evans*, 275 F.3d 1126 (D.C. Cir. 2002) ....................................................................... 3

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) ....................................................... 13

*Swan v. Clinton*, 100 F.3d 973 (D.C. Cir. 1996) .............................................................. 4, 10, 11

*Washington Legal Foundation v. United States Sentencing Commission*,
    89 F.3d 897 (D.C. Cir. 1996) .................................................................................................... 4

## DOCKETED CASE

*Doe v. Trump*, No. 17-5267 (D.C. Cir.) ........................................................................................ 3

## RULES

Fed. R. Civ. P.
    Rule 12(c) .................................................................................................................................. 3
    Rule 45 ...................................................................................................................................... 1

## OTHER AUTHORITIES

Siegel, Jonathan R., *Suing the President: Nonstatutory Review Revisited*,
    97 Colum. L. Rev. 1612 (1997) ............................................................................................ 6, 7

Wright, Charles Alan, et al., *Federal Practice & Procedure* § 4051 (3d ed. 2017) ....................... 6

**INTRODUCTION**

In July 2017, President Trump announced that transgender people would no longer be allowed to serve in the military. Plaintiffs, transgender individuals currently serving or planning to serve in the military, sued the President and other officials and agencies in the Executive Branch, claiming that the President's ban violates their rights under the Due Process Clause of the Fifth Amendment. The parties have vigorously litigated Plaintiffs' claims, and the Court has entered a preliminary injunction. Now, more than seven months after this matter began—and, not coincidentally, in the midst of a dispute over whether the President may withhold critical information in discovery—the government has moved for judgment on the pleadings and to partially dissolve the preliminary injunction on the ground that the President has never been a proper party to this case and must be dismissed.

The government argues that the Court cannot under any circumstances issue injunctive or declaratory relief against the President, thus rendering him "absolutely immune" from suit. Dkt. 90 ("Mot."), at 4. That extreme claim is not supported by any of the government's cited cases and is contrary to D.C. Circuit precedent. As the court of appeals has explained, "no immunity established under any case known to this Court bars every suit against the President for injunctive, declaratory or mandamus relief." *National Treasury Emps. Union v. Nixon*, 492 F.2d 587, 609 (D.C. Cir. 1974). The government's position relies on conflating two distinct issues— whether the Court is jurisdictionally barred from hearing any civil claims against the President, and whether the Court should, as a matter of discretion, sound practice, and respect for the other branches of government, enter equitable relief against the President in a particular case. Moreover, the motion appears intended to cut off Plaintiffs' pending civil discovery requests to the President, and to force Plaintiffs instead to send third-party subpoenas to the President under Federal Rule of Civil Procedure 45—a contrived route to discovery in a case where the

1

President's decision caused Plaintiffs' injuries, the genesis and purpose of that decision are central questions in the case, and the Executive Office of the President maintains records that may be critical to the litigation.

Consistent with governing precedent, the Court should decide the merits of Plaintiffs' case, and only after finding in Plaintiffs' favor should it consider whether Plaintiffs' need for complete relief against the President outweighs any separation-of-powers concerns. But this Court should reject the government's argument that separation of powers immunizes the President even from being a defendant in a civil case challenging his official action. None of the government's cases supports such absolute immunity.

Plaintiffs do not oppose the dissolution of the preliminary injunction as to the President, as long as it continues to enjoin the other Defendants. But there is no basis to dismiss the President as a party. The motion for judgment on the pleadings should therefore be denied.

## BACKGROUND

On July 26, 2017, without any advance warning or apparent consultation with the Department of Defense or the Joint Chiefs of Staff, President Trump announced through a series of tweets that "the United States government will not accept or allow Transgender individuals to serve in any capacity in the U.S. military." Dkt. 61, at 14. On August 25, 2017, the President issued a memorandum to the Secretaries of Defense and Homeland Security, directing them to adhere to a policy that "generally prohibit[s] openly transgender individuals from accession into the United States military and authoriz[es] the discharge of such individuals." *Id.* at 15-16.

