**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **JANE DOE 1,** *et al.*,<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>**DONALD J. TRUMP,** *et al.*,<br><br>      **Defendants.** | **Civil Action No. 17-cv-1597 (CKK)** |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS AND
MOTION TO PARTIALLY VACATE THE PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiffs repeatedly misstate Defendants' arguments in support of dismissal of the President in an apparent attempt to cast Defendants' position as "extreme" and "novel." Pls.' Opp. at 1, 5, ECF No. 92. Defendants do not argue here, as Plaintiffs contend, that "the Court cannot under any circumstances issue injunctive or declaratory relief against the President, thus rendering him 'absolutely immune' from suit." *Id.* at 1; *see also id.* at 4–5, 13. Instead, Defendants argue that a court may not grant injunctive or declaratory relief against the President for his official, non-ministerial conduct particularly where, as here, relief granted against subordinate Executive officials would provide full relief to Plaintiffs. *See* Defs.' Mot. at 1, ECF No. 90 (arguing that "the Court may not issue a declaratory judgment or an injunction against the President in his official capacity and in the performance of discretionary actions"); *see also id.* at 7 (stating same). Far from being "extreme" or "novel," Pls.' Opp. at 1, 5, this argument is firmly rooted in Supreme Court and D.C. Circuit precedent.

Nor do Defendants argue, as Plaintiffs imply, that dismissing the President from this suit would render his actions unreviewable. *See id.* at 5. To the contrary, the Court could dismiss the President from the case, review the constitutionality of the operative policy governing military service by transgender individuals, and, if the Court finds the policy to be unconstitutional, issue an injunction and/or a declaratory judgment against the other defendants. Doing so would comply with the D.C. Circuit's directive to "avoid confronting the elected head of a coequal branch of government" while providing full relief to Plaintiffs. *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996).

## ARGUMENT

**I.     Separation-of-Powers Considerations Preclude the Entry of an Injunction Against the President for his Official, Non-Ministerial Actions.**

As explained in Defendants' motion, courts lack authority to issue injunctive relief against the President for non-ministerial actions that he has taken in his official capacity. *See* Defs.' Mot. at 2–8 (citing, *inter alia*, *Mississippi v. Johnson*, 71 U.S. 475, 499–501 (1866); *Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992)). In *Mississippi*, the Supreme Court stated that "this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties." 71 U.S. at 501. Plaintiffs argue that *Mississippi* is "a political question case" that "reflected only the Court's judgment that the constitutionality of Reconstruction was a nonjusticable political question." Pls.' Opp. at 6. But neither the Supreme Court nor the D.C. Circuit has limited *Mississippi* to the narrow reading that Plaintiffs advocate. Rather, in considering redressability in suits brought against the President, both the Supreme Court and the D.C. Circuit have started from *Mississippi*'s premise that "in general, '[the] court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" *Franklin*, 505 U.S. at 802–03 (quoting *Mississippi*, 71 U.S. at 501); *Swan*, 100 F.3d at 977. Other courts

have likewise interpreted *Mississippi* as barring injunctive relief against the President for his official, non-ministerial actions. *See, e.g.*, *Newdow v. Bush*, 355 F. Supp. 2d 265, 280 (D.D.C. 2005) (recognizing "longstanding legal authority that the judiciary lacks the power to issue an injunction or declaratory judgment against the co-equal branches of the government—the President and the Congress" (citing *Mississippi*, 71 U.S. at 500); *Hawaii v. Trump*, 859 F.3d 741, 788 (9th Cir.), *vacated and remanded on other grounds*, 138 S. Ct. 377 (2017) (quoting the same language from *Mississippi* and *Franklin* and vacating the district court's preliminary injunction as it ran against the President); *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 557, 605 (4th Cir.), *vacated and remanded on other grounds sub. nom. Trump v. Int'l Refugee Assistance*, 138 S. Ct. 353 (2017) (same); *Willis v. Dep't of Health & Human Servs.*, 38 F. Supp. 3d 1274, 1277 (W.D. Okla. 2014) (citing to *Mississippi* and *Franklin* and finding that "[l]ongstanding legal authority establishes that the judiciary does not possess the power to issue an injunction against the President" and dismissing the complaint as to the President); *see also* Defs.' Mot. at 4 n.2 (listing cases). Therefore, far from being limited to "a political question case," Pls.' Opp. at 6, *Mississippi* stood for, and continues to stand for, the proposition that the Court does not have authority to issue an injunction against the President for his official, non-ministerial actions. *See Mississippi*, 71 U.S. at 501; *Franklin*, 505 U.S. at 802–03; *Swan*, 100 F.3d at 977.

