## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, JOHN DOE 1, JOHN DOE 2, REGAN V. KIBBY, and DYLAN KOHERE,<br><br>     Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; JAMES N. MATTIS, in his official capacity as Secretary of Defense; JOSEPH F. DUNFORD, JR., in his official capacity as Chairman of the Joint Chiefs of Staff; the UNITED STATES DEPARTMENT OF THE ARMY; MARK T. ESPER, in his official capacity as Secretary of the Army; the UNITED STATES DEPARTMENT OF THE NAVY; RICHARD V. SPENCER, in his official capacity as Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE AIR FORCE; HEATHER A. WILSON, in her official capacity as Secretary of the Air Force; the UNITED STATES COAST GUARD; KIRSTJEN M. NIELSEN, in her official capacity as Secretary of Homeland Security; the DEFENSE HEALTH AGENCY; RAQUEL C. BONO, in her official capacity as Director of the Defense Health Agency; and the UNITED STATES OF AMERICA,<br><br>     Defendants. | Civil Action No. 17-cv-1597 (CKK) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
## FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 1

ARGUMENT ................................................................................................................. 4

I.     DISCOVERY SHOULD PROCEED ............................................................................ 4

     A.    The Current Department Of Defense Policy Implements The President's 2017 Memorandum ....................................................................................... 5

     B.    Judicial Economy Does Not Justify A Protective Order ......................................... 9

     C.    This Case Is Not Subject To The APA's Administrative Record Limitations ....................................................................................................... 10

II.    DEFENDANTS SHOULD COMPLY WITH THE DISCOVERY REQUESTS ALREADY SERVED, AND WITH ADDITIONAL DISCOVERY TARGETED AT THE IMPLEMENTATION PLAN ..................................................................................... 12

     A.    Written Discovery ................................................................................................ 14

     B.    Depositions .......................................................................................................... 17

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alexander v. FBI*, 186 F.R.D. 71 (D.D.C. 1998) ...........................................................4

*Chamber of Commerce of the U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ................................11

*Chiayu Chang v. U.S. Citizenship & Immigration Services*, 254 F. Supp. 3d 160
   (D.D.C. 2017) ...........................................................................................11, 12

*Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v.
   Martinez*, 561 U.S. 661 (2010) ..........................................................................7

*Davis v. Passman*, 442 U.S. 228 (1979) ...................................................................10

*Dronenburg v. Zech*, 741 F.2d 1388 (D.C. Cir. 1984) .....................................................11

*Goldman v. Weinberger*, 475 U.S. 503 (1986) ............................................................10

*In re Marriage Cases*, 183 P.3d 384 (Cal. 2008) ..........................................................7

*Jennings v. Family Mgmt.*, 201 F.R.D. 272 (D.D.C. 2001) ...............................................4

*Kitchen v Herbert*, 961 F. Supp. 2d 1181 (D. Utah 2013) .................................................7

*McKoy v. Spencer*, 271 F. Supp. 3d 25 (D.D.C. 2017) ...................................................11

*Nwachukwu v. Karl*, 223 F. Supp. 2d 60 (D.D.C. 2002) .................................................11

*Romer v. Evans*, 517 U.S. 620 (1996) ......................................................................14

*Rostker v. Goldberg*, 453 U.S. 57 (1981) ..................................................................10

*Smith v. Yeager*, 322 F.R.D. 96 (D.D.C. 2017) ............................................................4

*Trudeau v. FTC*, 384 F. Supp. 2d 281 (D.D.C. 2005) ....................................................12

## STATUTES AND RULES

10 U.S.C. § 113(b) ..............................................................................................8

Fed. R. Civ. P. 26 ...........................................................................................4, 13

Fed. R. Civ. P. 30 ..............................................................................................17

## INTRODUCTION

While this case is pending, and Plaintiffs' constitutional claims remain unresolved, discovery should proceed.  The government lost its motion to dismiss this case at the outset, it has tried and failed several times to stop discovery, and it has trickled out its production of responsive documents and information in the evident hope the Court would agree that the March 23 implementation plan moots this challenge.  The government now takes the extraordinary step of asking the Court to halt all discovery before even moving to dismiss Plaintiffs' claims or establishing that the implementation plan resolves any of the harms to Plaintiffs.  The plan does *not* resolve those harms; to the contrary, it merely implements the ban the President directed and this Court already determined is likely unconstitutional.  But, at a minimum, such issues should be decided on a fully developed record, not on a motion for protective order that seeks to avert all discovery of the relevant facts.  The government's motion should therefore be denied, and Plaintiffs should be permitted to continue the discovery the parties agreed to—and this Court ordered—so that Plaintiffs' claims can be resolved fully and fairly on the merits.

