## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, JOHN DOE 1, JOHN DOE 2, REGAN V. KIBBY, and DYLAN KOHERE, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; JAMES N. MATTIS, in his official capacity as Secretary of Defense; JOSEPH F. DUNFORD, JR., in his official capacity as Chairman of the Joint Chiefs of Staff; the UNITED STATES DEPARTMENT OF THE ARMY; MARK T. ESPER, in his official capacity as Secretary of the Army; the UNITED STATES DEPARTMENT OF THE NAVY; RICHARD V. SPENCER, in his official capacity as Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE AIR FORCE; HEATHER A. WILSON, in her official capacity as Secretary of the Air Force; the UNITED STATES COAST GUARD; KIRSTJEN M. NIELSEN, in her official capacity as Secretary of Homeland Security; the DEFENSE HEALTH AGENCY; RAQUEL C. BONO, in her official capacity as Director of the Defense Health Agency; and the UNITED STATES OF AMERICA, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  <br><br> Civil Action No. 17-cv-1597 (CKK) |

## PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS FOR PRODUCTION OF DOCUMENTS DIRECTED TO NONPARTIES FAMILY RESEARCH COUNCIL AND HERITAGE FOUNDATION

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, and supported by the

Memorandum and Declaration submitted herewith, Plaintiffs request that the Court compel third

parties Family Research Council and Heritage Foundation to produce documents in compliance

with third-party subpoenas submitted on February 12, 2018.  A proposed order is included with

this motion.

April 6, 2018

Claire Laporte (*pro hac vice*)
Matthew E. Miller (*pro hac vice*)
Daniel L. McFadden (*pro hac vice*)
Kathleen M. Brill (*pro hac vice*)
Michael J. Licker (*pro hac vice*)
Rachel C. Hutchinson (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: 617-832-1000
Fax: 617-832-7000

Theresa M. Roosevelt (D.C. Bar No.
1021853)
FOLEY HOAG LLP
1717 K St. NW
Washington, D.C. 20009
Telephone: 202-223-1200
Fax: 202-785-6687

Jennifer Levi (*pro hac vice*)
Mary Bonauto (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont St., Ste. 950
Boston, Massachusetts 02108
Telephone: 617-426-1350
Fax: 617-426-3594

Shannon P. Minter (*pro hac vice*)
Amy Whelan (*pro hac vice*)
Christopher F. Stoll (*pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market St., Ste. 370
San Francisco, California 94102
Telephone: 415-392-6257
Fax: 415-392-8442

Respectfully submitted,

/s/ Paul R.Q. Wolfson
Paul R.Q. Wolfson (D.C. Bar No. 414759)
Kevin M. Lamb (D.C. Bar No. 1030783)
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: 202-663-6000
Fax: 202-663-6363

Alan E. Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
Telephone: 212-230-8800
Fax: 212-230-8888

Christopher R. Looney (*pro hac vice*)
Harriet Hoder (*pro hac vice*)
Adam M. Cambier (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: 617-526-6000
Fax: 617-526-5000

Nancy Lynn Schroeder (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
350 S. Grand Ave., Ste. 2100
Los Angeles, California 90071
Telephone: 213-443-5300
Fax: 213-443-5400

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JANE DOE 2, JANE DOE 3, JANE DOE 4, JANE DOE 5, JANE DOE 6, JANE DOE 7, JOHN DOE 1, JOHN DOE 2, REGAN V. KIBBY, and DYLAN KOHERE, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States; JAMES N. MATTIS, in his official capacity as Secretary of Defense; JOSEPH F. DUNFORD, JR., in his official capacity as Chairman of the Joint Chiefs of Staff; the UNITED STATES DEPARTMENT OF THE ARMY; MARK T. ESPER, in his official capacity as Secretary of the Army; the UNITED STATES DEPARTMENT OF THE NAVY; RICHARD V. SPENCER, in his official capacity as Secretary of the Navy; the UNITED STATES DEPARTMENT OF THE AIR FORCE; HEATHER A. WILSON, in her official capacity as Secretary of the Air Force; the UNITED STATES COAST GUARD; KIRSTJEN M. NIELSEN, in her official capacity as Secretary of Homeland Security; the DEFENSE HEALTH AGENCY; RAQUEL C. BONO, in her official capacity as Director of the Defense Health Agency; and the UNITED STATES OF AMERICA, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 17-cv-1597 (CKK) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENAS FOR PRODUCTION OF DOCUMENTS
DIRECTED TO NONPARTIES FAMILY RESEARCH COUNCIL
AND HERITAGE FOUNDATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

    A.    The Requested Documents Are Directly Relevant To Test The Government's Claim For Deference And To Determine The True Purpose For The Ban ............. 4

    B.    The First Amendment Does Not Immunize the Requested Documents From Discovery ................................................................................................................ 7

        1.    Plaintiffs' Requests Do Not Implicate The First Amendment .................... 8

        2.    Plaintiffs' Need for the Requested Documents Outweighs Any Purported First Amendment Concerns ...................................................... 11

    C.    The Religious Freedom Restoration Act Does Not Bar Enforcement Of The Subpoena Directed To The Family Research Council ......................................... 13

        1.    RFRA Does Not Apply To Enforcement Of A Federal Subpoena Directed By A Private Plaintiff To A Nonparty Witness In Litigation Involving No Government Action Against The Nonparty ....... 13

