## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE 2, *et al*.,<br>      Plaintiffs<br>v.<br>JAMES N. MATTIS, *et al*.,<br>      Defendants | Civil Action No. 17-1597 (CKK) |

## MEMORANDUM OPINION
(August 24, 2018)

On July 26, 2017, President Donald J. Trump issued a statement via Twitter announcing that "the United States Government will not accept or allow transgender individuals to serve in any capacity in the U.S. Military." A formal Presidential Memorandum followed on August 25, 2017. Before the 2017 Presidential Memorandum, the Department of Defense had announced that openly transgender individuals would be allowed to enlist in the military, effective January 1, 2018, and had prohibited the discharge of service members based solely on their gender identities. The 2017 Presidential Memorandum reversed these policies. It indefinitely extended the prohibition against transgender individuals entering the military (a process formally referred to as "accession"), and required the military to authorize the discharge of transgender service members. The President ordered Secretary of Defense James N. Mattis to submit a plan for implementing the policy directives of the 2017 Presidential Memorandum by February 2018. Plaintiffs filed suit and sought preliminary injunctive relief, which the Court granted.

Currently pending before the Court are Defendants' [115] Motion to Dismiss Plaintiffs' Second Amended Complaint or, in the Alternative, Defendants' Motion for Summary Judgment, and Plaintiffs' [131] Cross-Motion for Summary Judgment. The Court issued a Memorandum Opinion and Order denying Defendants' Motion to the extent that it sought the dismissal of Plaintiffs' claims on mootness and standing grounds. As an alternative form of relief,

Defendants' Motion also seeks summary judgment.  Plaintiffs oppose Defendants' motion for summary judgment, and have filed their own cross-motion for summary judgment.  However, Plaintiffs also ask this Court to defer ruling on summary judgment because Plaintiffs have not been able to conclude the discovery process to develop a record, due to Defendants' overly broad assertions of privilege.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court **DENIES** both parties' motions for summary judgment.  Defendants claim that their decisions regarding transgender military service are owed great deference because they are the product of extensive deliberation, study and review.  However, at the same time, Defendants have withheld information concerning this deliberation, study and review from Plaintiffs.  As a result, there undeniably are factual disputes in this case.  Among other areas of dispute, the parties disagree about the nature of the process that resulted in the challenged policies.  The facts about that process are clearly material.  They affect the threshold question that the Court must answer before assessing the constitutionality of Defendants' policy: what level of scrutiny the Court should apply.  Because genuine disputes of material fact exist, summary judgment for either party cannot be entered.  Instead, the Court will grant Plaintiffs' request to continue with discovery.

---

[1] The Court's consideration has focused on the following documents:
- Defs.' Mem. in Supp. of Mot. to Dismiss Pls.' 2d Am. Compl., or, in the Alternative, Defs.' Mot. for Summ. J., ECF No. 115 ("Defs.' Mem.");
- Pls.' Opp'n to Defs.' Mot. for Summ. J. and Cross-Mot. for Summ. J., ECF No. 131-1 ("Pls.' Opp'n and Cross-Mot.");
- Defs.' Reply in Supp. of their Mot. to Dismiss Pls.' 2d Am. Compl., or, in the Alternative, for Summ. J., and Opp'n to Pls.' Cross-Mot. for Summ. J., ECF No. 138 ("Defs.' Reply"); and
- Pls.' Reply in Support of their Cross-Mot. for Summ. J., ECF No. 149 ("Pls.' Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

# I. BACKGROUND

Plaintiffs are current and aspiring transgender service members.  Many have years of experience in the military.  Some have decades.  They have been deployed on active duty in Iraq and Afghanistan.  They have and continue to serve with distinction.  All fear that the directives of the 2017 Presidential Memorandum will have devastating impacts on their careers and their families.  Accordingly, they filed this lawsuit challenging those directives and moved this Court to enjoin the implementation of the 2017 Presidential Memorandum.  They claimed that the President's directives violate the fundamental guarantees of due process afforded by the Fifth Amendment to the United States Constitution.

