**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE 2, *et al.*,<br><br>             Plaintiffs,<br><br>v.<br><br>PATRICK SHANAHAN, in his official capacity as Secretary of the Department of Defense, *et al.*,<br><br>             Defendants. | Civil Action No. 17-cv-1597 (CKK) |

**PARTIES' JOINT STATUS REPORT IN RESPONSE TO
FEBRUARY 26, 2019 ORDER**

On January 30, 2019, the Court ordered the "parties to meet and confer regarding the scope and breadth of discovery as the case now stands," and directed the parties to "focus on how the scope and breadth of permissible discovery is affected by the D.C. Circuit's determination that the Mattis plan is not a continuation of the 2017 Presidential Memorandum but is instead a new plan." Order 2, Dkt. 188. The Court further ordered the parties to file a joint status report "informing the Court on how the parties intend to proceed with discovery" by February 26, 2019. *Id.*

On February 26, 2019, the parties filed a joint status report informing the Court that they have been working together in an attempt to narrow or eliminate discovery disputes in light of the D.C. Circuit's ruling and this Court's Order and respectfully requesting additional time to resolve these disputes. Dkt. 189.

On February 26, 2019, the Court ordered the parties to file another joint status report by March 28, 2019, "informing the Court on the status of any remaining disputes and proposing a schedule for discovery and the filing of dispositive motions."

1

**Defendants' Position**

    A. **The Breakdown In Negotiations**

Since the beginning of February, the parties have been negotiating in an attempt to narrow or eliminate discovery disputes in light of the D.C. Circuit's ruling and this Court's Order. On February 1, 2019, the parties had an initial call to discuss possible options for moving this case forward. On February 15, 2019, Defendants followed up with an email proposing four options for moving forward: (1) Plaintiffs continue to seek the same documents and deposition testimony over which Defendants have asserted privilege, and the parties resubmit briefs similar to those previously submitted but include discussions of the D.C. Circuit's opinion; (2) in light of the D.C. Circuit's opinion, Plaintiffs narrow the discovery material they are seeking; Defendants agree to waive privilege over certain documents that fall within Plaintiffs' narrowed request; the parties narrow the remaining discovery disputes and submit briefs those narrowed issues; (3) the parties wait for the Ninth Circuit ruling on the mandamus petition in *In re Donald J. Trump*, No. 18-72159 (9th Cir. Sept. 17, 2018); (4) Plaintiffs no longer pursue document discovery, and the parties proceed to additional depositions or directly to summary judgment. Defendants indicated that they preferred Option 4, or, in the alternative, a combination of Option 4 and Option 2 that involved the parties coming to an agreement about the permissible scope of document discovery and deposition testimony and avoiding further briefing on discovery issues. Defendants expressed their view that these options would result in the most expeditious resolution of the litigation.

The parties arranged a call for February 20, 2019. Defendants asked Plaintiffs if they could provide any information about their thoughts on discovery in advance of the call in order to facilitate a more productive discussion. The morning of February 20, 2019, Plaintiffs

indicated that they were leaning towards Defendants' proposed Option 2 (narrowed document discovery).  Later that day, the parties participated in a call.  Both parties expressed interest in narrowing discovery disputes.  Defendants encouraged Plaintiffs to provide a list of specific documents that they are seeking as soon as possible so that Defendants could start the process of determining the documents over which they would be willing to waive the deliberative process privilege.  Plaintiffs agreed that it made sense to start this process soon.  Defendants also asked Plaintiffs if they would agree not to continue seeking discovery of documents and information subject to the presidential communications privilege in light of the D.C. Circuit's opinion.  Defendants made clear that they would oppose any discovery of documents and information subject to the presidential communications privilege.  Plaintiffs indicated that they would confer and get back to Defendants on this issue.

On February 25, 2019, Defendants sent Plaintiffs an email asking when Plaintiffs anticipated providing a list of narrowed discovery requests.  Plaintiffs stated that they would get back to Defendants "shortly with a proposed timetable."

