# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 18-5257**

JANE DOE 2, ET AL.,
        APPELLEES

v.

PATRICK M. SHANAHAN, IN HIS OFFICIAL CAPACITY AS ACTING SECRETARY OF DEFENSE, ET AL.,
        APPELLANTS

**September Term, 2018**
FILED ON: JANUARY 4, 2019

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01597)

———

Before: GRIFFITH and WILKINS, *Circuit Judges*, and WILLIAMS\*, *Senior Circuit Judge*.

## J U D G M E N T

This appeal was considered on the record from the District Court and on the briefs of the parties and oral arguments of counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the District Court's denial of the government's motion to dissolve the preliminary injunction is **REVERSED**, the preliminary injunction is **VACATED** without prejudice, and the government's motion to stay is **DENIED** as moot.

### I

We reverse the District Court's denial of the government's motion to dissolve the preliminary injunction and vacate the preliminary injunction without prejudice.

We are reviewing the District Court's denial of the government's motion to dissolve the preliminary injunction. A party seeking to dissolve an injunction has the burden of showing "a significant change either in factual conditions or in law" such that continued enforcement of the

———

\* Senior Circuit Judge Williams concurs in the result. Separate opinions will be filed at a later date.

injection would be "detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (latter quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)); *Petties ex rel. Martin v. District of Columbia*, 662 F.3d 564, 571 (D.C. Cir. 2011) (applying same standard in context of motion to dissolve preliminary injunction); *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."); 16 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3924.2 (3d ed. 2015) ("Refusal to dissolve or modify an injunction that was not appealed, or was affirmed on appeal, should be disturbed only on a compelling showing of changed circumstances not adequately considered by the trial court."). We review the denial of such a motion under an abuse of discretion standard. *See Jones v. D.C. Redevelopment Land Agency*, 499 F.2d 502, 507 (D.C. Cir. 1974); *see also Am. Council of the Blind v. Mnuchin*, 878 F.3d 360, 366 (D.C. Cir. 2017). The District Court's factual findings are subject to clear error review and its legal conclusions are reviewed *de novo*. *Gordon v. Holder*, 721 F.3d 638, 644 (D.C. Cir. 2013). The merits of the preliminary injunction entered in October 2017 are not properly before us.[1] *See Sharp*, 233 F.3d at 1169-70 ("In reviewing denials of motions to dissolve injunctions, we do not consider the propriety of the underlying order, but limit our review to the new material presented with respect to the motion to dissolve."); *Franklin Twp. Sewerage Auth. v. Middlesex Cty. Utilities Auth.*, 787 F.2d 117, 120 (3d Cir. 1986) ("The prevailing law is that appellate review of an order denying a motion to dissolve an injunction is confined to the propriety of the denial of the motion; it does not extend to the propriety of the entry of the underlying injunction."); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 260 (7th Cir. 1984) (holding that the "review of the denial of [a] motion to vacate or modify [a preliminary injunction] does not extend to the propriety of the entry of the injunction itself," but rather is "limited to inquiring whether [the movant] has demonstrated that changed circumstances make the continuation of the injunction inequitable"); WRIGHT & MILLER § 3924.2 ("The most important limit on appeal from refusal of an explicit motion to modify or dissolve an injunction is that the motion cannot be used simply to revisit the initial injunction decision or resurrect an expired time for appeal.").

## II

It was clear error to say there was no significant change with respect to at least two aspects of the policy recommended by Secretary of Defense James Mattis in February 2018 and approved by the President in March 2018 ("the Mattis Plan"). First, the District Court made an erroneous finding that the Mattis Plan was not a new policy but rather an implementation of the policy directives enjoined in October 2017. The government took substantial steps to cure the procedural deficiencies the court identified in the enjoined 2017 Presidential Memorandum. These included the creation of a panel of military and medical experts, the consideration of new evidence gleaned

---

[1] To the extent that the District Court granted preliminary relief to Plaintiffs apart from its refusal to dissolve the existing injunction, *Doe 2 v. Trump*, 315 F. Supp. 3d 474, 497-98 (D.D.C. 2018), we conclude that the District Court abused its discretion and reverse. "The propriety of preliminary relief and resolution of the merits are of course 'significantly different' issues," *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 n.10 (2007) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 393 (1981)), because "[t]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward," *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citation omitted).

from the implementation of the policy on the service of transgender individuals instituted by then-Secretary of Defense Ash Carter ("the Carter Policy"), and a reassessment of the priorities of the group that produced the Carter Policy. Although the parties dispute whether these efforts were independent of the policy announced in the 2017 Presidential Memorandum, the record indicates that it was error for the district court to conclude that the Mattis Plan was foreordained.