Plaintiffs, who are transgender individuals either currently serving or planning to serve in the military, filed suit against President Trump and a group of subordinate agencies and officials to challenge the President's decision. In so doing, Plaintiffs requested that the Court "[i]ssue a declaratory judgment that the President's directive to categorically exclude transgender people

from military service is unconstitutional" and "[i]ssue a preliminary and permanent injunction prohibiting the categorical exclusion of transgender people from military service." Dkt. 9, at 18. The Court entered portions of the requested preliminary injunction against all Defendants on October 30, 2017. Dkt. 60. The Court subsequently denied the government's request for a partial stay of the preliminary injunction, Dkt. No. 75, as did the D.C. Circuit, *see* Per Curiam Order, *Doe v. Trump*, No. 17-5267 (D.C. Cir. Dec. 22, 2017). Following the denial of the stay, all Defendants filed their answer on December 29, 2017. Dkt. 78.

At no point during these proceedings did the government seek to dismiss the President from the case or otherwise argue that no relief could issue against him—even while it filed a motion to dismiss and sought a stay of a preliminary injunction that ran against the President. *See, e.g.*, Dkt. 45 (opposing Plaintiffs' application for a preliminary injunction and moving to dismiss); Dkt. 73 (seeking stay of preliminary injunction pending appeal). The government's answer was filed on the President's behalf, and in responding to the paragraph of the amended complaint identifying the President as a defendant, the government did not question the availability of relief against him. Dkt. 78 ¶ 41. Only after moving for a protective order that would bar Interrogatories directed to the President and others about communications with the President, *see* Dkt. 89, did the government move to dismiss him on the "jurisdiction[al]" ground that he is not now, and never was, a proper party to the lawsuit, Mot. 7.

**LEGAL STANDARD**

"In considering a motion for judgment on the pleadings" under Federal Rule of Civil Procedure 12(c), "the Court should 'accept as true the allegations in [Plaintiffs'] pleadings' and 'accord the benefit of all reasonable inferences to the non-moving party.'" *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002) (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir. 1987)).

3

**ARGUMENT**

I. **THE PRESIDENT IS NOT CATEGORICALLY IMMUNE FROM SUIT FOR CLAIMS SEEKING EQUITABLE RELIEF FOR HIS CONSTITUTIONAL VIOLATIONS**

1. The President is the first-named party in suit after suit challenging his actions on statutory and constitutional grounds. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 425 & n.9 (1998) (affirming declaratory relief holding that President may not exercise line-item veto); *Schuchardt v. President of the U.S.*, 839 F.3d 336, 353-354 (3d Cir. 2016) (reversing dismissal of suit against President and other executive branch officials challenging constitutionality of electronic surveillance programs); *Freedom from Religion Found., Inc. v. Obama*, 691 F. Supp. 2d 890, 908 (W.D. Wis. 2010) ("[Defendants] are wrong to suggest that the President is immune from injunctive or declaratory relief."), *vacated on other grounds*, 641 F.3d 803 (7th Cir. 2011); *Mackie v. Bush*, 809 F. Supp. 144, 146 (D.D.C. 1993) (Oberdorfer, J.) (preliminarily enjoining President from removing plaintiffs from government office), *vacated on mootness grounds sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993).

So too here: Plaintiffs brought suit against the President, alleging, among other things, that his decision to bar military service by transgender individuals violates their rights to equal protection and due process. As the Supreme Court has made clear, "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015). In such cases, "sovereign immunity does not apply as a bar to suits alleging that an officer's actions were unconstitutional." *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949); *Dugan v. Rank*, 372 U.S. 609, 621-623 (1963); *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C.

4

Cir. 1996)).  The President, no less than any other federal official, is bound by the limitations on federal authority prescribed by the Fifth Amendment to the U.S. Constitution.  *See, e.g.*, *Ralls Corp. v. Committee on Foreign Inv. in U.S.*, 758 F.3d 296, 323 (D.C. Cir. 2014); *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322, 1326 (D.C. Cir. 1996).

Despite the numerous suits in which the President has been a party—and the absence of sovereign immunity from suits in equity to enforce the Constitution against federal officials—the government argues (at 4) that, as a matter of separation of powers, the President is "absolutely immune" from an official-capacity suit, whether in equity or at law.  This Court should reject that novel assertion of absolute presidential immunity.  Nor do the government's cases support any such categorical immunity from suit.  Perhaps sensing the grave concerns about judicial review of executive action that its assertion of immunity poses, the government attempts (at 7) to assure the Court that "Plaintiffs [can] obtain full relief for their alleged injuries through injunctive relief against [the] other Defendants."  But the issue presented by Defendants' motion is not whether the President must be a party to the case to afford Plaintiffs any relief on their claims; the question, as the government frames it, is whether the President is absolutely immune from suit in his official capacity.  He is not.