Plaintiffs apparently agree. That is, despite advocating for a narrow reading of *Mississippi*, Plaintiffs acknowledge the "concerns that courts have raised about entering an injunction against the President" and state that they "do not oppose the dissolution of the preliminary injunction as to the President, as long as it continues to enjoin the other Defendants." Pls.' Opp. at 2, 13. Plaintiffs' apparent concession that the President should not have been subject to the preliminary injunction renders their argument that the Court can enter a permanent injunction against the President in this case nonsensical. Regardless of whether an injunction is

3

preliminary or permanent, an order directing the President to take an official, non-ministerial action—here, in his capacity as Commander in Chief—would impede the separation of powers and should not be entered, particularly where, as here, the Court may fully redress Plaintiffs' alleged injuries through entry of equitable relief against the other Defendants. *Swan*, 100 F.3d at 978 (stating that "for the President to 'be ordered to perform particular executive . . . acts at the behest of the Judiciary,' at best creates an unseemly appearance of constitutional tension and at worst risks a violation of the constitutional separation of powers" (quoting *Franklin*, 505 U.S. at 827 (Scalia, J., concurring))); *see also Clinton v. Jones*, 520 U.S. 681, 718–19 (1997) (Breyer, J., concurring) (acknowledging "the apparently unbroken historical tradition . . . implicit in the separation of powers that a President may not be ordered by the Judiciary to perform particular Executive acts" (citation omitted)).  Therefore, the Court should dissolve the preliminary injunction as it runs against the President and find that it does not have authority to enjoin the President in this case.  *See Hawaii*, 859 F.3d at 788 (vacating a preliminary injunction as it ran against the President); *Int'l Refugee Assistance Project*, 857 F.3d at 605 (same).

## II.     Similar Separation-of-Powers Considerations Preclude the Entry of Declaratory Judgment Against the President in this Case.

Based on similar separation-of-powers considerations, declaratory relief also is not available against the President.  With respect to Executive Branch officials, a "declaratory judgment is the functional equivalent of an injunction," *Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (citing *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 n.8 (D.C. Cir. 1985)), because "it must be presumed that federal officers will adhere to the law as declared by the court," *Sanchez-Espinoza*, 770 F.2d at 208 n.8, with respect to the parties before it.  Therefore, "similar considerations regarding a court's power to issue [injunctive] relief against the President himself apply to [a] request for a declaratory

judgment." *Swan*, 100 F.3d at 976 n.1; *see also Sanchez-Espinoza*, 770 F.2d at 208 n.8 (The

"equivalence of [the] effect" of injunctive and declaratory relief directed at Executive branch

officials "dictates an equivalence of criteria for issuance." (citing *Samuels v. Mackell*, 401 U.S.

66, 73 (1971)).  As Justice Scalia explained in *Franklin*:

> For similar reasons, I think we cannot issue a declaratory judgment against the
> President.  It is incompatible with his constitutional position that he can be
> compelled personally to defend his executive actions before a court . . . .  The
> President's immunity from such judicial relief is "a functionally mandated
> incident of the President's unique office, rooted in the constitutional tradition of
> the separation of powers and supported by our history."

505 U.S. at 827–28 (Scalia, J., concurring) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 749

(1982)).  Following *Franklin*, the D.C. Circuit determined that "declaratory relief" against the

President for his non-ministerial conduct "is unavailable."  *Newdow v. Roberts*, 603 F.3d 1002,

1012–13 (D.C. Cir. 2010) ("The only apparent avenue of redress for plaintiffs' claimed injuries

would be injunctive or declaratory relief against all possible President-elects and the President

himself.  But such relief is unavailable.").  The district court likewise found that "the same

principles foreclose a declaratory judgment against the President as well as injunctive relief."