## BACKGROUND

Plaintiffs sought, and this Court granted, a preliminary injunction based in part on the irregularity of the process leading up to the President's announcement of a ban on military service by transgender individuals and the fact that the ban contradicted the military's own judgments.  ECF No. 61, at 67-68.  Cognizant of those glaring defects, the government sought to dismiss this case as unripe while Defendants were devising an implementation plan at the President's direction.  ECF No. 45, at 18-20.  The government has likewise repeatedly sought to stay discovery into the process and rationales leading to the ban, arguing both that "discovery would likely implicate important issues of executive privilege and separation of powers that 'should be avoided whenever possible,'" and that discovery should be stayed because "the policy

concerning military service by transgender persons is under review." ECF No. 62, at 3. The Court rejected Defendants' characterization of the case as unripe and denied their motion to dismiss, ECF No. 61, at 30-38, has "decline[d] Defendants' [repeated] invitation[s] to stay the case," ECF No. 63; *see also* ECF No. 65, at 8; ECF No. 72, at 12:17-23, and on November 28, 2017, entered a schedule providing for completion of all discovery by March 30, 2018, ECF No. 71, at 6.

In the intervening four months, Defendants have continually flouted even their own self-imposed deadlines, slow-rolling discovery and making it impossible for Plaintiffs to obtain the discovery to which they are entitled under the Federal Rules and this Court's orders. To take (briefly) two salient examples:

*First*, the government unilaterally set its own timetable for production of documents, yet failed to meet even that schedule, making it impossible for Plaintiffs to obtain documents relevant to their challenge or to take depositions on the schedule to which the parties agreed. For instance, the parties agreed in early January that the government would produce, no later than January 19, documents from the Air Force, Army, and Defense Health Agency related to a deposition scheduled for January 26, and would complete all remaining document productions by February 2. Declaration of Adam M. Cambier (Cambier Decl.), Ex. A. The January 19 production bore no resemblance to what was promised, as it included only documents that specifically mentioned the deponent (rather than all documents related to requests for production related to the subject of the deponent's expected testimony). And on February 2, the government produced a mere 50 pages of material from the Department of Defense and informed Plaintiffs for the first time that, counter to the parties' agreement, the Department of Defense would be making productions on a rolling basis. Cambier Decl., Ex. B. Two months later, the

government's document production remains woefully incomplete.  Indeed, on March 20, the government informed Plaintiffs for the first time that it had yet to review *90,000* Department of Defense documents and could not predict when review and production would be complete. Cambier Decl., Ex. C.

*Second*, the government has thwarted discovery by making overly broad assertions of the deliberative process privilege and refusing to correct those assertions in a timely fashion even while acknowledging their overbreadth.  Following the government's initial productions, Plaintiffs provided the government with a list of documents they believed were wrongfully withheld or redacted under the deliberative process privilege.  On February 16, the Court ordered Defendants to respond "next week" as to whether they would produce the withheld documents. Minute Order (Feb. 16, 2018).  But when the parties met and conferred on February 23, the government told Plaintiffs that they would not provide their response until March 2.  Cambier Decl., Ex. D.  That self-imposed deadline came and went without any substantive response. Over the following two weeks, the government trickled out its response to some (but not all) of the documents Plaintiffs had flagged as wrongfully withheld.  Even today, the government's response remains incomplete.

The government plainly knew that Secretary Mattis's implementation plan and the President's memorandum would be publicly disclosed on March 23.  Yet even after Secretary Mattis provided his recommendation to the President on February 22, the government refused to produce either the recommendation or the accompanying report.  And instead of meeting its discovery obligations, the government dedicated its litigation resources to preparing a 38-page motion to dissolve the preliminary injunction and this motion for a protective order, seeking to preclude any further discovery in this case.

**ARGUMENT**

To establish "good cause" warranting this Court's issuance of a blanket protective order,

Fed. R. Civ. P. 26(c)(1), the government bears a "heavy burden of showing extraordinary

circumstances based on specific facts" that would justify precluding all discovery in this case,

*Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001) (internal quotation marks

omitted); *see also Smith v. Yeager*, 322 F.R.D. 96, 98-99 (D.D.C. 2017); *Alexander v. FBI*, 186

F.R.D. 71, 74-75 (D.D.C. 1998).  The government cannot satisfy that burden here.