        2.    Even If RFRA Applied, An Order Directing Compliance With The Subpoena Would Satisfy Its Requirements ................................................ 16

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003) ....................................................9, 11

*Baldus v. Brennan*, No. 11-CV-562, 2011 WL 6122542 (E.D. Wis. Dec. 8, 2011).......................6

*Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981), *judgment vacated on other grounds*, 458 U.S. 1118 (1982) ...............................................9

*Dunnet Bay Constr. Co. v. Hannig*, No. 10-CV-3051, 2011 WL 5417123 (C.D. Ill. Nov. 9, 2011)...............................................................10

*Employment Division v. Smith*, 494 U.S. 872 (1990) ............................................13, 14

*General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402 (6th Cir. 2010)..............................................................14, 16

*Grandebouche v. Clancy*, 825 F.2d 1463 (10th Cir. 1987)...........................................9

*Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006) ...................................................14

*Holt v. Hobbs,* 135 S. Ct. 853 (2015)...........................................................16

*In re Grand Jury Empaneling of Special Grand Jury,* 171 F.3d 826 (3d Cir. 1999) ...................18

*In re Grand Jury Proceedings of John Doe,* 842 F.2d 244 (10th Cir. 1988)...............................18

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007) ..............................................................6

*Kaemmerling v. Lappin*, 553 F.3d 669 (D.C. Cir. 2008) .......................................17, 18

*Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015).......................14

*NAACP v. Alabama*, 357 U.S. 449 (1958) ...........................................................9

*National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1 (D.C. Cir. 2009), (D.D.C. 2008)..........................11

*Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010) ............................9, 10, 11, 12

*Port v. Heard,* 764 F.2d 423 (5th Cir. 1985) ...................................................19

*Pulte Home Corp. v. Montgomery Cty., Md.*, No. 14-3955, 2017 WL 1104670 (D. Md. Mar. 24, 2017)...........................................................10

*Romer v. Evans*, 517 U.S. 620 (1996)...........................................................5

*Rweyemamu v. Cote*, 520 F.3d 198 (2d Cir. 2008) ........................................................14

*Sherbert v. Verner*, 374 U.S. 398 (1963) .......................................................................14

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77
(D.D.C. 2017) ...........................................................................................................16, 18

*Thomas v. Review Bd.*, 450 U.S. 707 (1981) ...........................................................17, 18

*UAW v. National Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139
(D.C. Cir. 1978) ..............................................................................................................11

*United States v. Duke Energy Corp.*, 232 F.R.D. 1 (D.D.C. 2005) .........................11, 12

*United States v. Harriss*, 347 U.S. 612 (1954) ...........................................................11

*Valle Del Sol v. Whiting*, No. 10-01061, 2013 WL 12098752 (D. Ariz. Dec. 11,
2013) ........................................................................................................................6, 10

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252
(1977) .............................................................................................................................5

*Village of Bensenville v. FAA*, 457 F.3d 52 (D.C. Cir. 2006) ...................................14, 15

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, No. A-15-CV, 2016
WL 5922315 (W.D. Tex. Oct. 11, 2016) ....................................................................6, 10

*Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110
(9th Cir. 2000) ...............................................................................................................14

## STATUTES, RULES, AND REGULATIONS

42 U.S.C. § 2000bb–1 ...............................................................................13, 15, 16

42 U.S.C. § 2000bb–2 ....................................................................................13, 15

U.S. Const. amend. I ...................................................................................... *passim*

**INTRODUCTION**

This motion to compel has been made necessary by the blanket refusal of nonparties

Family Research Council ("FRC") and Heritage Foundation ("Heritage") to produce any

documents in response to subpoenas.  Those subpoenas request that FRC and Heritage produce

records of their communications with Defendants and certain of their agents related to the ban on

transgender military service that the President announced on July 26, 2017.  The

communications are directly relevant to Plaintiffs' claims, because they are likely to illuminate

the irregular process that led to the President's abrupt announcement of the ban and to shed light

on the reasons for the ban.  Plaintiffs requested similar records directly from Defendants, but

Defendants have also refused to produce them, arguing that the President is constitutionally

immune from civil discovery requests and that (at a minimum) the presidential communications

privilege covers the records.

FRC and Heritage have asserted that complying with the subpoena would violate their

First Amendment rights, because it would "adversely affect the ability of [their] supporters to

collectively advocate for policies … for fear that exposure of their beliefs and communications

will lead to threats, harassment, or reprisal."  Decl. of Lauren Milgroom, Ex. A at 3 (Heritage);

*see id.* Ex. B at 2, 4-5 (FRC).  Plaintiffs were careful, however, to limit the subpoenas to *external*

communications between the two entities and Defendants; the subpoenas do *not* seek to inquire

into their *internal* organization or political strategizing.  In similar circumstances, courts have

held that any First Amendment interest in resisting a subpoena is minimal and overcome where,

as here, the records are important to a central issue in the litigation.

There is also no merit to FRC's claim that compliance would violate its rights under the

Religious Freedom Restoration Act (RFRA).  RFRA does not apply to enforcement of a

1

subpoena issued by one private, nongovernmental party to another.  In any event, compliance would not substantially burden FRC's exercise of religion and would advance the compelling interest in permitting Plaintiffs to prove their constitutional claims.  Nor is there any more narrowly tailored alternative, given Defendants' refusal to comply with discovery requests seeking similar records.