On October 30, 2017, the Court issued a preliminary injunction in this case.  The Court found that Plaintiffs had standing and were likely to succeed on their Fifth Amendment claim. The Court concluded that, as a form of government action that classifies people based on their gender identity, and disfavors a class of historically persecuted and politically powerless individuals, the President's directives were subject to heightened scrutiny.  Plaintiffs claimed that the President's directives could not survive such scrutiny because they were not genuinely based on legitimate concerns regarding military effectiveness or budget constraints, but were instead driven by a desire to express disapproval of transgender people generally.  The Court found that a number of factors—including the breadth of the exclusion ordered by the directives, the unusual circumstances surrounding the President's announcement of them, the fact that the reasons given for them did not appear to be supported by any facts, and the recent rejection of those reasons by the military itself—strongly suggested that Plaintiffs' Fifth Amendment claim was meritorious.  Accordingly, the Court enjoined Defendants from enforcing the President's directives.  The effect of the Court's preliminary injunction was to revert to the *status quo ante*

with regard to accession and retention that existed before the issuance of the 2017 Presidential Memorandum.

Defendants appealed, *see* Defs.' Notice of Appeal, ECF No. 66, and moved this Court to stay the portion of its preliminary injunction that required Defendants to begin accepting transgender individuals into the military on January 1, 2018, *see* Defs.' Mot. for Partial Stay of Prelim. Inj. Pending Appeal, ECF No. 73. On December 11, 2017, the Court denied Defendants' motion to stay. *See* Dec. 11, 2017 Order, ECF No. 75.

Defendants then sought the same relief from the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). On December 22, 2017, the D.C. Circuit denied Defendants' motion to stay this Court's preliminary injunction. *See Doe 1 v. Trump*, No. 17-5267, 2017 WL 6553389 (D.C. Cir. Dec. 22, 2017). The D.C. Circuit concluded that Defendants had not demonstrated that they had a strong likelihood of success on appeal, that they would be irreparably harmed absent a stay, or that the stay would not harm the other parties to the proceeding. *Id.* The D.C. Circuit explained that "in the balancing of equities, it must be remembered that all Plaintiffs seek during this litigation is to serve their Nation with honor and dignity, volunteering to face extreme hardships, to endure lengthy deployments and separation from family and friends, and to willingly make the ultimate sacrifice of their lives if necessary to protect the Nation, the people of the United States, and the Constitution against all who would attack them." *Id.* at *3. After the D.C. Circuit's opinion was issued, Defendants voluntarily dismissed their appeal of this Court's preliminary injunction. The military began permitting openly transgender individuals to accede on January 1, 2018.

This case then moved forward into the discovery stage. Defendants strenuously resisted engaging in discovery. As noted above, the 2017 Presidential Memorandum had called for the

Secretary of Defense to submit a plan to implement the President's policy directives by February 2018. Defendants repeatedly argued that discovery should be halted until that plan was submitted. Defendants even argued at one point that Plaintiffs were not entitled to discovery in this case at all. The Court repeatedly rejected Defendants' arguments and ordered Defendants to cooperate with discovery so that this case could move forward efficiently toward an ultimate resolution on the merits. Despite the Court's orders, discovery remains unfinished because Defendants have asserted that a substantial portion of the documents and information sought by Plaintiffs are privileged (pursuant to the deliberative process privilege and the presidential communications privilege), and the parties' disputes about these assertions of privilege remain outstanding.

In related cases throughout the country, Defendants' assertions of privilege have not fared well. The courts in *Karnoski v. Trump*, No. 17-cv-1297-MJP (W.D. Wash.) and *Stone v. Trump*, No. 17-cv-2459-GLR (D. Md.) have recently rejected Defendants' arguments and ordered Defendants to produce much of the discovery that they have withheld.