On March 11, 2019 Defendants sent Plaintiffs another email asking if Plaintiffs had any updates on narrowing the discovery disputes.  In response, Plaintiffs proposed a call to discuss.

On March 14, 2019, the parties participated in a call.  Plaintiffs stated that they were seeking five narrowed categories of discovery:

> (1) Data regarding transgender servicemembers from the initiation of the Carter policy to present;
> (2) Documents related to then-Secretary Mattis's decision to delay the Carter accessions policy;
> (3) Emails between then-Secretary Mattis and third parties;
> (4) Documents the Panel of Experts considered or generated related to the development of the Mattis policy from August 25, 2017 through March 23, 2018;
> (5) Department of Defense ("DoD") personnel policies.

With regard to Category 1, Defendants indicated a willingness to produce data generated after the development of the Mattis policy concerning service members who had been diagnosed with gender dysphoria.  With regard to Category 2, Defendants indicated a willingness to produce recommendations from the Services related to then-Secretary Mattis's decision to delay the Carter accessions policy.  With regard to Category 3, Defendants stated that they would confer with DoD.  With regard to Category 4, counsel for Defendants indicated that they believed this would be an unredacted version of the administrative record ("AR") but that they would discuss this request with DoD.  With regard to Category 5, Defendants indicated that DoD personnel policies are publicly available and offered to provide a link to Plaintiffs.  (Later that day, Defendants sent Plaintiffs links to DoD personnel policies, as discussed.)

      During the call, Defendants again asked Plaintiffs if they would agree not to continue to seek discovery of documents and information subject to the presidential communications privilege in light of the D.C. Circuit's opinion.  Plaintiffs indicated that they would probably agree not to seek documents and information subject to the presidential communications privilege but would confer and get back to Defendants on this issue.  Plaintiffs indicated that they understood that Defendants would oppose any discovery of documents and information subject to the presidential communications privilege.

      On March 25, 2019, Defendants sent an email to Plaintiffs indicating that in an attempt to narrow and possibly foreclose the issues in dispute regarding discovery, Defendants would offer to waive the deliberative privilege over certain documents.  With regard to Category 1, Defendants offered to produce supplemental data involving military personnel diagnosed with gender dysphoria that was used to provide testimony to the House Armed Services Subcommittee on Military Personnel in February 2019.  With regard to Category 2, Defendants

offered to waive the deliberative process privilege over recommendations from the Services and the Surgeons General to then-Secretary Mattis related to the delay of the Carter accessions policy in June 2017. With regard to Category 3, Defendants offered to waive the deliberative process privilege over the emails between then-Secretary Mattis and third parties. With regard to Category 4, Defendants offered to waive the deliberative process privilege over the final versions of the Panel of Experts briefing presentations to the Deputy Secretary of Defense, the Vice Chairman of the Joint Chiefs of Staff, and the Secretary of Defense. Defendants indicated that they would not agree to provide an unredacted AR or unredacted Panel of Expert meeting minutes. However, Defendants offered to go back through the AR and meeting minutes to determine if there is further factual information that can be segregated from deliberations and produced to Plaintiffs.

On March 27, 2019, the parties participated in a call to discuss Defendants' offer to waive the deliberative privilege over certain documents. With regard to Category 1, Plaintiffs asked Defendants to generate new documents with updated versions of the data considered by the Panel of Experts, in addition to producing the supplemental data that was used to provide testimony to the House Armed Services Subcommittee on Military Personnel in February 2019. Defendants indicated that because they have already agreed to produce all the existing data requested by Plaintiffs and because there is no obligation to create new documents in response to discovery requests, they would likely not agree to generate new documents with updated versions of the data considered by the Panel of Experts. The parties agreed that Plaintiffs would first review the supplemental data involving military personnel diagnosed with gender dysphoria that was used to provide testimony to the House Armed Services Subcommittee on Military Personnel in February 2019 and then determine if there remains a dispute as to this issue.

With regard to Category 2, Plaintiffs indicated that in addition to the recommendations from the Services and the Surgeons General to then-Secretary Mattis related to the delay of the Carter accessions policy in June 2017, Plaintiffs sought the Deputy Secretary's request for these recommendations. Defendants explained that they believed they had already produced this memo from the Deputy Secretary to the Services but that they would check.