Second, the District Court made an erroneous finding that the Mattis Plan was the equivalent of a blanket ban on transgender service. *Doe 2 v. Trump*, 315 F. Supp. 3d 474, 495 (D.D.C. 2018). Although the Mattis Plan continues to bar many transgender persons from joining or serving in the military, the record indicates that the Plan allows some transgender persons barred under the military's standards prior to the Carter Policy to join and serve in the military. The Mattis Plan, for example, contains a reliance exemption that will allow at least some transgender service members to continue to serve and receive gender transition-related medical care. Also, Plaintiffs contended that the Mattis Plan's exclusion of transgender persons who have gender dysphoria or who are unwilling to serve in their biological sex constitutes a blanket ban, arguing this case as if all transgender individuals either (1) have gender dysphoria or (2) transition to their preferred gender. They characterized these as "essential" and "defining" aspects of being transgender, Appellees Br. 20, 21, 22 n.5, and the District Court agreed, *Doe 2*, 315 F. Supp. 3d at 495. Other than perhaps one passing statement by one of Plaintiffs' experts, J.A. 839, we can find nothing in the record to support this definition of being transgender, as all of the reports supporting both the Carter Policy and the Mattis Plan defined transgender persons as "identifying" with a gender other than their biological sex. Indeed, those reports repeatedly state that not all transgender persons seek to transition to their preferred gender or have gender dysphoria, J.A. 520, 606, 622-23, 636, 752, and the panel of experts convened by Secretary Mattis observed that there are transgender persons who "have served, and are serving, with distinction under the standards for their biological sex," J.A. 274. Thus, the District Court erred in finding that the Mattis Plan was a blanket transgender ban.

### III

"[M]ilitary interests do not always trump other considerations, and [the Supreme Court has] not held that they do." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008). Nonetheless, the "Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches," *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)), and it is "difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process," *Gilligan*, 413 U.S. at 10. In *Rostker v. Goldberg*, 453 U.S. 57 (1981), and *Goldman v. Weinberger*, 475 U.S. 503 (1986), when addressing constitutional challenges to decisions by the executive and legislative branches regarding the composition and internal administration of combat-ready military forces, the Court explained that while the executive and legislative branches remain "subject to the limitations" of the Constitution, "the tests and limitations to be applied may differ because of the military context," *Rostker*, 453 U.S. at 67, and "courts must give great deference to

3

the professional judgment of military authorities concerning the relative importance of a particular military interest," *Goldman*, 475 U.S. at 507.  Courts "must be particularly careful not to substitute our judgment of what is desirable for that of [the executive and legislative branches], or our own evaluation of evidence for [their] reasonable evaluation" because "[i]t is difficult to conceive of an area of governmental activity in which the courts have less competence." *Rostker*, 453 U.S. at 65, 68 (latter quoting *Gilligan*, 413 U.S. at 10); *accord Trump v. Hawaii*, 138 S. Ct. 2392, 2421-22 (2018) (upholding an executive order in part because it "reflect[ed] the results of a worldwide review process undertaken by multiple Cabinet officials and their agencies," and explaining that "we of course do not defer to the Government's reading of the" Constitution, but "the Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving sensitive and weighty interests of national security and foreign affairs" (internal quotation marks omitted)); *Goldman*, 475 U.S. at 507-08.

Applying this standard in *Rostker*, the Supreme Court concluded that a facially discriminatory, sex-based draft-registration statute was "not invidious, but rather realistically reflect[ed] the fact that the sexes [were] not similarly situated." *Rostker*, 453 U.S. at 79 (internal quotation marks omitted).  The Court explained that the sex-based classification was within constitutional bounds because Congress determined that the statute minimized "added burdens" and "administrative problems" and promoted "the important goal of military flexibility," and "[i]t is not for this Court to dismiss such problems as insignificant in the context of military preparedness and the exigencies of a future mobilization." *Id.* at 81-82 (internal quotation marks omitted).  Instead of an "independent evaluation" of the evidence, the Court adopted "an appropriately deferential examination of *Congress'* evaluation of that evidence." *Id.* at 83.  In *Goldman*, the Court rejected a First Amendment challenge to an Air Force uniform regulation that restricted the wearing of a yarmulke, deferring to the "considered professional judgment" of "appropriate military officials" after finding that the regulation "reasonably and evenhandedly regulate[d] dress in the interest of the military's perceived need for uniformity." *Goldman*, 475 U.S. at 509-10.  "None of this is to say that" the executive or legislative branch "is free to disregard the Constitution when it acts in the area of military affairs." *Rostker*, 453 U.S. at 67.  But, as in *Rostker* and *Goldman*, any review must be "appropriately deferential" in recognition of the fact that the Mattis Plan concerned the composition and internal administration of the military. *Id.* at 83.

We acknowledge that the military has substantial arguments for why the Mattis Plan complies with the equal protection principles of the Fifth Amendment.  Although today's decision is not a final determination on the merits, we must recognize that the Mattis Plan plausibly relies upon the "considered professional judgment" of "appropriate military officials," *Goldman*, 475 U.S. at 509, and appears to permit some transgender individuals to serve in the military consistent with established military mental health, physical health, and sex-based standards.  In light of the substantial constitutional arguments and the apparent showing that the policy accommodates at least some of Plaintiffs' interests, we think that the public interest weighs in favor of dissolving the injunction.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc.  *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
        Ken Meadows
        Deputy Clerk