2. The government claims (at 7) that "the President is not a proper defendant in this case" based centrally on *Mississippi v. Johnson*, 71 U.S. 475 (1866).  According to the government, *Mississippi* holds that, as a matter of separation of powers, an Article III court may never enter equitable (*i.e.*, injunctive or declaratory) relief against the President in a civil case involving official action taken by him (at least where that action is not "ministerial"), thus rendering the President immune from suit and mandating his dismissal from this case.  The government overreads that decision.

5

Mississippi sought to enjoin President Andrew Johnson from implementing the Reconstruction Acts on the basis that the Acts violated the Constitution. 71 U.S. at 497. The Court refused to entertain the case, and stated that it had "no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Id.* at 501. In so doing, the Court stated that the duties it was being asked to enjoin were "purely executive and political" rather than "ministerial," that the courts can no more enjoin the Executive than they could enjoin Congress, and that an injunction barring enforcement of a duly passed law would either render the courts without power to effectuate their order (if the President refused to comply) or set the President on a collision course with Congress that could result in impeachment (if the President did comply). *Id.* at 499-501.

Contrary to the government's view that *Mississippi* stands for the absolute immunity of the President from suit, *Mississippi* is best read—and indeed has been read by the Supreme Court and the D.C. Circuit—as a political question case. Treatises and scholars agree that *Mississippi* reflected only the Court's judgment that the constitutionality of Reconstruction was a nonjusticiable political question. *See* Siegel, *Suing the President: Nonstatutory Review Revisited*, 97 Colum. L. Rev. 1612, 1693 (1997); Wright et al., *Federal Practice & Procedure* § 4051 (3d ed. 2017) (describing *Mississippi* as rejecting attempts to bar enforcement of Reconstruction on "political question grounds"). In fact, the Supreme Court has cited *Mississippi* in discussions of justiciability—not Presidential immunity. *See Baker v. Carr*, 369 U.S. 186, 224-226 & n.52 (1962); *see also National Treasury Emps. Union v. Nixon* ("*NTEU*"), 492 F.2d 587, 614 (D.C. Cir. 1974). Confirming that reading, the Court dismissed a subsequent attempt to enjoin the Secretary of War from enforcing the same Reconstruction Acts as a nonjusticiable political question. *See Georgia v. Stanton*, 73 U.S. 50, 77-78 (1867).

6

*Mississippi* does not support the government's sweeping position that dismissal of the President is required in any civil case challenging the constitutionality of his action. As scholars have observed, many of the bases on which the Supreme Court grounded its decision in *Mississippi* would seemingly apply with equal force to suits against subsidiary officers in the Executive Branch, *see* Siegel, 97 Colum. L. Rev. at 1693, and yet it could hardly be questioned today that courts may exercise jurisdiction over subsidiary officers in such cases and enter equitable relief against them. *See, e.g.*, *Reich*, 74 F.3d at 1331 n.4 (discussing the "long established non-statutory review of a claim directed at a subordinate executive official").[1]

3. The government's expansive reading of *Mississippi v. Johnson* reprises arguments that were rejected by the D.C. Circuit in *NTEU*. A public employee union sought declaratory and injunctive relief and mandamus to compel President Nixon to make federal pay adjustments required by federal law. The district court, accepting an argument made by the government based on *Mississippi*, dismissed the case on the ground that "to permit the President to be sued in this case would violate the separation of powers doctrine." 492 F.2d at 606. The D.C. Circuit disagreed, holding that "there is no room for any difference as to the President's amenability to legal process, no matter how much a Court in a given case may seek to avoid subjecting the president or any executive officer to judicial orders resulting from the exercise of legal process." *Id*. at 612.