*Newdow*, 355 F. Supp. 2d at 281 (citing *Swan*, 100 F.3d at 977).  Accordingly, the Court should

find that declaratory relief against the President in connection with his official, non-ministerial

actions is unavailable in this case.

III.    **Plaintiffs May Obtain Full Redress of Their Alleged Injuries Through the Entry of
        Equitable Relief Against the Other Defendants.**

Plaintiffs argue that the Court should not dismiss the President from the case because "the

stigma that flows from [the President's] proclamation is a central aspect of the violation of the

Plaintiffs' constitutional rights" and "[a] judgment against the President declaring that his

discriminatory policy violates the Constitution thus would serve a remedial purpose not fulfilled

by relief against the other Defendants."  Pls.' Opp. at 13.  But maintaining the President as a

defendant merely to vindicate a purported stigmatic injury finds no support in the law and cannot overcome the significant separation-of-powers concerns raised by Plaintiffs' proposed injunction and declaratory judgment against the President.  Plaintiffs may receive the relief they seek—a "declaratory judgment that the President's directive to categorically exclude transgender people from military service is unconstitutional," and "a preliminary and permanent injunction prohibiting the categorical exclusion of transgender people from military service," Am. Compl. at 18, ECF No. 9—without the President as a named defendant in this case.

A similar course of action was taken by the district court and affirmed by the Supreme Court in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).  In *Youngstown*, the Supreme Court considered "whether the President was acting within his constitutional power when he issued an [executive] order directing the Secretary of Commerce to take possession of and operate most of the Nation's steel mills." *Id.* at 582.  Although the President was not a defendant in the case, the Court held that the President's order was unconstitutional and affirmed the district court's decision enjoining the Secretary of Commerce from carrying out the order. *See id.* at 585–89; *see also Panama Ref. Co. v. Ryan*, 293 U.S. 388, 433 (1935) (concluding that Executive Orders issued by the President were unconstitutional and directing the entry of a permanent injunction to prevent subordinate Executive officials from enforcing the orders).

Similarly, here, the Court could dismiss the President from the case and then still find that the policy regarding military service by transgender individuals is unconstitutional and issue injunctive and/or declaratory relief against the Secretary of Defense and the Service Secretaries. Providing relief in this fashion would avoid the fundamental separation-of-powers intrusion that arises with the Judiciary enjoining or entering declaratory relief against the head of the Executive Branch. *See Swan*, 100 F.3d at 978–79 (stating that "[i]n most cases, any conflict between the desire to avoid confronting the elected head of a coequal branch of government and to ensure the

rule of law can be successfully bypassed, because the injury at issue can be rectified by

injunctive relief against subordinate officials") (citing *Franklin*, 505 U.S. at 803; *Chamber of*

*Commerce v. Reich*, 74 F.3d 1322, 1328, 1331 n.4 (D.C. Cir. 1996); *Harlow v. Fitzgerald*, 457

U.S. 800, 811 n.17 (1982)); *see also Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542

U.S. 367, 389–90 (2004) (stating that "'occasion[s] for constitutional confrontation between the

two branches' should be avoided whenever possible" (quoting *United States v. Nixon*, 418 U.S.

683, 692 (1974))).

## IV.     Plaintiffs Rely on Authority that is Readily Distinguishable or Otherwise Silent on Whether Equitable Relief May Be Entered Against the President.

### A.     Plaintiffs' Reliance on *National Treasury Employees Union v. Nixon* is Misplaced.

Plaintiffs primarily rely on a case from 1974, *National Treasury Employees Union v.*

*Nixon*, 492 F.2d 587 (D.C. Cir. 1974) ("*NTEU*"), to support their contention that courts may

grant equitable relief against the President in his official capacity.  *See* Pls.' Opp. at 1, 7–9.

Because *NTEU* pre-dates *Franklin*, however, "[i]t is not entirely clear, of course, whether, and to

what extent, [this] decision[] remain[s] good law after *Franklin*."  *Swan*, 100 F.3d at 978.