The government has defended the President's ban on the basis of military deference, and

now maintains that Defendants' decision, at the President's direction, to bar transgender

individuals from military service stems from professional and independent military judgments

regarding military readiness.  But Plaintiffs and this Court are not required to take the

government's word for what its implementation plan is and does—particularly where, as here,

the plan does exactly what the President ordered; the process from the beginning has been

irregular; and the justifications offered by the President for directing further study and a ban

were contradicted by the military's own assessments less than two years ago.  Plaintiffs'

constitutional challenge should therefore be decided on a fully developed record, not a record

contrived by the government to avert discovery of the relevant facts and to paper over the

irregularity of the decisionmaking process and absence of justifications leading the President

(and now the military at his direction) to ban transgender individuals from serving in the military

in any capacity.

## I.    DISCOVERY SHOULD PROCEED

This Court has concluded that Plaintiffs are likely to succeed in demonstrating that a ban

on military service by transgender persons is unconstitutional.  ECF No. 61, at 64-65.  Plaintiffs

are entitled under the Federal Rules and the discovery plan agreed to by the parties and entered

by the Court to obtain the discovery necessary to prosecute their constitutional claims.  Far from justifying a stay of discovery, the newly revealed plan to implement the President's directive to ban military service by transgender persons only heightens Plaintiffs' need to obtain discovery into the development of both the President's policies and the government's implementation plan. This Court should deny Defendants' motion and order them to comply with their discovery obligations.

**A.      The Current Department Of Defense Policy Implements The President's 2017 Memorandum**

Defendants first argue (at 6) that all of the discovery that Plaintiffs have sought is now irrelevant because the government's implementation plan constitutes a "new" policy that is separate and distinct from the President's August 25, 2017 directive.  That is wrong:  The implementation plan and the ban on military service by openly transgender persons it prescribes are the fulfillment of the President's directive, not a departure from it.  The discovery requests Plaintiffs have served—which seek documents and information concerning the genesis of the President's directive and the steps Defendants have taken to comply with it—plainly remain relevant to this challenge.[1]

The President's August 2017 memorandum directed the Secretary of Defense to submit to the President, by February 21, 2018, "a plan for implementing" the policies and directives set out in the memorandum—namely, a prohibition on military service by transgender persons.  ECF No. 13-2, at Ex. A § 3.  Upon issuance of the President's memorandum, Secretary Mattis issued a statement saying that the Department had "received the [August 2017] Presidential

---

[1]      Further, Plaintiffs' second amended complaint, also filed today, makes clear that Plaintiffs (including new Plaintiffs not previously included in this litigation) have standing to challenge the implementation plan's terms even if it is characterized as a "new" policy.

Memorandum" and that it would "carry out the President's policy direction."  ECF No. 13-2, at Ex. D.  In particular, Secretary Mattis confirmed that the Department would "develop a study and implementation plan, which will contain the steps that will promote military readiness, lethality, and unit cohesion, with due regard for budgetary constraints and consistent with applicable law."  *Id.*  Secretary Mattis further stated that he would "provide [his] advice to the president concerning implementation of his policy direction" as directed by the 2017 Presidential memorandum.  *Id.*  Two weeks later, Secretary Mattis again affirmed that the Department "will carry out the President's policy and directives" and will "comply with the Presidential Memorandum."  ECF No. 45-1.  Specifically, Secretary Mattis directed his staff to "develop[] an Implementation Plan on military service by transgender individuals, to effect the policy and directives in [the] Presidential Memorandum."  Cambier Decl., Ex. E.  In February 2018, the Department completed that process—on precisely the timeline directed by the President's memorandum—and submitted a plan to the President that would "implement" his directive.[2]

The March 23 implementation plan does not constitute a new or different policy.  It is continuous with the President's August 2017 directive, and as one would reasonably assume given the President's direction to his subordinates to *implement* his directives, it accomplishes the very goal the President intended, which Plaintiffs challenge here—a ban on transgender