Because Plaintiffs' requests are narrowly drawn to obtain only relevant material, because any burden of complying with those requests would be minimal, and because Plaintiffs' requests for external communications with Executive Branch officials do not implicate the First Amendment or RFRA, the Court should enforce the subpoenas.[1]

## BACKGROUND

On July 26, 2017, President Trump announced that "the United States Government will not accept or allow transgender individuals to serve in any capacity in the U.S. Military."  ECF No. 61, at 14.  The President's announcement of the ban was followed by a Presidential Memorandum issued August 25, 2017, stating that effective March 23, 2018, the Armed Forces would no longer "permit[] transgender individuals to serve openly in the military," and no longer "authoriz[e] the use of the Department [of Defense's] resources to fund sex-reassignment surgical procedures."  *Id*. at 15.

Plaintiffs, transgender individuals currently serving or planning to serve in the U.S. military, filed this lawsuit to challenge their exclusion from military service.  On October 30, 2017, the Court granted Plaintiffs' motion for a preliminary injunction, ruling that Plaintiffs are likely to succeed on their claim that the ban violates Plaintiffs' rights to equal protection of the law.  Among other things, the Court considered whether the ban was "motivated by an improper

---

[1]     FRC and Heritage oppose this motion.

animus or purpose," and found "support for Plaintiffs' claim that the decision to exclude

transgender individuals was not driven by genuine concerns[.]"  ECF No. 61, at 68 (internal

quotation omitted).  The Court also considered whether deference was due to the President's

decision, and concluded that "all of the reasons proffered by the President for excluding

transgender individuals from the military in this case were not merely unsupported, but were

actually contradicted by the studies, conclusions and judgment of the military itself."  *Id.* at 67.

On December 15, 2017, Plaintiffs served Defendants with requests for production of

documents, seeking, among other things, communications between Defendants and third parties

related to the ban.  *See* Milgroom Decl., Ex. C, Req. for Prods. 4, 6, 7, 17, 19, 20, 21.

Defendants objected to and refused to comply with those requests, contending that the President

is immune from civil discovery orders and that any records responsive to those requests are

covered by, at a minimum, the presidential communications privilege.  *See* Milgroom Decl., Exs.

D, E, F.  Defendants moved for a protective order, arguing that the President should not be

required to respond to discovery requests.  That issue is before the Court for decision.  *See* ECF

Nos. 89, 91, 93.

Stymied by Defendants' refusal to produce those records, Plaintiffs served FRC and

Heritage with the subpoenas at issue in this motion on February 12, 2018.  *See* Milgroom Decl.,

Exs. G, H.  The subpoenas are narrowly targeted and time-limited.  They seek only external

communications between January 20, 2017 and September 1, 2017 between those entities and

the President, Vice President, their respective Executive Offices, and the Department of Defense

"concerning military service by transgender people and/or any restriction of military service by

transgender people."  Milgroom Decl., Ex. G at 5, Ex. H at 5.

On March 1, 2018, Heritage served Plaintiffs with objections and refused to produce any documents.  *See* Milgroom Decl., Ex. A.  FRC served similar objections on March 16, 2018.  Milgroom Decl., Ex. B.  Both entities contend that Plaintiffs' requests are unduly burdensome and irrelevant to this litigation, and that compliance would impinge on their First Amendment rights.  FRC (but not Heritage) also asserts that compliance with violate its rights under RFRA.  Plaintiffs met and conferred with counsel for FRC telephonically on March 28 and April 4, 2018, and with counsel for Heritage telephonically on March 29 and April 4, 2018, but the parties were unable to resolve or substantially narrow their differences.

## ARGUMENT

### A.  The Requested Documents Are Directly Relevant To Test The Government's Claim For Deference And To Determine The True Purpose For The Ban

FRC and Heritage contend that records of their communications with Defendants about the ban on transgender military service are irrelevant because "[w]hat [they] did or did not communicate during [their] petitioning of the Government [supporting the ban] is not relevant to the President's directive."  Milgroom Decl., Ex. A at 3-4 (Heritage); *see also* Ex. B at 8 (FRC).  That argument is without merit.  The records that Plaintiffs seek concern the process surrounding the President's decision to ban transgender individuals from military service.  That process is directly relevant to Plaintiffs' equal protection claim, for at least two reasons.

First, Defendants have argued for deference to the President's decision as one that was based on professional military judgment, including the advice that the President supposedly obtained from "Generals and military experts."  ECF No. 45, at 27-31.  But as Plaintiffs have explained in their opposition to Defendant's motion seeking to preclude discovery against the President, the circumstances surrounding the announcement of the ban strongly suggest that the President's decision was *not* based on legitimate military judgments.  See ECF No. 91, at 20.  As

this Court has already concluded, the circumstances surrounding the ban "provide additional support for Plaintiffs' claim that the decision to exclude transgender individuals was not driven by genuine concerns regarding military efficacy."  ECF No. 61, at 68.[2]

Second, communications between Defendants and FRC and Heritage are likely to bear directly on whether the decision to adopt the ban was motivated by unconstitutional animus against transgender individuals.  Evidence of Defendants' consultation with outside groups well known to oppose civil rights for transgender people, including their service in the armed forces, is likely to be probative of Defendants' purpose in banning transgender military service and in evaluating whether the ban can survive constitutional scrutiny under any level of review.  *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) (explaining that the circumstances surrounding a policy's enactment "may shed some light on the decisionmaker's purposes" and "afford evidence that improper purposes are playing a role"); *Romer v. Evans*, 517 U.S. 620, 632 (1996) (invalidating state law that was "inexplicable by anything but animus toward the class it affects").