In February 2018, as ordered by the 2017 Presidential Memorandum, Secretary of Defense Mattis presented a memorandum to the President that proposed a policy to effectively prevent transgender military service. *See* Defs.' Mot. to Dissolve the Preliminary Injunction, Ex. 1, ECF No. 96-1 (hereinafter, the "Mattis Implementation Plan"). The Mattis Implementation Plan, unlike the President's 2017 tweet and memorandum, purports not to be a blanket ban on all "transgender individuals." However, the plan effectively implements such a ban by targeting proxies of transgender status, such as "gender dysphoria" and "gender transition," and by requiring all service members to serve "in their biological sex." Based on the conclusion "that there are substantial risks associated with allowing the accession and retention of individuals

with a history or diagnosis of gender dysphoria and require, or have already undertaken, a course

of treatment to change their gender," Mattis Implementation Plan at 2, the Mattis Implementation

Plan proposes the following policies:

- Transgender persons with a history or diagnosis of gender dysphoria are disqualified from military service, except under the following limited circumstances: (1) if they have been stable for 36 consecutive months in their biological sex prior to accession; (2) Service members diagnosed with gender dysphoria after entering into service may be retained if they do not require a change of gender and remain deployable within applicable retention standards; and (3) currently serving Service members who have been diagnosed with gender dysphoria since the previous administration's policy took effect and prior to the effective date of this new policy, may continue to serve in their preferred gender and receive medically necessary treatment for gender dysphoria.

- Transgender persons who require or have undergone gender transition are disqualified from military service.

- Transgender persons without a history or diagnosis of gender dysphoria, who are otherwise qualified for service, may serve, like all other Service members, in their biological sex.

*Id.* at 2-3.

To summarize: under the Mattis Implementation Plan, individuals who require or have

undergone gender transition are absolutely disqualified from military service; individuals with a

history or diagnosis of gender dysphoria are largely disqualified from military service; and, to

the extent that there are any individuals who identify as "transgender" but do not fall under the

first two categories, they may serve, but only "in their biological sex."  By definition,

transgender persons do not identify or live in accord with their biological sex, which means that

the result of the Mattis Implementation Plan is that transgender individuals are generally not

allowed to serve openly in the military.  There is only one narrow class of transgender

individuals who are allowed to serve as openly transgender under the Mattis Implementation

Plan.  Pursuant to a "grandfather provision," those "currently serving Service members who have been diagnosed with gender dysphoria since the previous administration's policy took effect and prior to the effective date of" the policy set forth in the Mattis Implementation Plan, may continue to serve in their preferred gender.

The reasoning underlying the Mattis Implementation Plan is spelled out in a second memorandum that was sent from the Department of Defense to the President in February 2018. *See* Defs.' Mot. to Dissolve the Preliminary Injunction, Ex. 2, ECF No. 96-2 (hereinafter, the "Panel Report").  Like the Mattis Implementation Plan, the Panel Report carefully avoids categorical language banning all transgender individuals.  Instead, the document speaks in terms of individuals with "gender dysphoria" and those who have undergone or will require "gender transition" (both of which, again, are proxies for transgender status).  Generally speaking, the Panel Report concludes that individuals with gender dysphoria or who have undergone or will require gender transition undermine the military.  According to the report, these service members are fundamentally incompatible with the military's mental health standards, physical health standards, and sex-based standards.  The report suggests that they are a detriment to military readiness and unit cohesion.  It likens gender dysphoria to conditions such as "bipolar disorder, personality disorder, obsessive-compulsive disorder, suicidal behavior, and even body dysmorphic disorder."  Panel Report at 20.  It concludes that individuals with gender dysphoria or who have undergone or will require gender transition are more likely to have other mental health conditions and substance abuse problems, and to commit suicide.  *Id.* at 21.  The Panel Report also states that these individuals impose "disproportionate costs" on the military.  *Id.* at 41.  For the most part, in lieu of affirmative evidence, the Panel Report repeatedly cites "uncertainty" in the medical field about these individuals as a reason to urge that the military

"proceed with caution." *Id.* at 6.  Although not necessary to the outcome of this particular

Memorandum Opinion, it is worth noting that these conclusions were immediately denounced by

the American Psychological Association and the American Medical Association.  *See* Decl. of

Lauren Godles Milgroom, ECF No. 128 ("Milgroom Decl."), Exs. GG, HH.