With regard to Category 3, Plaintiffs accepted Defendants' offer to waive the deliberative process privilege over the emails between then-Secretary Mattis and third parties.

With regard to Category 4, Plaintiffs indicated that in addition to the documents the Panel of Experts considered or generated (unredacted version of the AR and meeting minutes), Plaintiffs also sought communications by the Panel of Experts and dissenting opinions. The parties agreed to brief this narrowed dispute concerning Category 4, and Defendants proposed the following briefing schedule: Plaintiffs file a motion to compel the material in Category 4 on April 18, 2019; Defendants file an opposition to Plaintiffs' motion to compel on May 9, 2019; and Plaintiffs file a reply in support of their motion to compel on May 23, 2019. Defendants again asked Plaintiffs if they would agree not to continue seeking discovery of documents and information subject to the presidential communications privilege. Plaintiffs' counsel indicated that he did not think Plaintiffs would seek this material but that he would confer with his clients and confirm. Plaintiffs asked Defendants if they were maintaining their clawback over certain documents. Defendants stated that they would confer and get back to Plaintiffs on this issue.

Thus, as of March 27, 2019, Defendants believed that the parties had reached an agreement to narrow discovery and that the only remaining discovery disputes were over Category 4, which the parties would brief, and a possible remaining dispute over Category 1. Later that day, Defendants drafted a joint status report reflecting the call and circulated the draft

to Plaintiffs.  Defendants also indicated that Defendants reviewed the clawback documents and were maintaining their clawback position.  According to the clawback procedures, Plaintiffs would need to identify any specific documents they seek to compel and make a sealed motion for judicial determination of the asserted privilege.  *See* Order, Dkt. 85.  Defendants stated that if Plaintiffs wished to pursue this option, Defendants believed the clawback briefing could be incorporated into the proposed briefing schedule.  However, Defendants also indicated their belief that this additional motions practice related to the clawback documents is unnecessary given the limited relevance these documents have to the case.  With regard to Category 2, Defendants informed Plaintiffs that Defendants had already produced an unredacted version of the Deputy Secretary's memo to the Services requesting recommendations related to the Carter accessions policy and provided the Bates number.  In the interest of proposing at least part of a discovery schedule to the Court, Defendants also proposed dates for expert disclosures.  Finally, Defendants asked Plaintiffs to confirm that they were no longer pursuing discovery of documents and information subject to the presidential communications privilege, as discussed on the phone.

On March 28, 2019, the deadline for filing this joint status report, negotiations broke down.  Despite the previous discussions over the past two months regarding narrowed categories of discovery, Plaintiffs emailed Defendants with expanded discovery requests.  First, Plaintiffs indicated that they were not only seeking documents the Panel of Experts considered or generated (an unredacted AR and meeting minutes), but also "communications to or from members of the Panel regarding their work, drafts of the Panel's report communicated to any third parties, as well as communications that followed the submission of the Panel's report but predated the publication of the implementation plan."  In contrast to Defendants' understanding that the only remaining discovery disputes were with regard to Categories 4 and 1, Plaintiffs

7

indicated that they "have agreed to certain limitations on a provisional basis only, reserving our rights to request additional information." With regard to Category 2, Plaintiffs indicated that despite their previous agreement to accept Defendants' offer to waive the deliberative process privilege over the recommendations from the Services and the Surgeons General to then-Secretary Mattis related to the delay of the Carter accessions policy in June 2017, Plaintiffs now sought additional discovery, "including communications to and from the Secretary and his staff regarding the potential delay, and any memos or other documents relevant to this issue." Plaintiffs also indicated that they would move to compel at least some, if not all, documents that Defendants have clawed back.