---

[1] Moreover, the *Mississippi* Court's reference to its lack of "jurisdiction" over the case is inconsistent with the way that the Court today understands the meaning of that term, which is limited to authority to adjudicate, grounded in the Constitution and statute, rather than the merits of a dispute or the appropriate exercise of equitable power. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) ("'Jurisdiction,' this Court has observed, 'is a word of many, too many, meanings.' This Court, no less than other courts, has sometimes been profligate in its use of the term." (internal citations omitted)); *Committee on Judiciary, U.S. House of Reps. v. Miers*, 558 F. Supp. 2d 53, 81 (D.D.C. 2008) ("It is conceivable that courts may at times employ the terms 'cause of action' and 'jurisdiction' interchangeably.").

Although the D.C. Circuit held that it had jurisdiction over the case and authority to issue a writ of mandamus to the President, and although it ruled against the President on the merits of the litigation, it nonetheless concluded that it need not "exercise that authority [to issue a writ of mandamus] at this time." 492 F.2d at 616. Rather, the court decided it would act instead "pursuant to the provisions of the Federal Declaratory Judgment Act" and that the case "presents a most appropriate instance for the use of a declaratory decree." *Id*. Thus, "to show the utmost respect to the office of the Presidency," the court limited its relief to "a declaration of the law, that is, that the President has a constitutional duty" to act as the statute required. *Id.*[2]

*NTEU* makes clear that whether the President may be subject to suit is an entirely different question from whether any particular form of relief may or should be entered against the President in a particular case. In *NTEU*, the court recognized that it had jurisdiction over the dispute—including over the President—and it adjudicated the merits of the case, but it framed its remedial order in a way designed to cause the least possible intrusion into the President's constitutional sphere of authority. The government points to no reason why this Court cannot do the same here. The Court has subject-matter jurisdiction over this case, and the President is a proper defendant. Whether the President should be subject to any particular relief is a question

---

[2]   Although *NTEU* involved a "ministerial" duty (to grant pay adjustments that were already mandated by law), the D.C. Circuit did not say that its authority to issue equitable relief against the President was limited *only* to cases involving ministerial duties. 492 F.2d at 616. The government appears to suggest (at 5-6) that to the extent equitable relief is ever available against the President, it could only be for the performance of a "ministerial duty." But the government does not explain why at least some forms of equitable relief—such as declaratory relief—would not be permissible in a case that does not involve a "ministerial" duty, and the courts have entered such relief before (*see infra* p. 12). The Court has ample discretion to fashion relief that would not unduly intrude on the President's constitutional functions—exactly as the D.C. Circuit recognized in *NTEU*.

that the Court should consider only after reaching a decision on the merits, when it can properly weigh the President's special constitutional status against Plaintiffs' need for complete relief.

4. Nor do the two other cases on which the government principally relies—*Franklin v. Massachusetts*, 505 U.S. 788 (1992), and *Swan*—create any jurisdictional bar to Plaintiffs' claims against the President. In *Franklin*, the State of Massachusetts and two individual plaintiffs sued the President and Secretary of Commerce over the decision to count overseas military personnel in the census as residents of their home state of record for purposes of reapportioning the House of Representatives. Although the Court held that the plaintiffs' constitutional challenges to the apportionment formula could be adjudicated and redressed "by declaratory relief against the Secretary alone," *id.* at 803, and that "the President's actions may still be reviewed for constitutionality," *id.* at 801, it concluded that the President's determinations were "not reviewable for abuse of discretion under [the Administrative Procedure Act]," *id.*, because the President was not an "agency" whose actions are subject to review under the APA's statutory review scheme, *id.* at 800-801. The Court therefore ruled that the district court should not have entered injunctive relief directly against the President. *See id.* at 791, 801.

Like *Mississippi*, *Franklin* does not hold that the President may not be a defendant in a civil suit challenging his actions for unconstitutionality; nor did it hold that declaratory relief may never be entered against the President.[3] The plurality opinion in *Franklin* addressed *Mississippi* only in the context of its disagreement with Justice Scalia over whether the plaintiffs' injuries were redressable in the absence of an injunction against the President. 505 U.S. at 802-

---

[3] Indeed, district courts have rejected the same arguments and reading of *Franklin* the government advances here. *See, e.g.*, *Freedom from Religion Found.*, 691 F. Supp. 2d at 908 ("[Defendants] are wrong to suggest that the President is immune from injunctive or declaratory relief."); *Mackie*, 809 F. Supp. at 146 (Oberdorfer, J.) (preliminarily enjoining President from removing plaintiffs from government office).