Plaintiffs attempt to minimize the D.C. Circuit's statement that *NTEU* may not "remain good law

after *Franklin*," *id.*, by arguing that the *Swan* Court referred only to the "authority to issue a writ

of mandamus," and "did not question *NTEU*'s decision to issue declaratory relief," Pls.' Opp. at

11.  But Plaintiffs ignore the *Swan* Court's explicit statement that although it "couched [its

opinion] in terms of [the Court's] ability to grant injunctive relief against the President, similar

considerations regarding a court's power to issue relief against the President himself apply to

[the plaintiff's] request for a declaratory judgment."  100 F.3d at 976 n.1.

And even if *NTEU* remains good law, that case is readily distinguishable in two ways.

First, as the D.C. Circuit repeatedly acknowledged, *NTEU* involved a Presidential action that

allegedly was "ministerial" and not discretionary.[1]  492 F.2d at 591 (stating that the plaintiff

"seeks declaratory and injunctive relief and mandamus to require President Nixon to perform

what is alleged to be a ministerial act under the Federal Pay Comparability Act"); *id.* at 601

("After the President received the necessary comparability studies, his obligation to adjust pay

under the [statute] was mandatory, involving no discretion."); *id.* at 602 ("The fact in and of

itself that the President was required to interpret both [statutes] . . . did not render his duty to

effect an October, 1972 pay adjustment other than ministerial."); *id.* at 605 ("[T]he remedy

sought in this case is mandamus to compel the President to perform a single ministerial act and

does not require any court supervision over the performance of duty by the executive branch.");

*id.* at 606 n.42 (distinguishing *Suskin v. Nixon*, 304 F. Supp. 71 (N.D. Ill. 1979), by stating, "in

that case, the President's duties under the challenged statute were found to be executive and

discretionary rather than ministerial").  As the *NTEU* Court recognized, the Supreme Court in

*Mississippi* "specifically left open" the question of "whether a court can compel the President to

---

[1] Another case Plaintiffs rely on, *Freedom from Religion Foundation, Inc. v. Obama*, even if it were correct, is likewise distinguishable from this case because it involved a "ministerial" act. *See* 691 F. Supp. 2d 890, 908, 914 (W.D. Wisc. 2010), *vacated*, 641 F.3d 803 (7th Cir. 2011).  In that case, the plaintiffs sought an injunction to prohibit the enforcement of a statute establishing a National Day of Prayer, which directs the President to issue a proclamation to commemorate the day.  *Id.* at 894.  The plaintiffs also sought an injunction to prevent the President from generally issuing prayer proclamations.  *Id.* at 910.  Upon "recogniz[ing] a distinction for a judicial injunction requiring the performance of a purely 'ministerial' duty by a President," *Id.* at 908 (quoting *Franklin*, 505 U.S. at 802), the district court determined that it could enjoin the President from enforcing the statute because "'there is no possibility that [a decision invalidating the statute] will curtail the scope of the official powers of the Executive Branch,' or otherwise interfere with the President's duties under Article II," *id.* (quoting *Jones*, 520 U.S. at 701).  In contrast, because the plaintiffs' request for an injunction prohibiting the President from generally issuing prayer proclamations raised "grave concerns regarding separation of powers," the court found that it could not enter equitable relief against the President on this claim.  *Id.* at 914 (contrasting "a narrowly circumscribed injunction regarding a single, ministerial act" with "a broad ruling that dictates the particular language the President may use in any context").  In any event, the Seventh Circuit vacated the district court's judgment because the plaintiffs failed to show injuries sufficient to establish standing.  *Freedom from Religion Foundation, Inc. v. Obama*, 641 F.3d 803, 805, 808 (7th Cir. 2011).