---

[2]     Consistent with the government's official statements about the President's directive and the Secretary's implementation plan, Defendants have repeatedly maintained in this litigation that Secretary Mattis was preparing to submit an *implementation plan*, not a new policy, to the President in February 2018.  *See* ECF No. 86, at 3 ("[T]he Secretary of Defense is expected to submit an implementation plan to the President on February 21[.]"); ECF No. 45, at 7 ("[T]he Memorandum's provisions take effect on March 23, 2018 … so that [Secretary Mattis] can study the issues addressed in the Memorandum and submit an implementation plan to the President by February 21, 2018."); ECF No. 72, at 8:18-20 ("not[ing] for the Court that … the Secretary of Defense will submit his implementation plan to the President" on February 21, 2018).  Defendants cannot now, well into the litigation of this case, reimagine the Department's implementation plan as an independent policy in an effort to stop this litigation.

people serving their country.  The March 23 plan targets transgender status by preventing any transgender individual from serving consistent with their gender identity—including by excluding anyone who has a diagnosis of gender dysphoria or who "require[s] or ha[s] undergone gender transition," and by requiring proof that an applicant is "stable … in their biological sex."  ECF No. 96-1, at 2-3.  It is a bar on transgender service in both name and substance; it does not apply to non-transgender individuals at all.

Just as a policy allowing Muslims to serve in the military if they renounce their faith would be a ban on military service by Muslims, a policy requiring transgender individuals to serve in their birth sex *is* a ban on transgender service.  *See Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 689 (2010) (rejecting purported distinction between targeting same-sex intimate conduct and discriminating against gay people).[3]  Defendants' argument to the contrary is similar to the specious claim, uniformly rejected by courts, that laws limiting marriage only to male-female couples did not facially discriminate against gay people because a gay person could marry a person of the opposite sex.  *See, e.g.*, *In re Marriage Cases*, 183 P.3d 384, 440-441 (Cal. 2008) (rejecting as "sophistic" the claim that such a law does not facially discriminate because "the marriage statutes permit a gay man or a lesbian to marry someone of the opposite sex, because making such a choice would require the negation of the person's sexual orientation"); *Kitchen v Herbert*, 961 F. Supp. 2d 1181, 1200 (D. Utah 2013) (finding that "plaintiffs' asserted right to marry someone of the opposite sex is meaningless").  The implementation plan thus puts

---

[3]      Nor does the implementation plan's limited and conditional maintenance of service by current transgender servicemembers mean that it is a new or different policy.  The August 2017 Presidential memorandum specifically recognized that the implementation plan might treat currently serving transgender service members differently, stating that, "[a]s part of the implementation plan," the Secretary "shall determine how to address transgender individuals currently serving in the United States military."  ECF No. 13-2, at Ex. A § 3.

into operation exactly what the President, on July 26, 2017, announced that he intended to do: It bars transgender individuals from serving consistent with their gender identity, thereby barring them from serving.

Defendants' suggestion that the implementation plan is a new policy assumes that the Secretary of Defense has the authority to disregard the President's directives and develop his own policy. But the Department had no independent authority to develop a policy that diverged from the policy directives contained in the 2017 Presidential memorandum—nor did the Secretary ever express any intention to do anything other than fulfill the President's directive. *See* 10 U.S.C. § 113(b) (noting that the Secretary of Defense "has authority, direction, and control over the Department of Defense" "[s]ubject to the direction of the President"). That directive mandated that the Secretary "shall submit to [the President] a plan for *implementing*" the President's policies by February 21, 2018. ECF No. 13-2, at Ex. A § 3 (emphasis added). That mandate did not allow the Secretary to refuse to submit an implementation plan for any reason. Nor did it provide the Secretary discretion to depart from the policy directed by the President; the memorandum specifically reserved any such right to the President. *See id.* § 2(a) (Secretary shall prohibit "accession of transgender individuals into military service" until the Secretary "provides a recommendation to the contrary that [the President] find[s] convincing"); *id.* § 1(b) ("directing the Secretary of Defense" to prohibit open service, until such time as the President determines, on advice of the Secretary, that "a sufficient basis exists upon which to conclude that terminating that policy and practice would not have … negative effects"). Indeed, this Court already recognized that the Presidential memorandum definitively required the Secretary to produce an implementation plan that "prohibit[s] transgender accession and authorize[s] the discharge of transgender service members." ECF No. 61, at 37; *see also id.*

8

("[W]hile the Court cannot presently adjudicate the merits of the yet-undecided details of how the directives will be carried out, it can adjudicate the constitutionality of the directives themselves, which are definite, and *must* be implemented by the military.").