In similar circumstances—where governmental action has been challenged as based on an improper, unconstitutional purpose, and there was reason to believe that action was influenced by outside groups—courts have ordered non-parties to produce their external communications

---

[2]     On February 22, 2018, the Secretary of Defense, following the President's "direct[ion]" in his August 25 Memorandum, issued a further Memorandum to the President proposing to implement policies that would, with a few narrow exceptions, bar military service by most transgender individuals.  ECF Nos. 96-1 at 1; 96-2.  As Plaintiffs explained to the Court in a scheduling conference held on March 28, 2018, the Secretary of Defense's February 22 Memorandum is an implementation of the President's August 25, 2017 Memorandum directing the exclusion of transgender individuals from military service.  Accordingly, the circumstances surrounding the President's decision to ban transgender people from the military, announced on July 26 and August 25, 2017, remain highly relevant to this case.

with government decisionmakers.  *See Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 2016 WL 5922315, at *5-6 (W.D. Tex. Oct. 11, 2016) ("lobbying communications" sent by "non-parties" to state decisionmaking body were relevant and discoverable in litigation under Equal Protection Clause and Dormant Commerce Clause challenging decision as motivated by discriminatory purpose); *Valle Del Sol v. Whiting*, 2013 WL 12098752, at *3 (D. Ariz. Dec. 11, 2013) (ordering non-party lobbying groups to comply with subpoenas seeking their communications with legislators because "evidence of those legislators' intent in drafting and supporting" the challenged statute "[was] relevant" to plaintiffs' equal protection claim); *see also Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 37, 46, 49 (D.D.C. 2007) (non-party "lobbying" communications were relevant to show an "improper legislative purpose" and therefore discoverable, in Establishment Clause case turning on whether legislature acted with impermissible religious purpose); *Baldus v. Brennan*, 2011 WL 6122542, at *1 (E.D. Wis. Dec. 8, 2011) (non-party's communications to legislature were relevant and discoverable in litigation challenging action under Voting Rights Act and Equal Protection Clause).

As those cases recognize, communications between policymakers and outside groups can be highly relevant when a governmental action is challenged as motivated by an unconstitutional purpose.  That is exactly the situation here.  The purpose of the Executive in adopting the transgender ban is squarely at issue in this case, and communications between the Executive and advocacy groups like FRC and Heritage about that ban are likely to illuminate its purpose.  That is especially true in a case like this one, where the need to discover the communications arises precisely because the executive action at issue took place under circumstances that strongly suggest that the explanation given by the executive for its action is untrue.  *See Wal-Mart*, 2016

WL 5922315 at *4-5 (stressing that communications between interest groups and public officials "can be relevant to determining the purpose or effect" of a law, notwithstanding what appears in the "public record," and rejecting contrary argument as "naiveté").

Finally, there is no merit to FRC's and Heritage's contentions that responding to the subpoena would be unduly burdensome because Plaintiffs should be able to obtain the same records directly from the Defendants.[3]  Plaintiffs are seeking the records at issue from FRC and Heritage precisely because Defendants have refused to produce them, asserting both constitutional immunity from discovery and privileges.  Given Defendant's legal position— which are they are likely to pursue on appeal even if rejected by this Court—Plaintiffs have no alternative but to seek the records from these third parties.

**B.      The First Amendment Does Not Immunize the Requested Documents From Discovery**

FRC and Heritage assert that compliance with the subpoenas would burden their First Amendment rights to free speech, to association, and to petition the government.  According to FRC, requiring it to produce records of its communications with Defendants about the transgender ban "might inhibit other groups and individuals from associating with FRC" and might chill donors from contributing to FRC.  *See* Milgrom Decl., Ex. B, at 5-6.  Similarly, Heritage asserts that "compelled disclosure will adversely affect the ability of Heritage and its supporters to collectively advocate" for their favored policies.  *See* Milgrom Decl., Ex. A, at 3.

FRC and Heritage overlook that Plaintiffs have sought only *external* communications of those groups with the government.  FRC and Heritage have minimal (if any) confidentiality interests in those communications; indeed, both groups argue that Plaintiffs could obtain the

---

[3]      FRC and Heritage have not argued that the time and cost involved in responding to the subpoenas would be prohibitive.

same records by serving document requests on Defendants or filing FOIA requests with the Government.  As explained above, Defendants have blocked that avenue by refusing to produce similar records in response to Plaintiffs' document requests; but if, as FRC and Heritage maintain, the same records should be obtainable from another source through discovery or FOIA, then it is difficult to see how they have a constitutionally based privilege to refuse to produce the same records themselves.  Plaintiffs do *not* seek internal documents that might even arguably implicate the concerns that FRC and Heritage raise, such as documents revealing the details of their internal political organizing or the names of their donors, supporters, and volunteers.