On March 23, 2018, Defendants filed a Notice informing the Court that President Trump

had issued a second memorandum on military service by transgender individuals.  *See* Defs.'

Notice, ECF No. 95.  In the 2018 Presidential Memorandum, the President stated that he

"revokes" his 2017 Presidential Memorandum, "and any other directive [he] may have made

with respect to military service by transgender individuals." *Id.* at 1.  The President ordered that

"[t]he Secretary of Defense, and the Secretary of Homeland Security, with respect to the U.S.

Coast Guard, may exercise their authority to implement any appropriate policies concerning

military service by transgender individuals." *Id.*  To be clear, as has just been laid out, the

"appropriate policies" that the Secretaries intended to implement had already been developed and

proposed to the President at the time he issued this memorandum.

The events described above sparked a great debate between the parties as to the future of

this case, and prompted the filing of numerous motions.  First, Defendants moved to dismiss and

to dissolve the preliminary injunction on the grounds that the Mattis Implementation Plan has

changed the circumstances of this case.  Defendants argued that the Mattis Implementation Plan

represents a "new policy" divorced and distinct from the President's 2017 policy directives that

were previously enjoined by this Court.  They also argued that the Mattis Implementation Plan

does not harm the Plaintiffs in this case.  Accordingly, Defendants sought the dismissal of

Plaintiffs' Second Amended Complaint for lack of jurisdiction because Plaintiffs lack standing

and because their claims are moot.  For largely the same reasons, Defendants also argued that the

Court's preliminary injunction should be dissolved.  On August 6, 2018, the Court issued a

Memorandum Opinion and Order rejecting these arguments and denying Defendants' Motion to

Dismiss Plaintiffs' Second Amended Complaint and Defendants' Motion to Dissolve the

Preliminary Injunction.  *See Doe 2 v. Trump*, 315 F. Supp. 3d 474 (D.D.C. 2018).

Defendants have also moved for summary judgment.  A major premise of Defendants'

summary judgment argument is their contention that the Court should defer to Defendants'

assessment about transgender military service because it was the product of a careful,

independent examination of this issue.  Plaintiffs oppose Defendants' motion for summary

judgment, and have also filed a cross-motion for summary judgment.  However, citing Federal

Rule of Civil Procedure 56(d), Plaintiffs also ask this Court to defer ruling on the parties' cross-

motions "[i]f the Court determines that resolution of the parties' cross-motions for summary

judgment turns on whether or not the process that resulted in the Mattis Plan and the Panel

Report reflected independent military judgment."  Pls.' Opp'n and Cross-Mot. at 18 n.5.  This is

because, according to Plaintiffs, "Defendants have objected to virtually all discovery requests

seeking evidence concerning whether, as a factual matter, the review process was an exercise of

independent judgment."  *Id.*  Accordingly, "Plaintiffs seek the opportunity to complete fact

discovery."  *Id.*

The Court's August 6, 2018 Memorandum Opinion and Order left the parties' cross-

motions for summary judgment unresolved.  This Memorandum Opinion now addresses those

motions.  The Court **DENIES** both motions for summary judgment because genuine disputes of

material fact remain.  The parties dispute the facts related to the process used by Defendants to

prepare the current proposed policy on transgender military service.  Those facts are material

because they affect the degree of deference owed by this Court to Defendants' policy decisions,

and the level of scrutiny this Court will apply to the challenged policy.  The Court does not mean

to imply that these are the only genuine disputes of material fact that remain in this case.  But the

existence of these disputes alone is sufficient to render summary judgment inappropriate.