Finally, despite their previous representations that they would likely be dropping the issue of the presidential communications privilege, Plaintiffs indicated their interest in having the Court order Defendants to produce a privilege log for documents withheld on the basis of the presidential communications privilege. However, as Defendants have previously explained, Defendants have already provided Plaintiffs with document-by-document privilege logs from DoD and the Services, which provide detailed information and explain why each document is subject to privilege.[1] Defendants' Reply In Support of their Motion for a Protective Order 23, Dkt. 181. These privilege logs include documents that are subject to the presidential

---

[1] Defendants also previously produced a White House privilege log, which covered 9,000 documents grouped into 66 categories and described the documents in a manner that avoided revealing privileged information. Defendants produced this privilege log while maintaining their position that under *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 385 (2004), the President was not required to provide such a log. The Court subsequently dismissed the President as a party to the case. Dkt. 154. Accordingly, any suggestion by Plaintiffs that the White House must now provide a document-by-document privilege log is improper. *See* Defendants' Reply In Support of their Motion for a Protective Order 23 n.11.

communications privilege (noted on the privilege logs as "Executive Privilege"). *Id.* (citing to Exh. A to Dkt. 181, Excerpt of DoD Privilege Log for Production 5, March 7, 2018).[2]

Although Plaintiffs suggest that they are still narrowing discovery, their "narrowed" requests would still encompass broad categories of documents and extended time periods and would likely comprise thousands of documents, such that the parties would essentially be in the same place as they were when they filed discovery motions in October 2018. Defendants have been negotiating in good faith in an attempt to narrow discovery disputes and move this case towards resolution, and offered to waive the deliberative process over many of the documents originally requested by Plaintiffs. However, given the breakdown in negotiations, Defendants believe that the parties are too far apart to reach an agreement on the appropriate scope of discovery.[3] Accordingly, Defendants respectfully request that based on guidance from the D.C. Circuit, the Court enter the below schedule for timely resolution of this case.

---

[2] Plaintiffs have also indicated that they "have not made any decisions concerning the depositions of VADM Kriete or Jennifer Hay." Defendants understood the Court's February 26, 2019 Order directing the parties to inform[ ] the Court on the status of any remaining disputes and propos[e] a schedule for discovery and the filing of dispositive motions" to mean that the parties should make final determinations about the scope of discovery and any remaining discovery disputes and propose a schedule to move this case through the dispositive motions stage of litigation. Without a decision from Plaintiffs about whether or not they are pursuing these depositions of former members of the National Security Council staff, which implicate the presidential communications privilege, *see* Defendants' Motion for a Protective Order, Dkt. 170; Defendants' Motion for a Protective Order, Dkt. 171, Defendants are unable to make an informed decision about whether they need to file renewed motions for a protective order.

[3] Defendants are looking into the possibility of releasing the documents Defendants' previously offered to release on March 27, 2018 in exchange for Plaintiffs' agreement to narrow further discovery requests irrespective of negotiations breaking down. However, given the late hour in which negotiations with Plaintiffs broke down, Defendants were unable to coordinate with their client on this issue prior to filing this JSR.

## B. The Guidance From the D.C. Circuit

As the Court recognized, the "permissible breadth and depth of Plaintiffs' discovery requests" is affected by the D.C. Circuit's Judgment issued on January 4, 2019.  Order at 1, Dkt. 188; *see also id.* at 2 (further noting that the Supreme Court's stay orders in the related *Karnoski* and *Stockman* litigation "may still be relevant to the parties' discovery disputes").  Although the Judgment itself did not set forth the appropriate scope of discovery in this case, the D.C. Circuit found this Court "made an erroneous finding that the Mattis Plan was not a new policy but rather an implementation of the policy directives enjoined in October 2017," and emphasized the deference due to military officials' military judgments.  *Doe 2 v. Shanahan*, 2019 WL 102309 (D.C. Cir. Jan. 4, 2019) (per curiam).  Moreover, two of the three judges on the panel took the opportunity to set out the competing views on the nature of discovery in cases involving military judgments and personnel policies.  Judge Williams would have precluded all discovery out "of respect for the judiciary's proper place in our democracy." *Doe 2 v. Shanahan*, 2019 WL 1086495, at *36 (D.C. Cir. Mar. 8, 2019) (Williams, J., concurring).  As Judge Williams's opinion sets out, the Court's role in evaluating military policy is so circumscribed that extra-record evidence and discovery is "quite beside the point." *Id.* (quoting *Goldman v. Weinberger*, 475 U.S. 503, 509 (1986)); *see also id.* (noting that the Supreme Court in "*Rostker* chastised the district court for 'palpably exceed[ing] its authority' in 'relying on [such] testimony'" (quoting *Rostker v. Goldberg*, 453 U.S. 57, 81 (1981))).  Judge Wilkins disagreed with the categorical bar on discovery, but even he would have carefully limited discovery to inquiring "about how the policy operates and what military purposes it serves." *Id.* at *10 (Wilkins, J., concurring).  While Defendants maintain that Judge Williams's approach is both legally correct and better honors the