9

803. Defendants do not challenge redressability here; to the contrary, they argue (at 7) that because redress may be had through others, the President should be deemed absolutely immune for his own constitutional violations—a proposition the Court pointedly did not embrace in *Franklin*.[4]

The government's reliance on *Swan* is likewise misplaced. In *Swan*, a former member of the board of the National Credit Union Administration sued President Clinton and others for equitable relief, challenging his removal from the board. 100 F.3d at 974. The D.C. Circuit acknowledged that equitable injunctive relief against the President would be "an extraordinary measure not lightly to be taken." *Id.* at 976-977. As in *Franklin*, however, the question was not whether the President had to be dismissed as a defendant, but rather whether the plaintiff could obtain redress by an order directed to *any* defendant or other government official and thus had standing to pursue his case at all. *Id.* at 979. As in *Franklin*, the D.C. Circuit found jurisdiction because an injunction against subordinate officials could provide the plaintiff sufficient relief— for example, by ordering the Secretary of the Treasury to pay him and other board members to treat him as though he were still in office. *Id.* at 979-981.

The D.C. Circuit did not hold in *Swan*—as the government urges here—that the President could not be sued, and it did not direct that he be dismissed as a defendant. Rather, the decision focused on the concerns raised by "injunctive relief against the President … in the exercise of his official duties." 100 F.3d at 976. In dictum in a footnote, the court remarked that "similar considerations regarding a court's power to issue relief against the President himself apply to

---

[4] The Court therefore did not adopt the suggestion by Justice Scalia, in his separate opinion, that the courts "cannot issue a declaratory judgment against the President" and that the President is "immun[e] from such judicial relief." 505 U.S. at 827 (Scalia, J., concurring in part and concurring in the judgment).

10

Swan's request for a declaratory judgment." *Id.* at 976 n.1.  The court, however, did not rule on the permissibility of a declaratory judgment, nor did it overrule its prior decision in *NTEU*, in which it issued a declaratory ruling that President Nixon had acted contrary to law when he refused to comply with the federal employee pay statute.  And while the D.C. Circuit in *Swan* stated that, in light of *Franklin*, it was "not entirely clear" whether it had correctly concluded in *NTEU* that it had authority to issue a *writ of mandamus* against the President (effectively, "injunctive relief against the President personally"), *id.* at 978, it did not question *NTEU*'s decision to issue declaratory relief.

       5.      In short, the government's cases do not support its unprecedented claim that no relief may run against the President in a civil case challenging the constitutionality of his actions and that he must therefore be dismissed as a party.[5]  Rather, they emphasize that injunctive relief against the President should be considered extraordinary.  The propriety of extraordinary relief

---

[5] Nor do the government's other cases support its claim that the Court is required to dismiss the President from this case. In *Newdow v. Bush*, 355 F. Supp. 2d 265 (D.D.C. 2005), the plaintiff sought an injunction preventing President Bush from using clergy to participate in his second inauguration.  The district court concluded that Newdow likely could not establish his standing, and agreed with the government, based on *Franklin* and *Swan*, that it should not issue either injunctive or declaratory relief against the President.  But the court also stressed that, in that particular context, granting declaratory relief would "make[] no sense" because all that the plaintiff wanted was a preliminary injunction against the President.  *See id.* at 281.  Moreover, the court did not hold that the President was not a proper defendant to the case—the question the government raises here.

    The government also cites *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010), for the proposition that the courts "have never submitted the President to declaratory relief."  But that decision explicitly distinguished *Clinton v. City of New York*, in which the Supreme Court had affirmed a declaratory judgment against the President, on the ground that "plaintiffs in that case (unlike plaintiffs in this case) actually named the President in their suit."  *Id.* at 1012.  Further, as just noted, it is factually mistaken that courts "have never submitted the President to declaratory relief."  Finally, the two cases the government cites regarding the so-called travel ban—*International Refugee Assistance Project v. Trump*, 857 F.3d 557 (4th Cir. 2017) and *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017)—only dissolved preliminary injunctions against the President without dismissing him from the case.  As discussed below, Plaintiffs do not object to dissolving the preliminary injunction against the President here.  *See infra* pp. 13-15.