perform a ministerial act."  *Id.* at 607 (citing *Mississippi*, 71 U.S. at 498–99); *see also Franklin*, 505 U.S. at 802 (finding same) (citing *Mississippi*, 71 U.S. at 498–99); *Swan*, 100 F.3d at 977 (finding same) (quoting *Franklin*, 505 U.S. at 802).  A ministerial duty is "a simple, definite duty" that is "imposed by law" where "nothing is left to discretion."  *Mississippi*, 71 U.S. at 498; *see also Swan*, 100 F.3d at 977.  There can be no question here that the President's actions involving the formation of military policy involve "judgment, planning, or policy decisions" and are not ministerial.  *See Beatty v. Wash. Metro. Area Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988) (defining discretionary duties) (quotation omitted).  Indeed, by making no argument to the contrary, Plaintiffs implicitly concede this point.  *See generally* Pls.' Opp.; *see also Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Although Plaintiffs state that "*NTEU* involved a 'ministerial' duty," they nonetheless attempt to minimize the importance of the distinction between ministerial and non-ministerial actions by arguing that "the D.C. Circuit did not say that its authority to issue equitable relief against the President was limited *only* to cases involving ministerial duties."  Pls.' Opp. at 8 n.2 (citing *NTEU*, 492 F.2d at 616).  But because *NTEU* involved only what was alleged to be a ministerial duty, the D.C. Circuit did not need to decide whether it could issue an injunction or a declaratory judgment against the President for a non-ministerial action.  Had the Court done so, it would have impermissibly decided a question that was not before it.  *See Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (stating that "a federal court has no 'power to render advisory opinions [or] . . . decide questions that cannot affect the rights of litigants in the case before them'" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))).

The *NTEU* case differs from this suit against the President in a second way.  In *NTEU*,

the D.C. Circuit found that there were no other defendants the plaintiffs could sue in lieu of the

President.  492 F.2d at 614–15.  In that case, the plaintiffs suffered their alleged injuries because

the President failed to take a statutorily required action, and he had not delegated authority to

take the action to any subordinate Executive official.  *Id.* at 615.  To afford the plaintiffs a

remedy, the Court concluded that "the sole defendant they can appropriately name in asserting

their claims is the President of the United States."[2]  *Id.*  The Court contrasted the facts of that

case with those of *Mississippi* and *Suskin v. Nixon*, where dismissal of claims against the

President did not leave the plaintiff without redress because "other defendants were suable."  *Id.*

at 606 n.42, 614–15.  Indeed, as *NTEU* and other courts have recognized, because the President

often acts through subordinate Executive officials, courts ordinarily can rule on the legality of

the President's actions and rectify a plaintiff's injuries by issuing injunctive or declaratory relief

---

[2] Another case Plaintiffs rely on, *Mackie v. Bush*, is likewise distinguishable from this case because there were no other defendants the plaintiffs could sue in lieu of the President.  *See* 809 F. Supp. 144, 146–47 (D.D.C.), *vacated as moot sub nom. Mackie v. Clinton*, 10 F.3d 13 (D.C. Cir. 1993).  In that case, the Postal Service Board of Governors sought to enjoin the President from removing them from office before the D.C. Circuit could resolve pending litigation to which they were a party.  *Id.* at 144–46.  The court preliminarily enjoined the President from removing the plaintiffs from the board, finding all other possible remedies to be "inadequa[te]." *Id.* at 147.  In doing so, the court distinguished the facts of that case from those in *Youngstown*, where "a remedy for testing the legality of a presidential action, and thus comity between the coequal Executive and Judicial Branches, was facilitated . . . by delegation of the execution of the order at issue in that case to an unequivocally suitable cabinet officer, thereby avoiding thorny, and possibly extraneous, jurisdictional and constitutional issues."  *Id.* (citing, *inter alia*, *Youngstown*, 343 U.S. at 579).