Defendants should not be allowed to derail discovery simply because they now claim they will prevail on the merits.  Defendants assert (at 7) that "the Department's new policy withstands constitutional scrutiny," and that Defendants' motion to dissolve the preliminary injunction "presents controlling questions of law that should be resolved before allowing discovery to continue."  But both this Court and the D.C. Circuit have already concluded that Plaintiffs—not Defendants—are likely to prevail on the merits.  ECF No. 61, at 54-55, 58-72; Order at 2-3, *Doe v. Trump*, No. 17-5267 (D.C. Cir. Dec. 22, 2017).  And under the current implementation plan, the core constitutional defect of the President's initial directive remains in place:  Openly transgender individuals cannot accede into or serve in the military.  Defendants argue that this defect has been cured by the military review process that has been conducted since the preliminary injunction was entered, but Plaintiffs should have the opportunity to test whether that *post hoc* process was adequate, independent, informed by legitimate military judgment, and free of discriminatory animus.

### B.      Judicial Economy Does Not Justify A Protective Order

Defendants argue (at 7) that a protective order "would serve the interests of judicial economy because the Court could avoid ruling on constitutional separation-of-powers issues."  But the government made a judicial-economy argument before as a basis for forestalling discovery in this case, *see, e.g.*, ECF No. 62, at 3, and the Court rejected it.  Now, months into discovery in this case, much of which does not implicate separation-of-powers issues at all, the government's argument has even less force as the basis for a wholesale stay of discovery.  Plaintiffs have requested, and Defendants have delayed in providing, a range of discovery that

does not implicate the presidential communications privilege. That discovery can and should

continue however the privilege issue is resolved.

Nor is a stay warranted with respect to presidential communications-related discovery,

which remains important to Plaintiffs' case. Defendants have defended the ban as a decision

involving "professional military judgments" to which deference is due under such cases as

*Rostker v. Goldberg*, 453 U.S. 57 (1981), and *Goldman v. Weinberger*, 475 U.S. 503 (1986).

Plaintiffs are therefore entitled to probe the entire process by which Defendants arrived at their

current position.

### C.     This Case Is Not Subject To The APA's Administrative Record Limitations

Defendants argue (at 6-7) that further discovery is inappropriate because Plaintiffs'

constitutional challenges must be subjected to the on-the-record limitations of the Administrative

Procedure Act.[4] That argument is without merit. Plaintiffs have asserted claims directly under

the Fifth Amendment, not the APA. *See Davis v. Passman*, 442 U.S. 228, 242 (1979) ("[T]his

Court has already settled that a cause of action may be implied directly under the equal

protection component of the Due Process Clause of the Fifth Amendment in favor of those who

seek to enforce this constitutional right."). This Court has already concluded that Plaintiffs are

likely to succeed in showing that Defendants' actions were unconstitutional, and Plaintiffs are

now entitled to conduct discovery to support their constitutional claims. The need for discovery

is especially pronounced in this case, as Plaintiffs have alleged that Defendants acted with

---

[4]     Although Defendants assert (at 7) that "review of any challenge" in this case should "be based upon the administrative record," they have failed to submit any administrative record in this case, nor do they suggest what that record might contain. In fact, Plaintiffs have repeatedly sought from Defendants documents relating to the development of the Departments' implementation plan, only to have Defendants shield those documents on privilege grounds.

unconstitutional purpose.  In such a case, it is unlikely that evidence of unconstitutional purpose would appear on the face of any administrative record.

None of the cases Defendants cite suggests that the APA's record requirements apply to constitutional challenges to government actions that do not even involve APA claims. Defendants instead seem to suggest that, because this case involves agency action, Plaintiffs are required to proceed under the APA.  But none of the cases Defendants cite supports that proposition.  "[T]he plaintiff remains the master of his own complaint," *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 67 (D.D.C. 2002), and Defendants have no authority to unilaterally compel Plaintiffs to raise claims that Defendants believe would be easier for them to litigate.  Nor does the APA preclude parties from bringing non-statutory constitutional claims rather than APA claims.  *See Chamber of Commerce v. Reich*, 74 F.3d 1322, 1326-1328 (D.C. Cir. 1996) (allowing non-statutory claims to proceed where plaintiffs declined to bring APA claims). Parties regularly challenge agency action without raising claims under the APA, including in cases challenging military personnel policies and decisions as unconstitutional.  *See, e.g.*, *Dronenburg v. Zech*, 741 F.2d 1388 (D.C. Cir. 1984) (reviewing constitutional challenge to military policy of discharging homosexual service members); *McKoy v. Spencer*, 271 F. Supp. 3d 25 (D.D.C. 2017) (Kollar-Kotelly, J.) (lawsuit against Secretary of Navy raising claims under the First and Fifth Amendments and the Privacy Act).  Plaintiffs are entitled to do the same here.