Given the narrow scope of Plaintiffs' document requests, FRC's and Heritage's First Amendment interest in resisting the subpoenas is minimal.  Moreover, their unsupported speculation about the potential impact of production on First Amendment interests is insufficient; neither entity has pointed to concrete evidence suggesting that producing these external communications would lead to threats or reprisal against them or their supporters.[4]  Finally, Plaintiffs' interest in obtaining the information outweighs any slight effect on First Amendment interests that would follow from production.  As explained above, the records Plaintiffs seek are central to the litigation, and because of Defendants' refusal to produce the information, cannot be obtained anywhere else.

### 1. Plaintiffs' Requests Do Not Implicate The First Amendment

FRC and Heritage rely on cases in which courts have recognized a qualified First Amendment privilege—principally rooted in the First Amendment right of expressive association—that protects advocacy organizations from disclosing confidential information that

---

[4]  Any individual privacy concerns that might be raised by information in the communications such as email or street addresses could be accommodated through appropriate redactions.

could lead to reprisals against them and chill their ability to organize.  All of those decisions, however, are different from this case in one critical respect:  In those cases, the information sought was *internal* to the group or its supporters, and was not shared with others—and particularly not with the government.  *See NAACP v. Alabama*, 357 U.S. 449, 462-463 (1958) (internal membership lists); *AFL-CIO v. FEC*, 333 F.3d 168, 177 (D.C. Cir. 2003) ("confidential internal materials"); *see also Black Panther Party v. Smith*, 661 F.2d 1243, 1269-1270 (D.C. Cir. 1981) (applying privilege to internal membership lists), *judgment vacated on other grounds,* 458 U.S. 1118 (1982); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1165 n.12 (9th Cir. 2010) (privilege was "limited to *private*, *internal* … communications" (emphasis in original)); *Grandebouche v. Clancy*, 825 F.2d 1463, 1465-1467 (10th Cir. 1987) (internal membership lists, internal mailing lists, and a list of the association's convention attendees).

Those cases recognize that, in some circumstances when the government or a litigant seeks information about an advocacy group's internal dealings, such as the names of its supporters or the details of its plans for political campaigns, compelled disclosure could hobble the group's ability to organize to advance its cause.  But none of those cases has held that communications *outside* the group and its supporters—and in particular, communications *to the government*—are entitled to the same First Amendment protection.   When an advocacy organization lobbies the government for a policy that it supports, it is not entitled to the same protection of confidentiality that might shield its internal deliberations.  Indeed, FRC and Heritage recognize that very point when they suggest that the records that Plaintiffs seek should be obtainable from the government under the Freedom of Information Act.  *See* Milgroom Decl., Ex. B at 8 (FRC); Ex. A at 4 (Heritage).

9

Courts have not shielded external communications like those between FRC and Heritage and the Executive Branch.  In *Perry v. Schwarzenegger*, for instance, the Ninth Circuit "emphasize[d]" that the First Amendment privilege that FRC and Heritage invoke here "is limited to *private*, *internal* campaign communications," and it refused to extend its application to "documents or messages conveyed to the electorate at large" or other external communications to "discrete groups of voters or individual voters for purposes such as persuasion, recruitment or motivation."  591 F.3d at 1165 n.12 (emphasis in original).  Other courts, following *Perry*, have found no (or limited) First Amendment protections in external communications.  *See Wal-Mart*, 2016 WL 5922315, at *8 (privilege does not apply to third parties' external "communications with public actors"); *Valle Del Sol*, 2013 WL 12098752, at *3 (First Amendment privilege "does not apply" because "the communications Plaintiffs seek are not internal communications, but rather communications between Movants and public officials"); *see also Pulte Home Corp. v. Montgomery Cty., Md.*, 2017 WL 1104670, at *10 (D. Md. Mar. 24, 2017) (distinguishing between disclosure of information "used to convince local government decisionmakers," which "would not result in any chilling effect on the citizen groups' First Amendment rights," and other information that was held internally, which was more sensitive); *Dunnet Bay Constr. Co. v. Hannig*, 2011 WL 5417123, at *3 (C.D. Ill. Nov. 9, 2011) (concluding that First Amendment "protect[s] against the disclosure of the identity of members and the content of internal communications").

FRC and Heritage invoke their First Amendment right to petition government, but "while citizens plainly have a right to 'communicate with [public] officials on a matter of public concern,' that does not mean they have a right to protect these communications from public view."  *Wal-Mart,* 2016 WL 5922315, at *7 (quoting *Valle Del Sol,* 2013 WL 12098752 at *3)

(alteration in original).  Thus, courts have consistently upheld lobbying disclosure requirements, recognizing that disclosure of information about contacts with government officials does not abridge the right to petition the government.  *See United States v. Harriss*, 347 U.S. 612, 620, 625 (1954) (upholding against First Amendment challenge requirement in former Federal Regulation of Lobbying Act to disclose "direct communication with members of Congress on pending or proposed federal legislation"); *see also National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 7, 29 (D.C. Cir. 2009) (holding that lobbying disclosure requirement of Honest Leadership and Open Government Act did not impinge upon plaintiff's First Amendment rights), *affirming* 549 F. Supp. 2d 33 (D.D.C. 2008) (Kollar-Kotelly, J.).