Accordingly, instead of summarily adjudicating this case, the Court will allow the parties to

continue to engage in discovery.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The mere existence of *some* factual dispute is insufficient on its own to bar

summary judgment; the dispute must pertain to a "material" fact.  *Id.*  Accordingly, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  Nor may summary judgment be avoided based on just any disagreement as to

the relevant facts; the dispute must be "genuine," meaning that there must be sufficient

admissible evidence for a reasonable trier of fact to find for the non-movant.  *Id.*

When faced with a motion for summary judgment, the district court may not make

credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the

light most favorable to the non-movant, with all justifiable inferences drawn in its favor.  *Id.* at

255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent

yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62,

66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  In this

regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

The Court cannot summarily adjudicate the claims in this case on the present record. There are two steps to the Court's analysis of Plaintiffs' constitutional claims.  The first step is to determine what level of scrutiny the Court should apply, and how much deference should be given, when reviewing the challenged policy.  Only once that threshold step has been completed can the Court move on to the second step: applying that level of scrutiny to the policy and determining whether or not it is constitutional.  Due in part to Defendants' refusal to provide discovery, summary judgment is not currently appropriate on the first step.

Defendants' primary defense in this case thus far has been their argument that the Court should apply an extremely low level of scrutiny to their proposed policy on transgender military service.  As support, Defendants primarily rely on *Rostker v. Goldberg*, 453 U.S. 57 (1981), another case regarding alleged discrimination in the military context.  In *Rostker*, the United States Supreme Court assessed the constitutionality of a law that authorized the President to require the registration of males, but not females, for military service.  *Id.* at 59.  The Supreme Court in that case did not hold that courts must simply rubber stamp any allegedly discriminatory policy if it relates to military personnel.  The Court expressly declined to hold that the heightened level of scrutiny that is generally applicable to gender discrimination does not apply in the context of the military.  *Id.* at 69.  However, that Court did hold—based on the particular

facts before it—that the district court in that case had not sufficiently deferred to the reasoned

consideration and decision-making of Congress regarding female military registration.

Defendants argue that the military personnel decision in this case—largely excluding

transgender persons from the military—deserves similar deference.  When granting Plaintiffs'

motion for a preliminary injunction, this Court held that it was not convinced—at that

preliminary stage—that *Rostker* required the Court to apply a low level of scrutiny in this case.

*See Doe 1 v. Trump*, 275 F. Supp. 3d 167, 214 (D.D.C. 2017).  This Court reasoned that the facts

in *Rostker* were starkly different than the facts in this case.  *Id.*  The *Rostker* Court had noted that

"Congress did not act unthinkingly or reflexively and not for any considered reason," when it

passed the challenged policy.  *Rostker*, 453 U.S. at 72.  To the contrary, the *Rostker* Court relied

on Congress' "studied choice of one alternative in preference to another," and the fact that the

policy at issue in that case had been "extensively considered by Congress in hearings, floor

debate, and in committee."  *Id.*  At the preliminary injunction stage, this Court held that such

reasoned decision-making did not appear to have occurred in this case.  *See Doe 1*, 275 F. Supp.

3d at 214.  The Court's holding was, of course, based on the preliminary record at that time.

Now, Defendants contend that the military has conducted the sort of reasoned decision-

making that warrants deference.  According to Defendants, even if deference was not owed to

the President's original directives (a point Defendants do not concede), the Court must now

engage in a "highly deferential form of review" because, after the President's 2017 directives,

the military conducted an "independent reexamination" of the issue that consisted of "an

extensive deliberative process lasting over seven months and involving many of DoD's high-

ranking officials as well as experts in a variety of subjects."  Defs.' Mot. at 35, 39.  According to

Defendants, they "received extensive evidence on the issue," and their decision to propose the

policy set forth in the Mattis Implementation Plan "rested on the considered professional judgment of multiple military experts." *Id.* at 37.  Defendants argue that this process entitles them to the sort of deferential review discussed in *Rostker*.  This is the crux of Defendants' defense.  It is restated in some form or another in nearly all of Defendants' briefs.