respective roles of the different branches of government, discovery in this case should certainly go no further than what Judge Wilkins contemplates.

### C. Defendants' Proposed Schedules

#### a. Option 1: No Additional Document Discovery

In light of the D.C. Circuit's Judgment and concurring opinions and this Court's directive to "focus on how the scope and breadth of permissible discovery is affected by the D.C. Circuit's determination that the Mattis Plan is not a continuation of the 2017 Presidential Memorandum but is instead a new plan," Order at 2, Dkt. 188, Defendants propose that document discovery be concluded, that deadlines for fact and expert discovery be set, and that parties resume taking depositions. During depositions, Plaintiffs will have the opportunity to inquire "about how the policy operates and what military purposes it serves." *Doe 2*, 2019 WL 1086495, at *10 (Wilkins, J., concurring). Accordingly, Defendants propose the following schedule for the timely resolution of this case:

May 10, 2019: Initial expert disclosures due

June 7, 2019: Rebuttal expert disclosures due

June 28, 2019: Close of discovery

August 29, 2019: Dispositive motions deadline

#### b. Option 2: Limited Additional Document Discovery

Alternatively, if the Court is inclined to permit additional document discovery, Plaintiffs' should be required to identify specific documents that they wish to compel as opposed to the broad categories of drafts and email communications spanning several months that they have currently identified. If Plaintiffs intend to move to compel a record of the deliberations

11

concerning the Mattis policy (e.g., the unredacted administrative record or meeting minutes of the Panel of Experts), then Defendants propose the following schedule:

    April 18, 2019: Plaintiffs file a motion to compel an unredacted AR and meeting minutes

    May 9, 2019: Defendants file an opposition to Plaintiffs' motion to compel

    May 10, 2019: Initial expert disclosures due

    May 23, 2019: Plaintiffs file a reply in support of their motion to compel

    June 7, 2019: Rebuttal expert disclosures due

    14 days after the resolution of Plaintiffs' motion to compel: the parties file a joint status report proposing deadlines for the end of discovery and the filing of dispositive motions

**Plaintiffs' Position**

Plaintiffs have worked in good faith to propose ways to resolve outstanding discovery disputes and focus discovery in light of the D.C. Circuit's January 4, 2019 Judgment. Plaintiffs offered to narrow the scope of discovery in the following ways. First, Plaintiffs agreed to conditionally forego further discovery concerning the development of the statements in the President's tweets and the policy set forth in the Presidential Memorandum, depending on whether discovery regarding the scope of the panel review process indicates that it was constrained by the President's directives to reinstate a ban. Second, plaintiffs proposed to focus discovery on four areas, reserving their right to seek to expand discovery based on information provided:

(i) data concerning accession, deployment, costs and other aspects of service of transgender and non-transgender servicemembers from adoption of the Carter open service policy to the present[4];

(ii) Secretary Mattis' decision to delay implementation of the open accessions policy;

(iii) the development of the Mattis plan, including documents provided to, considered or generated by the so-called Panel of Experts or members of the panel; and

(iv) emails between Secretary Mattis and third parties that the government had previously withheld as privileged.

Plaintiffs made it clear from the outset of discussions that they would not accept limiting further discovery to a handful of additional documents, given the broad swath of information Defendants have previously withheld under dubious claims of privilege. The parties did reach an agreement in principle on certain areas, including that Defendants would produce data concerning the service of transgender individuals that has already been assembled and produced to the U.S. House of Representatives Armed Services Subcommittee on Military Personnel in connection with a hearing held in late February. In addition, Defendants agreed to produce certain email communications between Secretary Mattis and third parties.

But apparently displeased that Plaintiffs would not agree to limit any additional document discovery to a handful of other documents[5], Defendants have rescinded their agreement, and now

---

[4] Much of this data is cited in the February 2018 Department of Defense Report and Recommendations on Military Service By Transgender Persons, and has already been produced in this case.

[5] Defendants proposed to limit all additional discovery to the following documents: the Services and Surgeons General recommendations to Secretary Mattis in regards to the delay of accessions in June 2017, and the final versions of the "Panel of Experts" briefing presentations to the Deputy Secretary of Defense, Vice Chair of the Joint Chiefs of Staff, and Secretary of Defense.

propose that Plaintiffs receive no additional documents, including the limited documents Defendants already offered to produce. The government asserts that the D.C. Circuit's judgment provides a basis to foreclose all further document discovery in this case. The judgment does no such thing. Rather, the D.C. Circuit determined, based on the record as it existed at the time, that the Mattis Plan represented a change in circumstances that warranted dissolution of the preliminary injunction. *Jane Doe 2 v. Shanahan*, No. 18-5257, at 3 (D.C. Cir. Jan. 4, 2019). As noted by Judge Wilkins in his concurrence, the parties should now engage in further discovery to "assess[ ] the Mattis Plan anew," and examine the development of the Mattis plan, the government's purported justifications for the Mattis Plan, and how the Mattis Plan will work. *Jane Doe 2 v. Shanahan*, No. 18-5257, at 18, 21-22 (D.C. Cir. Mar. 8, 2019) (Wilkins, J., concurring). Contrary to Defendants' position, the government is not "immune from all discovery explaining the operation and purpose of its military policies." *Id.* Plaintiffs seek to require that the government "explain fully, under oath, [its] justification" for the Mattis Plan. *Id.*

**Development of the Mattis Policy**

Plaintiffs have consistently requested information concerning the development of the Mattis Policy beyond the final recommendations made by the so-called "Panel of Experts." This information is essential to this case, given Defendants' reliance on the process behind development of the Mattis Policy, and the substantive rationales purportedly underlying the Mattis Policy. Defendants have claimed that the process leading up to the Mattis Policy was the product of "independent military judgment" "begun without any direction from the President." *See* Dkt. No. 115 at 4, 23, 39, 43; Dkt. 116 at 1, 4-6, 11-12, 35. For that reason, Plaintiffs' counsel noted during recent discussions that in addition to all documents considered or generated by the Panel, Plaintiffs would seek communications to or from members of the Panel regarding

their work, drafts of the Panel's report communicated to any third parties, as well as communications that followed the submission of the Panel's report but predated the publication of the implementation plan.

### Delay of Open Accessions Policy

Plaintiffs also proposed to include within a narrowed scope of discovery Secretary Mattis' decision to delay the initiation of the open accessions policy set to take effect in June 2017.  Again, Defendants have put the Secretary's decision directly at issue in this case, suggesting that the decision to delay the open accessions policy was in effect the beginning of a decision to limit more broadly the service of transgender individuals.  Plaintiffs indicated they could not accept Defendants' offer to limit discovery in this area to only the final recommendations made by the Services and Surgeon General to Secretary Mattis regarding the decision to delay.   Plaintiffs require additional discovery to probe the genesis of the decision, including communications to and from the Secretary and his staff regarding the potential delay, and any memos or other documents relevant to this issue.

### Presidential Communications Privilege

Defendants have inquired whether Plaintiffs continue to seek information Defendants have withheld on the basis of the Presidential Communications Privilege.  In response, Plaintiffs have noted that this issue has been made unnecessarily difficult by Defendants' refusal to provide adequate privilege log information to allow Plaintiffs to make a determination whether to move to compel the production of particular documents.  For example, in response to Plaintiffs' document requests, Defendants provided privilege logs with single entries that covered dozens of documents spanning multiple months and encompassing exchanges among

unidentified people, including nongovernmental parties and Members of Congress. Dkt. 91 at 6; Dkt. 91-9.

Plaintiffs propose to renew their request to compel the Defendants to provide adequate privilege log information for documents withheld on the basis of the Presidential Communication Privilege, limited to those documents relevant to the four categories of information Plaintiffs now propose as the scope of discovery. Plaintiffs are willing to engage in a phased approach to discovery of communications between the White House and the remaining Defendants. Defendants should first be required to provide document-by-document privilege logs for the information withheld from their responses to Plaintiffs' document requests and interrogatories. Those logs should provide Plaintiffs and the Court with insight—for the first time—into what has been withheld. Plaintiffs should therefore be able to test the government's claims of privilege and to make revised, narrowly targeted requests for information. *See* Dkt. 175, Plaintiffs' Opposition to Defendants Motion for a Protective Order.

**Clawback Documents**

Defendants' assertion that documents they produced but have attempted to clawback are now somehow irrelevant to the case is offered without basis, because there is none. Plaintiffs will move to compel production of certain documents subject to Defendants' clawback notice consistent with the briefing schedule proposed below.

**Plaintiffs' Proposal**

Plaintiffs propose the following schedule.

April 18, 2019: Parties file discovery motions consistent with the positions stated in this Joint Status Report

May 9, 2019: Oppositions due

May 23, 2019: Replies due

14 days after the resolution of outstanding discovery motions: the parties file a joint status report proposing deadlines for the end of fact discovery, expert discovery[6], and the filing of dispositive motions

March 28, 2019                                                    Respectfully submitted,

---

[6] Plaintiffs object to Defendants' proposal to include expert discovery deadlines before a fact discovery deadline is set, as any proffered expert will likely require the benefit of facts gathered through the discovery process.

Matthew E. Miller (*pro hac vice*)
Kathleen M. Brill (*pro hac vice*)
Michael Licker (*pro hac vice*)
Rachel C. Hutchinson (*pro hac vice*)
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, Massachusetts 02210
Telephone: 617-832-1000
Fax: 617-832-7000

Theresa M. Roosevelt (D.C. Bar No. 1021853)
FOLEY HOAG LLP
1717 K Street NW
Washington, DC 20006
Telephone: 202-223-1200
Fax: 202-785-6687

Jennifer Levi (*pro hac vice*)
Mary L. Bonauto (*pro hac vice*)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont St., Ste. 950
Boston, Massachusetts 02108
Telephone: 617-426-1350
Fax: 617-426-3594

Shannon P. Minter (*pro hac vice*)
Amy Whelan (*pro hac vice*)
Chris Stoll (*pro hac vice*)
NATIONAL CENTER FOR LESBIAN RIGHTS
870 Market St., Ste. 370
San Francisco, California 94102
Telephone: 415-392-6257
Fax: 415-392-8442

/s/  Alan E. Schoenfeld
Alan E. Schoenfeld (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
7 World Trade Center
250 Greenwich St.
New York, New York 10007
Telephone: 212-230-8800
Fax: 212-230-8888

Paul R.Q. Wolfson (D.C. Bar No. 414759)
Kevin M. Lamb (D.C. Bar No. 1030783)
WILMER CUTLER PICKERING
    HALE & DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: 202-663-6000
Fax: 202-663-6363

Harriet Hoder (*pro hac vice*)
Adam M. Cambier (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: 617-526-6000
Fax: 617-526-5000

Nancy Lynn Schroeder (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE & DORR LLP
350 S. Grand Ave., Ste. 2100
Los Angeles, California 90071
Telephone: 213-443-5300
Fax: 213-443-5400

*Attorneys for Plaintiffs*

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

BRETT A. SHUMATE
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Branch Director

ANTHONY J. COPPOLINO
Deputy Director

/s/ Andrew E. Carmichael
ANDREW E. CARMICHAEL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-3346
Email: andrew.e.carmichael@usdoj.gov

*Attorneys for Defendants*