11

against the President in a given case, however, is a matter not of the court's foundational jurisdiction but of its remedial judgment, informed by respect for the Office of the Presidency.

That view is confirmed by the fact that the Supreme Court and others have explicitly affirmed equitable relief against the President in several cases that postdate *Franklin*. In *Clinton v. City of New York*, for instance, the Court affirmed the entry of a declaratory judgment against President Clinton stating that the Line Item Veto Act (and the President's use of the powers granted in that act to strike items from duly passed legislation) was unconstitutional. 524 U.S. at 425 & n.9, 449. And in *Boumediene v. Bush*, the Supreme Court held that the judicial branch has the power to order the President to release detainees held as enemy combatants in violation of the Constitution. 553 U.S. 723, 771 (2008). On remand from the Supreme Court, the district court rejected the government's attempt to dismiss President Bush from the case as an improper defendant on substantially similar grounds to those raised by the government here. *See* Gov't Mot. Dismiss Improper Resp'ts, *Boumediene v. Bush*, No. 04-cv-01166, 2008 WL 5262160 (D.D.C. Aug. 12, 2008); Minute Order, *Boumediene v. Bush*, No. 04-cv-01166 (D.D.C. Nov. 10, 2008) (Leon, J.).[6]

---

[6] Other courts have allowed cases naming the President as a defendant to proceed as well. *See, e.g.*, *Schuchardt v. President of the United States*, 839 F.3d 336, 340, 354 (3d Cir. 2016) (reversing dismissal of claim attempting to enjoin President from collecting plaintiff's electronic information through surveillance program); *Romer v. Carlucci*, 847 F.2d 445, 449, 464 (8th Cir. 1988) (en banc) (reversing dismissal of claim against President and others related to environmental impact of missile silos); *Freedom from Religion Found.*, 691 F. Supp. 2d at 908 (noting that the government is "wrong to suggest that the President is immune from injunctive or declaratory relief" and allowing a claim regarding President's proclamation of National Day of Prayer to proceed to the merits).

## II. THERE ARE GOOD REASONS FOR THE COURT TO EXERCISE EQUITABLE JURISDICTION OVER THE PRESIDENT AT THIS STAGE

Although the government's cited cases acknowledge that the entry of relief directly against the President raises concerns to which a court should be attentive when fashioning an appropriate and complete remedy for a legal violation, they have not held, as the government now argues, that the President may not be made a defendant in any civil case at all and must be dismissed. Indeed, *no* court has made a holding so broad as the one the government now asks this Court to make; the government's motion thus effectively asks this Court to announce an unprecedented constitutional immunity for the President against claims for equitable relief.

In light of the concerns that courts have raised about entering an injunction against the President, Plaintiffs do not object to dissolving the preliminary injunction as to the President at this stage. But in the absence of a mandatory rule requiring dismissal of the President based on his constitutional immunity from suit, this Court should exercise its "unflagging" obligation to decide cases within its jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014); *see Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2347 (2014). Here, there is no basis for dismissal, and every reason to keep the President in the case.

*First*, the President's actions are central to this case. It was the President—not his subordinate officers and agencies—who proclaimed that all transgender individuals are unfit for service in the military, and the stigma that flows from that proclamation is a central aspect of the violation of the Plaintiffs' constitutional rights. A judgment against the President declaring that his discriminatory policy violates the Constitution thus would serve a remedial purpose not fulfilled by relief against the other Defendants, and poses none of the problems implicated by injunctive relief. Absent a jurisdictional rule barring his presence in this suit, it is premature to decide the scope of relief that should run against the President. Courts have wide discretion in

13

determining "[t]he nature and scope of the remedial decree" to redress constitutional violations by the federal government. *Hills v. Gautreaux*, 425 U.S. 284, 306 (1976); *see also Pyramid Lake Paiute Tribe v. Burwell*, 70 F. Supp. 3d 534, 545 (D.D.C. 2014) (citing *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995)). Any separation-of-powers concerns can be adequately addressed in that context.

*Second*, as this Court is well aware, the parties are in the middle of discovery, and discovery from the President is important to the issues in this case. Plaintiffs challenge a decision made by the President, not one of the federal officials or agencies under his supervision; the government has defended the President's action based on the alleged nature of his decision-making process; and the Executive Office of the President possesses documents and information central to this case that no other Defendant possesses. *See* Dkt. 91, at 18-22. In these circumstances, it would be illogical and fundamentally unfair to treat the President as a stranger to the case, from whom discovery could be had, if at all, only by serving him with a third-party subpoena.[7]

In sum, although relief against the President in a civil case may be an extraordinary measure not to be taken lightly, it has been ordered before, and the fact that the remedy may be unusual does not mean that the President must be dismissed from this case. In recognition of the caution that a court should take when considering appropriate relief, Plaintiffs do not oppose the dissolution of the preliminary injunction insofar as it runs against the President, as long as it remains in force against his subordinate officers. But there is no occasion for the Court to decide

---

[7] If the President is a party to this case, then Plaintiffs may serve him with interrogatories and requests for admission, and they have done so in this case. But if the President must be treated as a third party, then Plaintiffs could obtain testimonial (non-documentary) evidence from him only by serving a notice of a deposition—a practice that would raise equitable and separation-of-powers concerns of its own.

14

now whether relief against the subordinate officers alone will suffice to remedy Plaintiffs' injuries at the end of this case. The Court should therefore deny the government's motion for judgment on the pleadings and defer for a later date any consideration of the appropriate remedy for the President's unconstitutional action.

## CONCLUSION

The motion for judgment on the pleadings should be denied. Plaintiffs do not oppose the dissolution of the preliminary injunction insofar as it runs against the President.

| | |
|---|---|
| March 16, 2018 | Respectfully submitted, |
| | /s/ Paul R.Q. Wolfson |
| Claire Laporte (*pro hac vice*) | Paul R.Q. Wolfson (D.C. Bar No. 414759) |
| Matthew E. Miller (*pro hac vice*) | Kevin M. Lamb (D.C. Bar No. 1030783) |
| Daniel L. McFadden (*pro hac vice*) | WILMER CUTLER PICKERING |
| Kathleen M. Brill (*pro hac vice*) |    HALE & DORR LLP |
| Michael J. Licker (*pro hac vice*) | 1875 Pennsylvania Ave. N.W. |
| Rachel C. Hutchinson (*pro hac vice*) | Washington, D.C. 20006 |
| FOLEY HOAG LLP | Telephone: 202-663-6000 |
| 155 Seaport Blvd. | Fax: 202-663-6363 |
| Boston, Massachusetts 02210 | |
| Telephone: 617-832-1000 | Alan E. Schoenfeld (*pro hac vice*) |
| Fax: 617-832-7000 | WILMER CUTLER PICKERING |
| |    HALE & DORR LLP |
| Jennifer Levi (*pro hac vice*) | 7 World Trade Center |
| Mary Bonauto (*pro hac vice*) | 250 Greenwich St. |
| GLBTQ LEGAL ADVOCATES & DEFENDERS | New York, New York 10007 |
| 30 Winter St., Ste. 800 | Telephone: 212-230-8800 |
| Boston, Massachusetts 02108 | Fax: 212-230-8888 |
| Telephone: 617-426-1350 | |
| Fax: 617-426-3594 | Christopher R. Looney (*pro hac vice*) |
| | Harriet Hoder (*pro hac vice*) |
| Shannon P. Minter (*pro hac vice*) | Adam M. Cambier (*pro hac vice*) |
| Amy Whelan (*pro hac vice*) | WILMER CUTLER PICKERING |
| Christopher F. Stoll (*pro hac vice*) |    HALE & DORR LLP |
| NATIONAL CENTER FOR LESBIAN RIGHTS | 60 State Street |
| 870 Market St., Ste. 370 | Boston, Massachusetts 02109 |
| San Francisco, California 94102 | Telephone: 617-526-6000 |
| Telephone: 415-392-6257 | Fax: 617-526-5000 |
| Fax: 415-392-8442 | |
| | Nancy Lynn Schroeder (*pro hac vice*) |
| | WILMER CUTLER PICKERING |
| |    HALE & DORR LLP |
| | 350 S. Grand Ave., Ste. 2100 |
| | Los Angeles, California 90071 |
| | Telephone: 213-443-5300 |
| | Fax: 213-443-5400 |
| | |
| | *Attorneys for Plaintiffs* |