Even assuming that *Mackie* were correct, special circumstances existed in *Mackie* that are not present here.  The district court ruled that because litigation was pending in the appellate court, it had "the responsibility and the authority to protect the jurisdiction of [the] Court of Appeals, at least to the limited extent of assuring that the Court [of Appeals] has been afforded an opportunity to address the issues pending before it."  *Id.* at 146–47.  Thus, *Mackie* is distinguishable from this case.

against those subordinate officials. *See id.* at 613; *see also Franklin*, 505 U.S. at 803 (concluding that the "injury alleged is likely to be redressed by declaratory relief against the Secretary [of Commerce] alone"); *Swan*, 100 F.3d at 979–80 (finding that injunctive relief against subordinate officials could substantially redress the plaintiff's injury); *Reich*, 74 F.3d at 1328 (stating that "courts have power to compel subordinate executive officials to disobey illegal Presidential commands") (citation omitted); *Hawaii*, 859 F.3d at 788 (vacating a preliminary injunction as it ran against the President upon "conclud[ing] that Plaintiffs' injuries can be redressed fully by injunctive relief against the remaining Defendants"); *Int'l Refugee Assistance Project*, 857 F.3d at 605 (same).

The Court can proceed here in accord with this authority. The Secretary of Defense and the Service Secretaries would necessarily effectuate any policy regarding military service by transgender individuals.[3] Therefore, Plaintiffs may still challenge the constitutionality of the operative policy governing military service by transgender individuals being carried out by these officials and, if successful, the Court may redress Plaintiffs' injuries by issuing an injunction and/or a declaratory judgment against these officials.

### B.   The Court May Not Infer from the Silence of Other Courts that Authority Existed to Enter Equitable Relief Against the President.

Plaintiffs also argue that because other courts have issued declaratory judgments against the President, it is proper for the Court to do so in this case. *See* Pls.' Opp. at 4, 7–8, 12. This

---

[3] Enlistments and appointments in the Armed Forces are generally governed by Title 10 of the U.S. Code, with specific delegations of authority to the Secretary of Defense and the Service Secretaries. *See* 10 U.S.C. §§ 504, 505, 532, 1169; 32 C.F.R. § 66.6; *see also* DoD Instruction 6130.03 (Apr. 28, 2010) (setting medical standards for accession); DoD Instruction 1332.14 (Jan. 27, 2014) (providing procedures for enlisted administrative separations); DoD Manual 1332.18 Vol. 1–3 (Aug. 5, 2014) (providing procedures for medical separations), *available at* http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/133218m_vol1.pdf; http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/133218m_vol2.pdf; http://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodm/133218vol3.pdf.

argument is meritless.  Although the courts in the cases cited by Plaintiffs issued declaratory

judgments against the President (or permitted a suit for declaratory relief to continue against the

President), most of those cases did not analyze whether it was proper to do so.[4]  *See Clinton v.*

*City of New York*, 524 U.S. 417, 425 n.9 (1998) (stating only that "the plaintiffs sought a

declaratory judgment that the Line Item Veto Act is unconstitutional and that the particular

cancellation was invalid; neither set of plaintiffs sought injunctive relief against the President")[5];

*Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (stating that the

court's decision was "narrow" and "hold[ing] only that [the plaintiff's] second amended

complaint pleaded his standing to sue for a violation of his Fourth Amendment right to be free

from unreasonable searches and seizures"); *Romer v. Carlucci*, 847 F.2d 445, 447, 464 (8th Cir.

1988) (reversing a district court's finding that a claim challenging the adequacy of the Air

Force's environmental impact statement was nonjusticiable because a statute defines the scope of

the statement, noting that "justiciability presumes the availability of declaratory relief," and

remanding the case to the district court for further proceedings).

      Plaintiffs also cite *Boumediene v. Bush*, 553 U.S. 723, 771 (2008), for the proposition that

"the judicial branch has the power to order the President to release detainees held as enemy

---

[4] Of the cases Plaintiffs rely on, only three analyze whether the court has authority to issue injunctive or declaratory relief against the President: *NTEU*, 492 F.2d 587, *Mackie*, 809 F. Supp. 144, and *Freedom from Religion Foundation*, 691 F. Supp. 2d 890.  As discussed above, all three cases are distinguishable from this case.  *See infra* Part III.A.

[5] Despite analyzing three jurisdictional issues—jurisdiction under 2 U.S.C. § 692(a)(1), whether the constitutionality of the Line Item Veto Act was nonjusticable, and whether the plaintiffs suffered an injury-in-fact sufficient to establish standing—the Supreme Court did not consider whether it was proper to issue a declaratory judgment against the President.  *See City of New York*, 524 U.S. at 428–35.  Nor did the Government present the issue to the Court in its briefs. *See generally* Br. for the Appellants, *Clinton v. City of New York*, No. 97-1374, 1998 WL 263832; Reply Br. for the Appellants, *Clinton v. City of New York*, No. 97-1374, 1998 WL 181947.

combatants in violation of the Constitution." Pls.' Opp. at 12. But the Supreme Court in

*Boumediene* held only that the habeas corpus provision in the Constitution "has full effect at

Guantanamo Bay"; it was silent on whether a Court could direct an order to the President to

release an enemy combatant.[6] *See* 553 U.S. at 771.

---

[6] Plaintiffs argue that "[o]n remand from the Supreme Court, the district court rejected the government's attempt to dismiss President Bush from the case as an improper defendant on substantially similar grounds to those raised by the government here." Pls.' Opp. at 12. On remand, the Government moved to dismiss the President from the case for two reasons: (1) under *Mississippi*, the Court lacked authority to compel the President to perform an official act; and (2) because the President was not the detainee's actual or appropriate legal custodian, he was not the proper respondent to a petition for a writ of habeas corpus by a detainee held overseas. *See* Gov't Mot. to Dismiss Improper Resp'ts, *Boumediene v. Bush*, No. 04-cv-01166, 2008 WL 5262160 (D.D.C. Aug. 12, 2008). The Court denied the Government's motion in a Minute Order that did not provide any reasoning for the decision, and instead referred to "the record at the 11/7/2008 hearing." Minute Order, *Boumediene v. Bush*, No. 04-cv-01166 (D.D.C. Nov. 10, 2008). That hearing was held in a "closed session," and the transcript is not in the public record. Minute Entry, *Boumediene v. Bush*, No. 04-cv-01166 (D.D.C. Nov. 7, 2008). The Court should give this ruling little, if any, weight. In contrast to the district court's ruling on remand in *Boumediene*, upon considering the Government's arguments under *Franklin*, the Seventh Circuit found that the President is not a proper respondent in a habeas case. *al-Marri v. Rumsfeld*, 360 F.3d 707, 708 (7th Cir. 2004) ("Naming the President as a respondent [in the habeas case before the Court] was not only unavailing but also improper. Suits contesting actions of the executive branch should be brought against the President's subordinates.") (citing *Franklin*, 505 U.S. at 803 (plurality opinion), 826 (Scalia, J., concurring)).

Regardless of whether the President can be named as the respondent in a petition for a writ of habeas corpus brought be detainees held overseas, the "Supreme Court has long recognized . . . that habeas is in fact a unique creature of the law" and distinct from other civil actions. *Blair-Bey v. Quick*, 151 F.3d 1036, 1040 (D.C. Cir.), *on reh'g*, 159 F.3d 591 (D.C. Cir. 1998) (citing *Harris v. Nelson*, 394 U.S. 286, 293–94 (1969); *Martin v. Bissonette*, 118 F.3d 871, 874 (1st Cir. 1997)). As with criminal cases, special constitutional considerations can be present in habeas cases that are not present in other civil cases. *See Boumediene*, 553 U.S. at 797 ("Within the Constitution's separation-of-powers structure, few exercises of judicial power are as legitimate or as necessary as the responsibility to hear challenges to the authority of the Executive to imprison a person."); *see also Cheney*, 542 U.S. at 383–84 (discussing constitutional considerations specific to criminal cases); *Nixon*, 418 U.S. at 708, 711–13 (same). Therefore, even if a court may grant a writ of habeas corpus and order the President to release an individual held overseas from custody, that would not necessarily mean that the court could enter equitable relief against the President in a civil case such as this, where the same constitutional and other unique concerns are not at issue.

The Court may not infer from the silence of these courts that they found authority existed to issue an injunction or a declaratory judgment against the President for his official conduct. Indeed, as the Supreme Court has repeatedly stated, even when a potential defect is "jurisdictional" and the defect "is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 144–45 (2011) (citing *Hagans v. Lavine*, 415 U.S. 528, 535, n.5 (1974) ("[W]hen questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) ("Even as to our own judicial power or jurisdiction, this Court has followed the lead of Chief Justice Marshall who held that this Court is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*."); *Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63, n.4 (1989) (finding that although the "[p]etitioner cites a number of cases from this Court that he asserts have 'assumed' that a State is a person," because "the Court did not address the meaning of person in any of those cases, and in none of the cases was resolution of that issue necessary to the decision," the Court was not bound by the prior *sub silentio* holdings); *see also United States v. Stoerr*, 695 F.3d 271, 277 n.5 (3d Cir. 2012) ("A drive-by jurisdictional ruling, in which jurisdiction has been assumed by the parties, and . . . assumed without discussion by the Court, does not create binding precedent." (citation omitted)).  Because the cases cited by Plaintiffs are silent as to whether a court may enter equitable relief against the President for his official, non-ministerial conduct, Plaintiffs' reliance on them is misplaced.

**V.    The President Should Not Remain in the Case Merely Because Plaintiffs Seek Discovery from Him.**

Plaintiffs also attempt to frame Defendants' motion as a tactic to preclude discovery.  *See* Pls.' Opp. at 1, 3.  But Defendants' motion is based on established separation-of-powers principles, and Defendants were not required to move to dismiss the President any earlier in the case, as a motion for judgment on the pleadings is appropriate "anytime [a]fter the pleadings are closed—but early enough not to delay trial."  *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013) (alteration in original) (citation omitted); *see also* Fed. R. Civ. P. 12(c); LCvR 7(l).  While Plaintiffs argue that "discovery from the President is important to the issues in this case," Pls.' Opp. at 14, the separation-of-powers principles that warrant dismissal of the President cannot be set aside merely in an attempt to facilitate discovery.  In any event, a determination that the President is a proper defendant would not necessarily enable Plaintiffs to seek discovery from him: as Defendants have separately explained, discovery directed to the President in civil litigation regarding his official conduct raises significant separation-of-powers concerns, *see Cheney*, 542 U.S. at 385, and the discovery directed at the President in this case is also subject to privileges, including the presidential communications privilege, *see In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997).  *See* Defs.' Mot. for a Protective Order, ECF No. 89.

**VI.   The Court Should Not Defer Ruling on Defendants' Motion.**

Finally, Plaintiffs argue that it is premature to dismiss the President from this case because "[w]hether the President should be subject to any particular relief is a question that the Court should consider only after reaching a decision on the merits."  Pls.' Opp. at 8–9; *see also id.* at 2, 13.  Plaintiffs have it precisely backwards.  Because the issue must be decided "[a]t the threshold," *Franklin*, 505 U.S. at 803 (plurality opinion), the Court should not defer ruling until a

decision on the merits.  As shown above, because Plaintiffs challenge the President's official, non-ministerial actions, Plaintiffs may not receive *any* relief directly against the President in this case, especially where there are other defendants against whom the Court may enter a declaratory judgment or an injunction.  Accordingly, the Court should rule on Defendants' motion and dismiss the President from the case.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' motion, Defendants' motion for partial judgment on the pleadings should be granted, and the President should be dismissed as a defendant in this case.  The Court should also dissolve the preliminary injunction as to the President.

March 23, 2018                                    Respectfully Submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director


ANTHONY J. COPPOLINO
Deputy Director

 /s/ *Ryan Parker*
RYAN B. PARKER
Senior Trial Counsel
ANDREW E. CARMICHAEL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 514-4336
Email: ryan.parker@usdoj.gov

*Counsel for Defendants*

16

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 23, 2018, I electronically filed the foregoing Reply in

Support of Defendants' Motion for Judgment on the Pleadings and Motion to Partially Dissolve

the Preliminary Injunction using the Court's CM/ECF system, causing a notice of filing to be

served upon all counsel of record.


Dated: March 23, 2018                               /s/ *Ryan Parker*

                                                    RYAN B. PARKER
                                                    Senior Trial Counsel
                                                    United States Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    Telephone: (202) 514-4336
                                                    Email: ryan.parker@usdoj.gov

                                                    *Counsel for Defendants*