In any event, even if Plaintiffs brought claims under the APA in addition to their constitutional claims, they would still be entitled to conduct discovery on those constitutional claims.  Neither of the two cases Defendants cite establishes that constitutional challenges like those at issue in this case would be constrained to record review if accompanied by APA claims. In *Chiayu Chang v. U.S. Citizenship & Immigration Services*, 254 F. Supp. 3d 160 (D.D.C.

2017), the plaintiffs brought APA claims, as well as procedural due process and equal protection claims. The court concluded that the plaintiffs' constitutional claims "fundamentally overlap[ped]" with their APA claims, as the plaintiffs raised only procedural due process claims and had alleged no suspect class regarding their equal protection claim, "meaning that the government need only present a rational basis for its actions" to defeat the constitutional claims. *Id.* at 162. Thus, the constitutional claims were materially similar to "arbitrary and capricious" claims, and the court concluded that the administrative record would presumably provide sufficient information to determine whether the agency's action was "rational." *Id.* Unlike in *Chiayu Chang*, Plaintiffs here have raised *substantive* due process claims and claims alleging that Defendants have denied equal protection based on suspect classifications. Those claims require heightened scrutiny, and would not "fundamentally overlap" with an arbitrary and capricious challenge under the APA. The other case Defendants cite—*Trudeau v. FTC*—declined to even "express its view" on the question whether a separate First Amendment claim would be subjected to "the restrictions of the APA" because the plaintiff there failed to "allege[] facts sufficient to state [a First Amendment] claim." 384 F. Supp. 2d 281, 295 (D.D.C. 2005).

## II.  DEFENDANTS SHOULD COMPLY WITH THE DISCOVERY REQUESTS ALREADY SERVED, AND WITH ADDITIONAL DISCOVERY TARGETED AT THE IMPLEMENTATION PLAN

For all of the above reasons, discovery should proceed in this case. The discovery requests previously served by the Plaintiffs—targeted towards identifying the basis for the policy announced by the President in his tweets and his August 2017 memorandum—remain relevant, as that discovery encompasses identifying the basis for the newly disclosed implementation plan as well. *See, e.g.*, Cambier Decl., Ex. F, at 4-6 (Request for Production Nos. 5-9, 17). Moreover, several discovery requests served by Plaintiffs anticipated the process by which the Department of Defense considered and submitted its implementation plan, and requested

information and documents relevant to that process.  *See, e.g.*, *id.* at 4 (Request No. 4, seeking

documents relating to the "implementation of … the Presidential Memorandum"); *id.* at 6

(Request No. 20, seeking documents reflecting "communications … between any defendant and

any member of the 'panel of experts'" that developed the implementation plan); *id.* at 7 (Request

No. 21, seeking any documents "provided to, considered by, or generated by the 'panel of

experts'").  Defendants' obligation to respond to those discovery requests is ongoing, *see* Fed. R.

Civ. P. 26(e), and has not expired merely because the Department has finally submitted its

implementation plan.  Defendants should therefore be required to provide full responses to the

discovery that has already been served and for which their responses are long overdue.  *See*

*supra* pp. 2-3.[5]

Defendants' immediate compliance with those discovery obligations is imperative.

Defendants should have complied with all their discovery obligations by March 30, but have

utterly failed to do so; without continued discovery, Plaintiffs will be prejudiced in their ability

to oppose Defendants' pending motion to dissolve the preliminary injunction, which rests on

factual assertions about the way the Department developed the implementation policy.  *See* ECF

No. 96, at 5-9.  Staying discovery will prejudice Plaintiffs' ability to meaningfully test those

assertions.

In particular, the government has only produced three documents to date that postdate

February 9, 2018—or, put differently, Defendants have produced virtually nothing from the

period encompassing the finalization of the implementation plan and the creation of White

House's March 23 memorandum.  The Court has already recognized that the President's initial

---

[5]      As discussed below, Plaintiffs believe that a limited number of new discovery requests
are appropriate in light of the implementation plan.  Plaintiffs are prepared to serve those
discovery requests by April 13, 2018.

announcement of the ban was riddled with procedural irregularities.  *See, e.g.*, ECF No. 61, at

67-68, 70.  Without full discovery into the process underlying the implementation plan and the

President's withdrawal of the August 25 memorandum ordering the development of that plan,

Plaintiffs and the Court are left with nothing more than Defendants' word that procedural

irregularities did not pervade these later announcements as well.  And Plaintiffs and the Court

have many reasons to be suspicious of Defendants' word:  For instance, Defendants attempt to

recharacterize the implementation plan as not a ban based on transgender status, which is not

correct, *see supra* pp. 6-8, and the process underlying the implementation plan was rapid and

highly opaque, in stark contrast to the protracted and very public process by which transgender

people were initially allowed to serve.  In addition, if discovery does not go forward Plaintiffs

will be prejudiced in their ability to move for summary judgment.  For example, fully developed

discovery is necessary to allow Plaintiffs to litigate their claim that the President's asserted

justifications for imposing the ban were not supported by any evidence, and that the

circumstances surrounding the announcement of the ban were "of an unusual character."  *Romer

v. Evans*, 517 U.S. 620, 633 (1996).

Accordingly, as requested by the Court during the March 28, 2018 telephone conference,

Plaintiffs submit the following proposed discovery plan.

### A.  Written Discovery

Plaintiffs served their requests for production of documents, requests for admissions, and

interrogatories on Defendants on December 15, 2017.  The following already served document

requests encompass much of the discovery Plaintiffs need concerning the implementation plan

announced on March 23, 2018:

- **REQUEST FOR PRODUCTION NO. 4:**  Any documents constituting, summarizing, reflecting, or evidencing communications from, to, between, or among any of the Individual Defendants between July 26, 2017 and the present

concerning: (a) the Twitter Statement; (b) the implementation of the Twitter Statement; (c) the drafting, contents, meaning, implications, or implementation of the Accessions Readiness Memorandum, Accessions Deferral Memorandum, Interim Guidance, or the Presidential Memorandum; or (d) military service or accessions of transgender people.

- **REQUEST FOR PRODUCTION NO. 20:** Any documents constituting, reflecting, or evidencing communications on or after September 14, 2017 between any Defendant and any member of the "panel of experts" or among the "panel of experts" concerning service, inclusion, or exclusion of transgender people from military service, including, without limitation, any emails, meeting agendas, or meeting minutes.

- **REQUEST FOR PRODUCTION NO. 21:** Any documents provided to, considered by, or generated by the "panel of experts" referenced in the Interim Guidance.

- **REQUEST FOR PRODUCTION NO. 22:** Any documents constituting, describing, reflecting, or evidencing any "appropriate evidence and information" referred to in the Interim Guidance.

Cambier Decl., Ex. F, at 4, 6-7.  Plaintiffs believe, however, that a few additional discovery requests directed at the process by which Defendants arrived at the implementation plan are necessary, and propose to serve those requests by April 13, 2018.

Plaintiffs have recently become aware that certain third parties may have provided advice and assistance to the Department of Defense relating to Secretary Mattis's February 22, 2018 memorandum, and that one or more "Technical Advisory Groups" or "Commander Advisory Groups" may have been involved in making specific recommendations.  The participation of these third-party groups in the development of the plan further calls into question the government's assertion that Secretary Mattis's memorandum was the result of an independent military process, particularly given the opacity of these groups' membership, duties, and role. By April 13, Plaintiffs will serve further written discovery requests to obtain information about the role of those third parties and advisory groups in the development of the implementation plan (to the extent that information is not covered by Plaintiffs' existing requests).

Plaintiffs further note that several discovery disputes between the parties or between Plaintiffs and third parties are pending:

- Defendants have broadly claimed the presidential communications privilege over many responsive documents and interrogatory answers. Defendants have moved for a protective order seeking preclusion of all discovery into (including *in camera* review of) communications with the President and his advisors. ECF No. 89. That motion is fully briefed and pending before the Court.

- Defendants have put in issue the purportedly deliberative process underlying the latest recommendations by Defendant Mattis to the President. For instance, Defendants highlight "briefing from three separate working groups or committees" submitted to the "panel of experts." ECF No. 96, at 6. Insofar as they have relied upon this process, they have waived any privilege that could arguably shield the documents from disclosure. And to the extent that Defendants disagree that a waiver has occurred and assert that Plaintiffs are not entitled to production of documents, Plaintiffs may bring that issue to the Court.

- Defendants have made broad claims of deliberative process privilege. After a February 16 telephone conference with the Court, Defendants have agreed to withdraw some of those claims. However, many of Plaintiffs' challenges to these privilege claims remain to be addressed. Plaintiffs may request the Court's continued assistance in extracting documents that Defendants are inappropriately shielding from discovery.

- Defendants have also taken far longer than the Court originally contemplated to make their document productions. One of those productions, from the Army, had to be re-done in its entirety because of improper formatting. The Court should make clear that Defendants must move promptly to complete their document production.

- Defendants have produced very few documents dated after February 9, 2018, despite the fact that they were in the process of formulating a new policy to implement the ban in February and March 2018. Plaintiffs have not yet met and conferred with Defendants about this issue but may ultimately bring it to the Court.

- Plaintiffs have served three third-party document production subpoenas on organizations that are believed to have communicated with Defendants to persuade the Administration to ban military service by transgender people. So far, those third parties have not produced any documents. Plaintiffs are conferring with those entities and, if compliance is not forthcoming, will move to compel. In addition, because the initial subpoenas requested documents through September 1, 2017, Plaintiffs will serve supplemental subpoenas on those entities requesting production of documents through the date of the announcement of the implementation plan and the present.

## B.        Depositions

Only three of the originally scheduled depositions have occurred.  Other depositions sought by Plaintiffs were deferred because of the Defendants' untimely, inadequate, and incomplete document production.  Plaintiffs now plan to take the following depositions and have requested dates from Defendants:

1.        **Anthony (Tony) M. Kurta**
           Deputy Assistant Secretary of Defense for Military Personnel Policy
           Office of the Under Secretary for Personnel and Readiness

2.        **General Paul J. Selva**
           Vice Chairman, Joint Chiefs of Staff

3.        **Mary V. Kruger**
           Assistant Deputy for Health Affairs
           Office of the Assistant Secretary of the Army, Manpower and Reserve Affairs

4.        **Admiral Paul Zukunft**
           Commandant of the Coast Guard

5.        **Lernes Hebert**
           Acting Deputy Assistant Secretary of Defense
           Military Personnel Policy
           Office of the Under Secretary of Defense for Personnel and Readiness

6.        **Sally Donnelly**
           Former Senior Advisor to Secretary of Defense

7.        **Jennifer Hay**
           National Security Fellow, Harvard Kennedy School

8.        **Defense Health Agency, Pursuant to Federal Rule of Civil Procedure 30(b)(6)**

## CONCLUSION

The motion for a protective order should be denied.

April 6, 2018

Claire Laporte (*pro hac vice*)
Matthew E. Miller (*pro hac vice*)
Daniel L. McFadden (*pro hac vice*)
Kathleen M. Brill (*pro hac vice*)
Michael J. Licker (*pro hac vice*)
Rachel C. Hutchinson (*pro hac vice*)
Lauren Godles Milgroom (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: 617-832-1000
Fax: 617-832-7000

Theresa M. Roosevelt (D.C. Bar No.
1021853)
FOLEY HOAG LLP
1717 K St. NW
Washington, D.C. 20009
Telephone: 202-223-1200
Fax: 202-785-6687

Jennifer Levi (*pro hac vice*)
Mary Bonauto (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont St., Ste. 950
Boston, Massachusetts 02108
Telephone: 617-426-1350
Fax: 617-426-3594

Shannon P. Minter (*pro hac vice*)
Amy Whelan (*pro hac vice*)
Christopher F. Stoll (*pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market St., Ste. 370
San Francisco, California 94102
Telephone: 415-392-6257
Fax: 415-392-8442

Respectfully submitted,

/s/ Paul R.Q. Wolfson
Paul R.Q. Wolfson (D.C. Bar No. 414759)
Kevin M. Lamb (D.C. Bar No. 1030783)
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: 202-663-6000
Fax: 202-663-6363

Alan E. Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
Telephone: 212-230-8800
Fax: 212-230-8888

Christopher R. Looney (*pro hac vice*)
Harriet Hoder (*pro hac vice*)
Adam M. Cambier (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: 617-526-6000
Fax: 617-526-5000

Nancy Lynn Schroeder (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
350 S. Grand Ave., Ste. 2100
Los Angeles, California 90071
Telephone: 213-443-5300
Fax: 213-443-5400

*Attorneys for Plaintiffs*