### 2.   Plaintiffs' Need for the Requested Documents Outweighs Any Purported First Amendment Concerns

Even if Plaintiffs' requests did implicate the First Amendment, Plaintiffs' need for the discovery would outweigh any potential impact on FRC's and Heritage's First Amendment rights.  Where the First Amendment is potentially implicated by compelled disclosure, the court should "balance the burdens imposed" by the requested discovery "against the significance" of the materials sought.  *AFL-CIO*, 333 F.3d at 176; *see also Perry*, 591 F.3d at 1161.  To make that determination, the court should consider two questions: "1) can the information sought be discovered through alternative sources and has the party seeking disclosure made reasonable attempts to obtain the information elsewhere; and 2) does the information sought go to the heart of the lawsuit?"  *UAW v. National Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1152 (D.C. Cir. 1978); *see also United States v. Duke Energy Corp.*, 232 F.R.D. 1, 3 (D.D.C. 2005) (applying same test to deny motion to quash).

In this case, both sides of the balance favor disclosure.  With respect to the first question, Plaintiffs have sought the communications in discovery requests directed to Defendants, but

Defendants have resisted and have asked the Court to enter a protective prohibiting any such discovery. *See supra,* p. 3. The resulting motion papers are now before this Court. Where, as here, a party "has pursued discovery from the individual defendants though the courts" and a third party "is in fact the best source of the information sought," this factor "weigh[s] in favor" of production. *Duke Energy*, 232 F.R.D. at 3.

As to the second question, the information that Plaintiffs are seeking in these subpoenas indeed "goes to the heart" of this lawsuit. As explained above, the requested records are probative of the process surrounding the President's decision to ban transgender military service, and are also directly relevant to whether the Executive Branch acted with an unconstitutional purpose in adopting that ban. *See supra*, pp. 4-7. Because the government has defended the President's decision as the product of professional military advice and judgment, evidence to the contrary will tend to undermine Defendants' claim for deference and establish that the ban was driven by animus rather than a legitimate military justification.

Other factors also tip the balance in favor of production. This is significant constitutional litigation affecting the fundamental rights of service members and the composition of our military. *See Perry*, 591 F.3d at 1161 (listing "the importance of the litigation" as a relevant balancing factor). Nor are there any "less intrusive means of obtaining" the communications, which, as discussed above, are "central[]" to the litigation, than subpoenaing the individuals who sent and received the relevant communications. *Id.* And finally, any First Amendment interests at stake are minimal given that Plaintiffs seek only external communications with public officials. *Id.* (listing the "substantiality of the First Amendment interests at stake" as an additional factor). Whatever slight First Amendment interest FRC and Heritage might have in

resisting disclosure of their contacts with the government is therefore outweighed by Plaintiffs'
compelling need for the information in this litigation.

### C.  The Religious Freedom Restoration Act Does Not Bar Enforcement Of The Subpoena Directed To The Family Research Council

FRC objects that enforcement of the subpoena would violate the Religious Freedom
Restoration Act (RFRA), which in certain circumstances prohibits the federal government from
substantially burdening a private party's exercise of religion.  RFRA does not apply to this
matter, however, because this litigation involves only claims by private-party plaintiffs.  It does
not involve any action taken against FRC by a federal government agency.  Furthermore, even if
RFRA applied here, FRC's rights under that statute would not be violated by requiring it to
comply with the subpoena.  FRC cannot establish a substantial burden on its religious beliefs,
and even if it could, the federal judicial system's overriding interest in obtaining critical evidence
in cases seeking vindication of vital constitutional rights is sufficiently compelling to justify
enforcement of the subpoena, which is narrowly tailored to obtain only highly relevant
information that Plaintiffs have been unable to obtain from other sources.

### 1.  RFRA Does Not Apply To Enforcement Of A Federal Subpoena Directed By A Private Plaintiff To A Nonparty Witness In Litigation Involving No Government Action Against The Nonparty

RFRA provides that "Government shall not substantially burden a person's exercise of
religion," 42 U.S.C. § 2000bb–1(a), unless application of the burden "is the least restrictive
means of furthering [a] compelling governmental interest," *id*. § 2000bb–1(b)(2).
"[G]overnment" is defined in RFRA as "a branch, department, agency, instrumentality, and
official (or other person acting under color of law) of the United States." *Id.* § 2000bb–2(1).
RFRA was enacted in response to the Supreme Court's decision in *Employment Division v.
Smith*, 494 U.S. 872 (1990), which held that the Free Exercise Clause of the First Amendment to

the Constitution does not shield noncompliance with neutral laws of general applicability, *see id.* at 879, and was intended to restore the balancing test set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), in cases involving government action that is alleged to infringe religious freedom.

RFRA has no application to the subpoena that Plaintiffs directed to FRC because RFRA applies only to an alleged infringement of religious freedom *by the federal government*. RFRA does not apply to action taken by a private party or a non-federal entity, even if the federal government is in some way involved in the dispute or federal law is at issue in the litigation. *See Village of Bensenville v. FAA*, 457 F.3d 52, 65 (D.C. Cir. 2006) (plan by a city to expand airport and make related land seizures, which allegedly burdened religious freedom, could not be attributed to federal agency where agency's only role was to approve plan for purposes of federal funding because "[t]he City—not the FAA—is the cause of any burden on religious exercise").

Thus, RFRA does not apply in cases where a private party sues another private party under federal law, and one party claims that application of the federal law to its conduct would violate RFRA. *See Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 736-737 (7th Cir. 2015) (RFRA does not apply in cases to which government is not a party); *General Conference Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410-412 (6th Cir. 2010) (RFRA does not apply in federal trademark suit between private parties); *see also Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000) (expressing doubt that RFRA would apply to private copyright suit).[5]

---

[5]    A panel of the Second Circuit, over the dissent of then-Judge Sotomayor, held that RFRA applied in a private lawsuit brought under the Age Discrimination in Employment Act. *See Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006); *but see id.* at 114 (Sotomayor, J., dissenting) ("RFRA by its terms does not apply to suits between private parties."). A subsequent panel of the Second Circuit expressed doubt about the correctness of *Hankins*. *See Rweyemamu v. Cote*, 520 F.3d 198, 203-204 & n.2 (2d Cir. 2008).

The reasoning in these cases makes clear that, even though the federal government is a party to this litigation, RFRA does not apply to this motion to compel.  That is because no federal agency is seeking to compel or forbid any action by FRC.  In determining whether RFRA applies, the Court must "begin[ ] by identifying the specific conduct of which the plaintiff complains."  *Village of Bensenville*, 457 F.3d at 64 (alteration in original) (internal quotation marks ommitted).  The only conduct that FRC challenges under RFRA is *Plaintiffs'* action in serving and seeking to enforce the subpoena.  Although the federal government is separately involved in this litigation as a party adverse to the Plaintiffs, that is irrelevant to whether that subpoena should be enforced; neither the President nor any of the other Defendants have taken any action adverse to FRC.  Indeed, in this litigation, the government is *defending* the constitutionality of the very policy that FRC urged it to enact.  Nor can Plaintiffs' action in enforcing the subpoena be attributed to the government; they are challenging the government's action in this case, not acting under its direction.

The only governmental action about which FRC could possibly be complaining would be *this Court's* entry of an order compelling compliance with the subpoena.  But the structure of RFRA makes clear that it does not apply to the action of a federal court in adjudicating a controversy such as this one.  RFRA provides that "Government may substantially burden a person's exercise of religion only if *it demonstrates*" that doing so would be "the least restrictive means of furthering [a] compelling governmental interest."  42 U.S.C. § 2000bb-1(b) (emphasis added).  The statute further defines "demonstrates" to mean "meets the burdens of going forward with the evidence and of persuasion."  *Id.* § 2000bb-2(3).  In our system of adjudication, a court enforcing a subpoena has no "burden of going forward."  The Court has no obligation to meet

any burden of production or persuasion as it administers discovery.  Thus, no "demonstration" that enforcing the subpoena would be the least restrictive means is required.

Furthermore, as explained above, RFRA does not prevent courts from entering a judgment on the merits in a dispute between private parties.  *See, e.g.*, *General Conference Corp.*, 617 F.3d at 411.  Since RFRA cannot prevent courts from exercising that fundamental judicial function, it also cannot prevent courts from taking the intermediate step of requiring responses to subpoenas issued by one private party to another private party.

### 2.   Even If RFRA Applied, An Order Directing Compliance With The Subpoena Would Satisfy Its Requirements

Even if RFRA applied to this Court's enforcement of a private plaintiff's civil subpoena against a nonparty whose substantive rights are not at issue in the underlying litigation, such an order would easily satisfy RFRA's requirements in this case.  "A person who brings a challenge under RFRA bears the initial burden of proving that (1) the Government's policy or action implicates her religious exercise, (2) the relevant religious exercise is grounded in a sincerely held religious belief, and (3) the policy or action substantially burdens that exercise." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 239 F. Supp. 3d 77, 88 (D.D.C. 2017) (citing *Holt v. Hobbs,* 135 S. Ct. 853, 862 (2015)).  If the person asserting a RFRA claim satisfies that burden, the burden shifts to the government to demonstrate that "application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb–1(b).  FRC's RFRA argument fails at both steps.

*First,* FRC has not shown that its attempts to influence military policy are themselves any form of religious exercise.  But even if it is assumed that compliance with the subpoena implicates FRC's religious exercise, and that this religious exercise is grounded in a sincerely

held religious belief, FRC cannot show that production of external communications with

Executive Branch officials on matters of public policy would "substantially burden" that

exercise.  FRC identifies no specific religious belief or practice that it would be required to

violate if it were to produce the narrow set of records that Plaintiffs are seeking.  It offers only a

general contention that production would violate its religious freedom by "(1) chilling its

religiously-motivated advocacy, (2) jeopardizing its relationships with donors and other

advocacy groups, and (3) hindering its right to petition the government."  Milgrom Decl., Ex. B

at 2.

Such generalities are insufficient to support a claim of substantial burden.  "A substantial

burden exists when government action puts 'substantial pressure on an adherent to modify his

behavior and to violate his beliefs.'"  *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir.

2008) (quoting *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)).  "An inconsequential or *de*

*minimis* burden on religious practice does not rise to this level, nor does a burden on activity

unimportant to the adherent's religious scheme."  *Id.*  FRC does not explain how producing

records of its external lobbying communications with the government in this matter would

require it to modify its religious practices or violate its beliefs.

In *Kaemmerling*, the D.C. Circuit rejected a prisoner's claim that the collection, analysis,

and retention of his DNA would substantially burden his religious exercise.  Like FRC's vague

claim that its religious exercise will be "chilled," the prisoner based his claim of burden on his

speculation that the collection of that information might expose him to harm in the future, such

as "the potential that he could become an unwilling participant in future activities that violate his

religious beliefs."  553 F.3d at 678.  The court held such speculative claims of future harm

insufficient to establish a substantial burden.  The court observed that the collection of his

information by the FBI "does not call for Kaemmerling to modify his religious behavior in any way—it involves no action or forbearance on his part, nor does it otherwise interfere with any religious act in which he engages." *Id.* at 679.

The same is true here:  FRC does not claim that the production of the communications at issue here would require it to violate any religious tenet or practice.  Here, as in *Kaemmerling,* Plaintiffs' requests for production of information "cannot be said to hamper [its] religious exercise because they do not 'pressure [it] to modify [its] behavior and to violate [its] beliefs.'" *Id.* (quoting *Thomas,* 450 U.S. at 718); *see also Standing Rock,* 239 F. Supp. 3d at 91 (concluding that government's grant of easement for Dakota Access pipeline did not create substantial burden because it "does not impose a sanction on the Tribe's members for exercising their religious beliefs, nor does it pressure them to choose between religious exercise and the receipt of government benefits").

*Second,* even if compliance with the subpoena would impose a substantial burden on FRC's religious exercise, enforcement of the subpoena is the least restrictive means of furthering the government's compelling interest in ensuring that courts have access to all the facts necessary to ensure fair and accurate adjudication of the cases before them, particularly when those cases involve fundamental constitutional rights of the highest order such as due process and equal protection.  *See, e.g.*, *In re Grand Jury Empaneling of Special Grand Jury,* 171 F.3d 826, 832 (3d Cir. 1999) (holding that government had compelling interest sufficient to compel witnesses to testify against their father despite RFRA objection because "the crimes that this grand jury is investigating are weighty and … these witnesses are likely to possess substantial relevant information"); *cf. In re Grand Jury Proceedings of John Doe,* 842 F.2d 244, 248 (10th Cir. 1988) (holding that government's "compelling interest in investigating offenses against the

criminal laws of the United States" outweighed the witness's claimed free exercise rights to refuse to testify); *Port v. Heard,* 764 F.2d 423, 432 (5th Cir. 1985) (rejecting parents' claim that the Free Exercise Clause entitled them to refuse testimony about their son since "the state's interest in procuring every person's testimony for the thorough investigation of the crime of homicide outweighs the Ports' First Amendment claims").

Although FRC claims that the subpoena is not the least restrictive means of furthering the government's interest in obtaining the facts relevant to this proceeding, it offers no way in which the subpoena, which requests only communications with five government offices on one specific subject over a period of less than a year, could have been more narrowly crafted.  The only alternative it proposes as less restrictive is that Plaintiffs obtain the communications at issue directly from Defendants.  But as explained above, Plaintiffs have tried that avenue and have been stymied by Defendants' refusal to comply with their discovery requests.  Accordingly, there is no less restrictive alternative than to obtain these communications directly from third parties such as FRC, who have no basis to claim privilege over these materials.

## CONCLUSION

The motion to compel compliance should be granted, and FRC and Heritage should be ordered to produce the records sought in the subpoenas.

April 6, 2018

Claire Laporte (*pro hac vice*)
Matthew E. Miller (*pro hac vice*)
Daniel L. McFadden (*pro hac vice*)
Kathleen M. Brill (*pro hac vice*)
Michael J. Licker (*pro hac vice*)
Rachel C. Hutchinson (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: 617-832-1000
Fax: 617-832-7000

Theresa M. Roosevelt (D.C. Bar No. 1021853)
FOLEY HOAG LLP
1717 K St. NW
Washington, D.C. 20009
Telephone: 202-223-1200
Fax: 202-785-6687

Jennifer Levi (*pro hac vice*)
Mary Bonauto (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont St., Ste. 950
Boston, Massachusetts 02108
Telephone: 617-426-1350
Fax: 617-426-3594

Shannon P. Minter (*pro hac vice*)
Amy Whelan (*pro hac vice*)
Christopher F. Stoll (*pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market St., Ste. 370
San Francisco, California 94102
Telephone: 415-392-6257
Fax: 415-392-8442

Respectfully submitted,

/s/ Paul R.Q. Wolfson
Paul R.Q. Wolfson (D.C. Bar No. 414759)
Kevin M. Lamb (D.C. Bar No. 1030783)
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: 202-663-6000
Fax: 202-663-6363

Alan E. Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
Telephone: 212-230-8800
Fax: 212-230-8888

Christopher R. Looney (*pro hac vice*)
Harriet Hoder (*pro hac vice*)
Adam M. Cambier (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: 617-526-6000
Fax: 617-526-5000

Nancy Lynn Schroeder (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
350 S. Grand Ave., Ste. 2100
Los Angeles, California 90071
Telephone: 213-443-5300
Fax: 213-443-5400

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 6th day of April, 2018, a true and correct copy of the foregoing document was served by United States Mail and electronic mail upon the following individuals:

Gene C. Schaerr
SCHAERR & DUNCAN LLP
1717 K St. NW, Suite 900
Washington, D.C. 20006
gschaerr@gmail.com

Heidi K. Abegg
WEBSTER, CHAMBERLAIN & BEAN LLP
1747 Pennsylvania Ave. NW, Suite 1000
Washington, D.C. 20006
habegg@wc-b.com


/s/ Paul R.Q. Wolfson