But Plaintiffs do not agree that any legitimate, independent review of transgender military service has taken place.  They contend that the only process that has occurred since the President's 2017 Tweet and Memorandum was one merely to prepare a plan to implement an initial, unsupported, decision of the President to ban transgender military service.  According to Plaintiffs, whatever process occurred was not meaningfully independent from, and indeed was constrained by, that initial decision.  Because there was no independent assessment of the issue or independent exercise of military judgment, Plaintiffs argue that no special deference is owed.

Faced with this dispute, the Court holds that summary judgment is not appropriate at this stage.  Summary judgment cannot be granted to the Plaintiffs or the Defendants if there are genuine disputes of material fact.  *See* Fed. R. Civ. P. 56(a).  The facts about the process leading up to the development of the Mattis Implementation Plan are both material and in dispute.

First, the facts are material—they go to the heart of the degree of deference owed, and the level of scrutiny to be applied, in this case.  The military's assessment of transgender military service is a primary reason Defendants cite for their argument that this Court must be highly deferential to their proposed policy.  As the court in *Karnoski v. Trump* recently explained, the constitutionality of the challenged policy "necessarily turns on facts related to Defendants' deliberative process."  *Karnoski v. Trump*, No. C17-1297-MJP, 2018 WL 3608401, at *4 (W.D. Wash. July 27, 2018).  In ordering discovery on this issue, that court held that "Defendants may not simultaneously claim that deference is owed to the Ban because it is the product of

'considered reason [and] deliberation,' 'exhaustive study,' and 'comprehensive review' by the military . . . while also withholding access to information concerning these deliberations, including whether the military was even involved." *Id.* "This information is central to the litigation." *Id.* This Court agrees that this information is material to the parties' dispute in this case.

Second, these material facts are still in dispute. The parties disagree about the fundamental nature of the process leading up to the issuance of the Mattis Implementation Plan, and both cite support for their positions in the (limited) record. For example, Defendants cite statements by Department of Defense officials regarding the "independent" nature of the process and the fact that their "review" was not affected by "external factors." Plaintiffs cite other statements that suggest that the process was inherently circumscribed by an already-made decision of the President to exclude transgender persons from the military. This is a genuine factual dispute.

Citing Federal Rule of Civil Procedure 56(d), Plaintiffs have asked this Court to defer ruling on the parties' cross-motions for summary judgment "[i]f the Court determines that resolution of the parties' cross-motions for summary judgment turns on whether or not the process that resulted in the Mattis Plan and the Panel Report reflected independent military judgment." Pls.' Opp'n and Cross-Mot. at 18 n.5. This is because, Plaintiffs argue, "Defendants have objected to virtually all discovery requests seeking evidence concerning whether, as a factual matter, the review process was an exercise of independent judgment." *Id.* Accordingly, "Plaintiffs seek the opportunity to complete fact discovery." *Id.*

Plaintiffs are entitled to complete discovery. As already stated above, despite the fact that one of Defendants' *main defenses* in this action is that their decisions regarding transgender

14

military service are owed great deference because they are the product of reasoned deliberation, study and review by the military, Defendants have withheld nearly all information concerning this alleged deliberation.  This is not how civil litigation works.  Defendants cannot prevent Plaintiffs from obtaining the facts about a disputed issue and then expect to be granted summary judgment on that issue.  Because genuine disputes of material fact exist and Plaintiffs are entitled to continue pursuing discovery of those facts, the Court will not summarily adjudicate this case at this time.

## IV. CONCLUSION

For the foregoing reasons, the parties' Cross-Motions for Summary Judgment will be **DENIED**.  The level of scrutiny the Court must apply, and the degree of deference owed, are threshold questions that must be resolved before the Court can assess the constitutionality of the challenged policy.  Summary judgment on this question is not appropriate at this time because the parties dispute the basic facts that will inform its answer, and Plaintiffs have asked for leave to finish discovery into these facts before summary judgment is entered.  Instead of granting either of the parties' motions for summary judgment, the Court will allow Plaintiffs the opportunity to complete discovery.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge
